IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN W. JENTZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.  10-cv-0474-MJR-PMF |
| ) | |
| CONAGRA FOODS, et al., ) | |
| ) | |
| Defendants. ) | |

| | |
|---|---|
| JUSTIN BECKER and AMBER BECKER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 10-cv-0952-MJR-PMF |
| ) | |
| CONAGRA FOODS, INC., et al., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM AND ORDER

REAGAN, District Judge:

I.     Introduction and Procedural History

Before the Court is an appeal by Defendant ConAgra Foods, Inc. ("ConAgra") from Judge Philip M. Frazier's Order to produce certain documents ConAgra sought to withhold on the basis of privilege (Docs. 140, 146).[1]  Because ConAgra failed to demonstrate – with a single

---

[1]On September 12, 2011, the Court ordered, "Because the *Jentz* case is consolidated for discovery with the [*Becker* case] and because the same discovery order was entered in both cases, the *in camera* review of documents undertaken by the Court and the decision rendered on any claimed privilege or protection in *Jentz* will apply equally [in *Becker*].  *Becker*, Doc. 86. Consequently, the instant Memorandum and Order shall be entered in both *Jentz v. ConAgra,*

exception - why Judge Frazier's Order is clearly erroneous, the Order to produce the documents is affirmed, with that exception.

By oral motion, Plaintiff John Jentz sought to compel production of a number of documents that ConAgra had excluded from discovery on the basis of privilege. On August 23, 2011, after *in camera* review of the documents, Judge Frazier issued an Order granting in part and denying in part Jentz's motion (Doc. 140). The Order instructed ConAgra to produce 116 documents previously withheld on the basis of privilege or work product doctrine. On September 7, 2011, ConAgra filed an appeal (Doc. 146) to the undersigned District Judge, asserting that Judge Frazier's Order for production was in error as to 40 of the 116 documents. ConAgra argues that those 40 documents should be withheld from discovery.

United States Magistrate Judges are authorized to rule on all pretrial motions, subject to certain exceptions inapplicable here. **28 U.S.C. § 636; Fed. R. Civ. P. 72; SDIL-LR 72.1(a)**. If a magistrate judge has ruled on a non-dispositive matter, any party may, within 14 days after being served with a copy of the magistrate judge's order, file for reconsideration of that ruling by the district judge. *See* **28 U.S.C. § 636; SDIL-LR 73.1(a)**. When reviewing a magistrate judge's non-dispositive decision, the district judge asks only whether the order is "clearly erroneous or contrary to law." **28 U.S.C. § 636(b)(1)(A);** *see also* **Fed. R. Civ. P. 72(a)**. In conducting such a review, district judges may only properly consider the evidence that was before the magistrate judge at the time the prior order was issued. If the district court allowed new evidence at this stage, it "would essentially be conducting an impermissible *de novo* review

---

Case No. 10-cv-0474-MJR, and *Becker v. ConAgra*, Case No. 10-cv-0952-MJR.

of the order." *SmithKlein Beecham Corp. v. Apotex Corp.*, 2000 WL 1310669, *3 (N.D.Ill. Sept. 13, 2000); *see also* **Fed. R. Civ. P. 72(a);** *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 2003 WL 21475905, *4 (N.D.Ill. June 20, 2003).

Because the appeal before this Court relates to a non-dispositive matter, Judge Frazier's Order will be reviewed for clear error.

II. **Analysis**

ConAgra claims that the 40 documents at issue should be withheld on the grounds that each is covered by one or more of (1) the attorney-client privilege, (2) the insurer-insured privilege, and (3) the work product doctrine.

A. **Attorney-Client Privilege**

Because jurisdiction here is based on diversity, Illinois law governs the applicability of the attorney-client privilege. **Fed. R. Evid. 501**. In Illinois, "[t]o be entitled to the protection of the attorney-client privilege, a claimant must show that (1) the statement originated in confidence that it would not be disclosed; (2) it was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services; and (3) it remained confidential." *Pietro v. Marriott Senior Living Services, Inc.*, 810 N.E.2d 217, 226 (Ill. App. 2004). The purpose of the privilege is to encourage "the full and frank consultation between a client and his or her legal advisor." *Id.* Because the privilege is an exception to the general rule favoring disclosure, the burden is on the claimant to present facts proving the applicability of the privilege. *Id*. Furthermore, because "the privilege against disclosure is the exception, rather than the rule," it "should be strictly confined within its narrowest possible limits." *Sharp v. Trans Union L.L.C.*, **845 N.E.2d 719, 726 (Ill. App. 2006) (citation omitted).**

3

Additionally, because ConAgra is a corporation, under Illinois law the attorney-client privilege extends only to communications between counsel and the corporate "control group," which consists of final decision makers and top advisers whose opinions form the basis for a final decision. ***Consolidation Coal Co. v. Bucyrus-Erie Co.*, 432 N.E.2d 250, 257-58 (Ill. 1982).** Judge Frazier identified 21 individuals who constitute ConAgra's control group,[2] a finding which ConAgra has not disputed.

### B. Insurer-Insured Privilege

The insurer-insured privilege is a species of the wider attorney-client privilege. Illinois law recognizes that under circumstances where an insurance carrier is obligated to defend an insured, the attorney-client privilege may properly be extended to include communications between an insurer and an insured as well. ***Exline v. Exline*, 659 N.E.2d 407, 410 (Ill. App. 1995)**. In order to assert the privilege, its proponent must demonstrate "(1) the insured's identity; (2) the

---

[2] The control group identified by Judge Frazier consists of:
    Brad Allen – operations of commercial mills facilities
    Brad Berentson – financial operations, personnel
    Alan Bindel – employee operations, equipment and machinery at Chester facility
    Paige Buffington – worker's compensation claims
    Tom Culross – environment, health and safety
    Brian Dunekacke – production/operations at the Chester facility
    Godfrey Friedt – operation, maintenance, and servicing of elevators and bins
    Rick Gregory, Jr. – environment, health and safety
    Elaine Hernandez – financial and risk management
    Dean Hoerning – engineering and structural changes
    James Lime – environment, health and safety
    Paul Maass – commercial foods
    Glen Macziewski – insurance needs & coverage
    Scott Martin – technical milling
    Samantha Tran – finance
    Scott Solberg – property insurance
    Damir Stupar – finance
    Kent Ties – finance/insurance
    Leonard Weaver, III – mediation/litigation
    Anthony Yount – environment, health and safety
    Mark Zimitsch – plant operations in New Prague, Minnesota and Alton, Illinois
Doc. 140 at 3.

insurance carrier's identity; (3) the insurance carrier's duty to defend the insured; and (4) that a communication was made between the insured and an agent of the insurance carrier." *Id.* Regarding the insurer-insured privilege, Illinois has a strong policy in favor of disclosure. As with the general attorney-client privilege, the insurer-insured privilege is to be narrowly construed. *Sharp,* **845 N.E.2d at 726.**

### C. Work Product Doctrine

The work product doctrine is governed by federal law. It creates a zone of privacy in which lawyers can analyze and prepare a case free from scrutiny and interference by an adversary. *1Hobley v. Burge,* **433 F.3d 946, 949 (7th Cir. 2006) (citations omitted)**. The doctrine protects documents prepared in anticipation of litigation or for trial by or for another party or its representatives. **Fed. R. Civ. P. 26(b)(3)**. The party asserting that a document should be excluded from discovery bears the burden of proving that the document falls within the scope of the work product doctrine. *Logan v. Commercial Union Ins. Co.*, **96 F.3d 971, 976 (7th Cir. 1996).**

ConAgra appeals Judge Frazier's Order that 40 documents must be disclosed. As this review relates to a non-dispositive matter, Judge Frazier's determination will be reversed only if it is found to be clearly erroneous. **28 U.S.C. § 636(b)(1)(A).**

Some of the documents ConAgra seeks to withhold require little discussion, as it is manifest that Judge Frazier did not clearly err in determining that these documents were discoverable. First, the communications in certain documents for which attorney-client privilege is claimed[3] were patently not made for the purpose of securing legal advice or services, as is required to establish the privilege. *Pietro*, **810 N.E.2d at 226**. Second, as to other documents where the

---

[3] CONAGRA_PRIV 0100, 0121-0122, 0123-0126, 0214, 0216, 0092, and 0094.

work product doctrine is invoked, ConAgra failed to establish that the documents in question were prepared in anticipation of trial or litigation.[4] Third, ConAgra failed to demonstrate that a document for which the insurer-insured privilege was sought satisfied the elements of that privilege.[5] In none of these instances, did Judge Frazier clearly err by ordering the documents to be produced.

In ConAgra's appeal, it has made more complex arguments for why certain documents should be withheld. These arguments demand closer consideration.

### A. Communications Made to Agent of Insured

ConAgra claims that an e-mail chain[6] forwarded by one of ConAgra's claims managers (who is a member of the control group) to employees in its human resources department (who are not) falls within the scope of the insurer-insured privilege. The chain itself contains an exchange of e-mails between the claims manager and agents of ConAgra's workers' compensation carrier. The act of forwarding the e-mail chain to the human resources employees appears to destroy confidentiality and with it any claim of privilege. This is not so, urges ConAgra, because, "The presence of an agent of the client in furtherance of the client's business or the presence of representatives of the lawyer does not destroy the privilege." ***People v. Doss*, 514 N.E.2d 502, 505 (Ill. App. 1987)**.

ConAgra's rationale is inapposite here. The purpose of the attorney-client privilege is to encourage "the full and frank consultation between a client and his or her legal advisor." *Pietro,* **810 N.E.2d at 226**. Thus, extending the privilege to communications between attorney and client where agents of the client are present may further this purpose. Here, however, the details of

---

[4] CONAGRA_PRIV 0092, 0094-0095, 0145-0146, 0211-0212
[5] CONAGRA_PRIV 0211-0212.
[6] CONAGRA_PRIV 0090-0091.

6

the communication were relayed to the human resources employees only after and independent of the communication between ConAgra and its workers' compensation carrier. Holding that such an after-the-fact disclosure to agents is not privileged does not undermine the express purpose of the privilege.

Additionally, ConAgra's interpretation of the privilege would significantly undermine the control group model of privilege analysis. Limiting privilege to communications between counsel and members of the corporate control group would be of little effect if such confidential communications could be freely disclosed to any non-control group employee without destroying privilege simply because the employees are agents of the company.

For the foregoing reasons, Judge Frazier did not err by ordering the disclosure of this document.

### B. Privilege for Communication of Non-Privileged Information

Defendant claims that three documents containing an e-mail conversation between in-house counsel and a member of the control group are subject to the attorney-client privilege.[7] Although it acknowledges that these three documents are "admittedly banal and deal[] primarily with the logistics of meetings," ConAgra nevertheless asserts the privilege on the ground that "the very fact that nonprivileged information was communicated to an attorney may itself be privileged, even if that underlying information remains unprotected." (Doc. 146 at 8 (quoting *Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, slip op., 2009 WL 1543651 at *4 (N.D. Ind. June 2, 2009))). However, ConAgra has not demonstrated the applicability of the privilege as to these documents.

A communication disclosing non-privileged information to an attorney might be

---

[7] CONAGRA_PRIV 0196, 0197, and 0198.

privileged on the grounds that the fact of disclosure has its own, independent significance. The goal is to protect not the underlying information, but the significance implicit in the fact that the client chose to communicate that information to his attorney. For example, the fact that a client chooses to tell an attorney about an earlier conversation might itself be privileged even if the content of the conversation itself is not. Extending the attorney-client privilege in this way furthers the goal of "encouraging and promoting the full and frank consultation between a client and his or her legal advisor...." *Pietro*, **810 N.E.2d at 226 (Ill. App. 2004).**

However, this rationale does not bear on the documents presently in question. The communication between attorney and client here is, by ConAgra's own admission, logistical in nature. The sole purpose of the conversation is to determine the best time to schedule a meeting. On its face, this conversation has no independent significance. Ordering its disclosure would not discourage "full and frank consultation between a client and his or her legal advisor." *Id*. "[T]he privilege against disclosure is the exception, rather than the rule," and as such it "should be strictly confined within its narrowest possible limits." *Sharp,* **845 N.E.2d at 726 (citing** *Waste Management, Inc. v. International Surplus Lines Insurance Co.,* **579 N.E.2d 322, 327 (1991).**

Because the burden of proving the validity of a privilege claim rests with the party seeking the exemption, *Consolidation Coal Co.*, **432 N.E.2d at 257**, ConAgra must demonstrate why the privilege should extend to these e-mails. In this, it failed, so Judge Frazier's order to disclose the e-mails is not clearly erroneous.

### C. <u>Work Product and Attorney-Led Investigations</u>

8

ConAgra asserts that certain documents[8] fall under the umbrella of the work product doctrine, notwithstanding the fact that they were prepared by a non-attorney, specifically a ConAgra employee. Citing *Sandra T.E. v. South Berwyn School Dist. 100*, **600 F.3d 612 (7th Cir. 2010)**, ConAgra claims that these documents enjoy work product protection because they are the product of investigations undertaken by the non-attorney on the attorney's behalf. This assertion is a significant misreading of *Sandra T.E.*

At issue in *Sandra T.E.* was whether work product protection should extend to documents prepared by a law firm which had been hired to conduct an investigation. The Seventh Circuit found such documents to be within the ambit of the work product doctrine, concluding that "[w]ork-product protection applies to attorney-led investigations when the documents at issue can fairly be said to have been prepared or obtained because of the prospect of litigation." *Sandra T.E.*, **600 F.3d at 622 (internal quotation omitted)**. This situation, in which attorneys are conducting field investigations on behalf of clients, is clearly distinguishable from the issue at hand.

The documents in question in *Sandra T.E.* were prepared *by a law firm* which had been hired in anticipation of litigation. The same cannot be said of the documents at question here, all of which were prepared by the same non-attorney employee of ConAgra. To the extent that the *Sandra T.E.* court referred to "attorney-led investigations," it referred to investigations conducted by attorneys, not "investigations undertaken on the attorney's behalf" as ConAgra asserts. This is a significant difference, and it is erroneous to suggest that *Sandra T.E.* demands the application of the work product doctrine to the documents in question.

---

[8] CONAGRA_PRIV 0102, 0106-107, 0108-109, 0157-158, 0159, and 0160-161.

Additionally, ConAgra's assertion of work product protection would fail even if its skewed interpretation of *Sandra T.E.* was correct. There is no indication in the documents that the investigative summaries written by the ConAgra employee were produced on behalf of or at the behest of an attorney. ConAgra has failed to demonstrate that these documents are anything more than an independent summary provided by a non-attorney employee. As such, they cannot fall within the scope of the work product doctrine. Judge Frazier did not err in ordering their disclosure.

### D. Alleged Insurance Carrier Documents

ConAgra seeks to invoke the insurer-insured privilege in order to withhold certain communications between ConAgra's in-house counsel and an individual named Douglas Jones.[9] In Judge Frazier's Order, he determined that these documents are not privileged because ConAgra failed to demonstrate that Jones was an agent of a liability carrier obligated to defend the lawsuit against ConAgra (Doc. 140 at 5). *See Exline,* **659 N.E.2d at 410**. ConAgra appends to its appeal of Judge Frazier's Order an exhibit demonstrating the liability obligations owed to ConAgra by ACE USA, Jones's ostensible employer.

Even if the information contained in this exhibit were sufficient to reverse Judge Frazier's finding, it cannot be considered by this Court. The discovery matter raised here is non-dispositive. The findings of magistrate judges in non-dispositive matters are reviewed for clear error. **28 U.S.C. § 636(b)(1)(A);** *see also* **Fed. R. Civ. P. 72(a).** If the district court were to consider new evidence at this stage, it "would essentially be conducting an impermissible *de novo* review of the order." *SmithKlein Beecham,* **2000 WL 1310669 at *3**. Because this evidence was

---

[9] CONAGRA_PRIV 0099, 0172-174, 0175-178, 0180-182, 0183-186, 0187-189, 0217-220, 0221-224, 0225-229, 0230-233, 0234-238, and 0240-244.

not before Judge Frazier at the time of his Order, it cannot be considered by the undersigned Judge. In short, ConAgra failed to demonstrate that the insurer-insured privilege applies.

ConAgra also asserts that because Mr. Jones's name was followed by an "Esq." in his e-mail signature block, the documents should also be subject to attorney-client privilege independent of the insurer-insured privilege. This is the first time attorney-client privilege has been asserted as to these documents. To consider this argument now would constitute a *de novo* review, which, as explained above, is improper at this stage. Consequently, this claim will not be considered here.

As ConAgra failed to show why these documents should be excluded from discovery at the requisite time, Judge Frazier's findings will be upheld.

### E. Consultant E-mails

ConAgra claims that several e-mails[10] between ConAgra employees and a non-testifying consultant (and one e-mail that merely makes reference to such a consultant) are covered by attorney-client privilege and should be withheld. ConAgra also argues that the identities of these consultants are shielded from discovery by Illinois Supreme Court Rule 201(b)(3).

The content of the e-mails here in question is not privileged. Nothing in the e-mails constitutes a communication made to an attorney for the purposes of securing legal advice or services, a necessary element for establishing privilege. ***Pietro*, 810 N.E.2d at 226**. Nor has ConAgra advanced any persuasive alternative argument why the content of these e-mails should be privileged. Judge Frazier did not clearly err by ordering these e-mails to be produced.

---

[10]   CONAGRA_PRIV 0008, 0145-146, 0147-148, 0149-150, 0151, 0152-153, 0154, and 0155-156.

However, ConAgra is correct in asserting that the identity of a non-testifying consultant is privileged. Illinois Supreme Court Rule 201(b)(3) defines a consultant as "a person who has been retained or specially employed in anticipation of litigation or preparation for trial but who is not to be called at trial." ConAgra submits that it does not intend to call these consultants as witnesses at trial. The Rule provides that "[t]he identity, opinions, and work product of a consultant are discoverable only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject matter by other means." *Id.*

In these e-mails, ConAgra employees are communicating with or referring to individuals who qualify as consultants under the definition of Rule 201(b)(3). None of the e-mails reveal the consultants' work product or opinions. However, the consultants' names are used throughout the e-mails, revealing their identities. Because Jentz has alleged no exceptional circumstances which would compel disclosure of the consultants' identities, their identities should be redacted from the e-mails. As redacted, the e-mails must be produced.

III. Conclusion

For the foregoing reasons - with the exception of requiring that consultants' names be redacted from the e-mails at issue - the Court **AFFIRMS** Judge Frazier's Order (Doc. 140) and **DENIES** ConAgra's appeal therefrom (Doc. 146). ConAgra shall produce the documents to Plaintiff by November 7, 2011, 5:00 p.m.

IT IS SO ORDERED.

DATED this 3rd day of November, 2011

s/Michael J. Reagan
MICHAEL J. REAGAN
United States District Judge