IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN W. JENTZ; JUSTIN BECKER )
and AMBER BECKER; and ROBERT )
SCHMIDT, )
)
       Plaintiffs, )
)
v. ) Case No. 10-cv-0474-MJR-PMF
)
CONAGRA FOODS, INC., et al., )
)
       Defendants. )

MEMORANDUM AND ORDER

REAGAN, District Judge:

## I. Introduction

West Side Salvage, Inc., filed four motions to exclude certain opinions of expert witnesses: to exclude certain opinions of Jentz's and Schmidt's expert William Field (Doc. 191); to exclude certain opinions of Becker's expert Michael Schulz (Doc. 197); to exclude certain opinions of Plaintiffs' expert, Russell Ogle (Doc. 214); and to exclude certain opinions of Dr. Schroeder (Doc. 220).

At the March 29, 2012, hearing, the undersigned Judge denied the motions at Docs. 191, 197 and 214, and granted in part and denied in part the motion at Doc. 220, stating that a detailed order would follow. The Court issues the following order to detail its *Daubert* findings.

1

## II. Applicable Legal Standards for Exclusion of Expert Testimony

In **_Gayton v. McCoy_, 593 F.3d 610 (7th Cir. 2010)**, the Seventh Circuit summarized the framework governing motions to exclude expert witnesses as follows:

> Federal Rule of Evidence 702 allows an expert witness to testify about a relevant scientific issue in contention if his testimony is based on sufficient data and is the product of a reliable methodology correctly applied to the facts of the case. Under the _Daubert_ framework, the district court is tasked with determining whether a given expert is qualified to testify in the case in question and whether his testimony is scientifically reliable.... Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.
>
> In determining reliability, _Daubert_ sets forth the following non-exhaustive list of guideposts: (1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; and (3) whether the theory has been generally accepted in the scientific community. The court should also consider the proposed expert's full range of experience and training in the subject area, as well as the methodology used to arrive at a particular conclusion. **593 F.3d at 616 (internal quotation marks and citations omitted)**.

The district court has latitude to determine whether the testimony is in fact reliable, "but the court must provide more than just conclusory statements of admissibility or inadmissibility to show that it adequately performed its gatekeeping function." **_Id., quoting Naeem v. McKesson Drug Co.,_ 444 F.3d 593, 608 (7th Cir. 2006).** The Court in **_Gayton_** also pointed out: "Determinations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be

2

admissible, assailable by its opponents through cross-examination." ***Id., citing Daubert*, 509 U.S. at 596.**

With these principles in mind, the Court turns to the pending motions.

### III. Analysis

#### ❖ William Field (Doc. 191)

West Side seeks to exclude the following opinions of Professor William Field: (1) that West Side should have either "backed away" or brought in external assistance from the fire department once it realized that the situation in ConAgra's "hot bin" had gotten out-of-hand; and (2) that West Side's foreman Melvin Flitsch's decision to send employees into the tunnel beneath Bin C-15 in order to retrieve tools shortly before the explosion "was not a good decision." West Side asserts that Field is not an expert in salvage operations or grain bin fires, so his opinion on those subjects is inadmissible.

Plaintiffs Jentz and Schmidt respond that Professor Field has spent over three decades speaking, teaching, writing and consulting about the dangers associated with the agricultural industry, including hot bins like the one at issue. The following is an abbreviated synopsis of Plaintiffs' assertions regarding Field's qualifications:

> For the past five years, Field has taught graduate level courses on emergency management related to agrosecurity and homeland security. Those classes discuss the responsibilities of businesses to prevent, mitigate, prepare for and respond to

3

disasters, both natural and manmade. For over 30 years, he has consulted with all types of agribusinesses in the areas of safe product design, injury prevention, emergency planning, and safety communications, including numerous hot bin situations. For the last 12 years Field has served as a Commissioner on the Indiana Occupational Safety Standards Commission representing the agricultural sector. Since 1977, Field has maintained the only national database on incidents involving confined spaces in agricultural workplaces including grain storage facilities. He has served on a National USDA Task Force to explore causes of grain dust explosions in grain storage and handling facilities.

Additionally, Plaintiffs submit that West Side relies on and has adopted Field's opinions where they are favorable to West Side and against ConAgra but seeks to exclude those that disfavor West Side.

Field's extensive background in emergency management and planning as well as safety communications – which includes experience with hot bins – qualifies him to render expert opinions on the issues raised by West Side. The Court finds that Field's testimony will be relevant and reliable and will "assist the trier of fact to understand the evidence or to determine a fact in issue." ***See Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893-94 (7th Cir. 2011),** *quoting* **Fed.R.Evid. 702.**

For these reasons, the Court denied West Side's motion to exclude certain opinions of William Field (Doc. 191) at the March 29, 2012 hearing.

❖ **Michael J. Schulz (Doc. 197)**

West Side seeks to exclude testimony from Michael Schulz's deposition, wherein he was critical of West Side for: (1) failing to recognize

that the situation at ConAgra on March 13, 2010, was a fire suppression job and not a salvage job; and (2) failing to ask questions of and request information from ConAgra that would have put West Side in a position to know that it was not qualified for the job.

West Side asserts that Schulz, a fire investigator, is competent to testify as to the cause and origin of the fire and explosion, but his report offers no support for his opinion on these issues, and these issues are beyond the scope of his expertise. West Side contends that Schulz is not an expert in salvage operations, and, consequently, should not be allowed to testify that if West Side had recognized that the hot bin was beyond its capabilities as a salvage company, it could have avoided putting Plaintiffs in harm's way. West Side also maintains that this testimony is not relevant to any claim brought in this action. According to West Side, Schulz essentially says that West Side should not have been at the facility in the first place – which is a different issue from the actual claims against it – that it was negligent after it arrived at ConAgra's facility.

Plaintiffs Justin and Amber Becker point out that West Side seeks to exclude unfavorable opinions of its own expert. On October 14, 2011, Plaintiffs disclosed Schulz as an expert in fire and explosion analysis. On November 21, 2011, West Side also disclosed Schulz as its expert and reserved the right to call him at trial to offer his opinions. Plaintiffs assert that West Side cannot have it both ways.

Plaintiffs contend that Schulz's opinions, based on his scientific and specialized knowledge as a fire and explosion analysis expert, are germane to the cause and origin of the explosion. According to Plaintiffs, Schulz's knowledge will assist the jury by painting a complete picture of events.

Plaintiffs also maintain that Schulz's opinions are relevant to the issue of ConAgra's alleged negligent and careless conduct. Schulz criticized West Side for failing to recognize there was a fire in Bin C-15 on March 13, 2010, that could not be addressed by salvage operation. According to Plaintiffs, this criticism provides further proof that the bin had a fire that should have been addressed immediately by the fire department and not by a salvage company. Furthermore, Schulz's criticism of West Side for failing to ask questions of ConAgra to determine if it was qualified for the job also relates to ConAgra's alleged negligent and reckless conduct, as it highlights the mountain of evidence that ConAgra was in possession of but failed to relay to West Side. Lastly, Plaintiffs assert that West Side's arguments go to the weight of the evidence and not to whether the evidence is admissible.

The district court serves as a gatekeeper with respect to expert testimony to ensure that the testimony is sufficiently reliable to qualify for admission. **Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999).** In **Kumho Tire**, the Court made clear that strict adherence to the five criteria identified in *Daubert* was unnecessary because the *Daubert*

framework is flexible to account for various types of potential expert testimony. **Deputy v. Lehman Bros., Inc., 345 F.3d 494, 505 (7th Cir. 2003), citing Kumho Tire, 526 U.S. at 141**. "At the end of the day, the only absolute requirements imposed on expert testimony are reliability and relevance." **Tucker v. SmithKline Beecham Corp., 701 F.Supp.2d 1040, 1055-56 (S.D.Ind. 2010).**

The Court concludes that Michael Schulz's expertise as a fire and explosion analysis expert qualifies him to provide expert testimony on the issues of recognizing when a situation allows for salvage and when it requires fire suppression, as well as what questions a contractor should ask – and what information an owner should offer - to determine if the contractor is qualified for the job.

As to whether Schulz's testimony is relevant to any claim brought in this action, Plaintiffs' complaint put West Side on notice of the nature of the claims, and the allegations therein are sufficient under federal notice-pleading standards to encompass the issues West Side now seeks to exclude. **See, e.g., Tamayo v. Blagojevich 526 F.3d 1074, 1085 (7th Cir. 2008)**.

For these reasons, the Court denied West Side's motion to exclude certain opinions of Michael Schulz (Doc. 197) at the March 29, 2012 hearing.

**Russell Ogle (Doc. 214)**

7

West Side seeks to bar Russell Ogle from opining that West Side did not follow accepted scientific practices for handling a fire in a grain bin and that Mel Flitsch's decision to send Plaintiff Jentz back into the bin after the fire department had been called to the scene was also inconsistent with those accepted practices.

West Side concedes Ogle's expertise as a fire investigator (a fire/explosion cause and origin expert) and has adopted Ogle as its own expert. However, West Side maintains that Ogle is not qualified to give opinions on the custom and practice of salvage companies, upon which he admittedly is not an expert. According to West Side, Ogle has no experience in the area of firefighting and is also not qualified to address issues involving emergency response.

Plaintiffs respond that Ogle is qualified to render opinions that West Side did not follow accepted scientific practices for handling a fire in a grain bin and that Mel Flitsch's decision to send Jentz back into the bin after the fire department had been called to the scene was inconsistent with accepted practices. Ogle is a Certified Safety Professional, a member of the National Fire Protection Association, and has years of experience in investigating and analyzing explosions as a chemical engineer. Ogle holds a Ph.D in chemical engineering and specializes in the scientific investigation and prevention of fires, explosions and chemical releases.

Plaintiffs contend that, as a Certified Safety Professional and risk analyst, Ogle is qualified to opine on proper emergency response procedures that should be employed to prevent an explosion like the one that occurred at Bin C-15. Moreover, Ogle's opinion that Flitsch's decision to send Jentz back into the tunnel was contrary to emergency response standards is based upon his knowledge and experience of the objectives of emergency response.

Ogle is an expert on firefighting and emergency response, and has knowledge of national standards and recommended guidelines for fighting grain bin fires. As such, he is qualified to testify as to whether West Side followed accepted scientific practices for handling a fire in a grain bin and as to whether Flitsch's decision to send Plaintiffs back into the bin after the fire department had been called was inconsistent with those accepted practices.

For these reasons, the Court denied West Side's motion to exclude certain opinions of Michael Schulz (Doc. 197) on the record at the March 29, 2012 hearing.

❖ **<u>Robert Schroeder (Doc. 220)</u>**

West Side seeks to bar ConAgra from offering Robert Schroeder as an expert witness because he is not an expert in the custom and practice of salvage companies. West Side seeks to exclude five of the ten opinions offered by Schroeder:

5. West Side Salvage took control of bin #15 on 20 April 2010, for the purpose of mitigating the "hot bin" condition including the removal of bin #15's contents. ConAgra did not dictate the means and methods used in accomplishing this goal.

6. West Side Salvage failed to have in place on-site monitoring equipment and trained personnel responsible to monitor and evaluat0e the changing conditions in the bin. This was further exacerbated by West Side Salvage's lack of planning and apparent training in the event conditions with the bin began to deteriorate toward the risk of an explosion and fire. They clearly did not have the right tools, training or plan of action to handle the bin on the afternoon of 27 April 2010.

7. It was not the dumping of trucks, running of the dust collectors or the operation of the legs that caused West Side Salvage to lose control of this "hot bin."  It was West Side Salvage's actions and inactions on the afternoon of the 27th that led to the explosion and injuries of the workers [citing specific missteps].

8. During the final minutes before the explosion the actions taken by the West Side and A&J would essentially "light the fuse" of the foreboding event.

10. The most unconscionable act that led to the severe injuries suffered by Jentz and Becker was Flitsch directing them to reenter the building, go down into the tunnel and move their tools. This directive came from West Side Salvage's "hot bin" specialist not from ConAgra. Had Flitsch not told Jentz and Becker to go back into Annex C and its tunnel, but rather, go across the street because the fire department was responding, they wouldn't have suffered any injuries.

Schroeder served in the U.S. Air Force as a structural and crash rescue firefighter and obtained a Ph.D. in Materials Science and Fire Safety Engineering.  He is presently a fire and explosion analyst in the company he founded.  Schroeder has nearly 40 years' experience in firefighting and fire and explosion analysis in a number of areas, including grain elevators.

Schroeder testified as follows about his expertise and the basis for these opinions:

Q. Have you otherwise ever been involved in a salvage operation?

A. ….My world is somewhat of a parallel world, especially in the ag business, with salvage operations. Typically when we've got a grain elevator event, they're in there recovering grain. I'm in there looking for evidence. We have to work together because typically things are not so nicely segregated out. So our worlds are parallel inasmuch as we have to interface for them to get their job done and for me to get my job done.

Doc. 245, Exh. B, Schroeder Dep. 118-19.

\*   \*   \*

Q. Do you -- having never worked in the salvage industry, which you told me you never have, you can't say whether something is good, bad or indifferent when it comes to salvage operations, can you?

A. Sure I can.

Q. How?

A. I'm a board-certified safety specialist, and salvage operations deal with those kind of environments.

Q. You're not familiar with the standard of care for salvage companies, are you?

A. There's very little in the way of standard of care outside of the issues concerning the risks of engulfment and dealing with asphyxiation and dealing with height and confined spaces and a whole other host of things that salvage people encounter which is all within the realm of safety.

Q. How do you know this? How do you know -- how do you know what makes up the standard of care in the salvage business?

A. Because I have to actually operate under a lot of those same rules that they have to operate under.

Q. What rules do salvage companies have to operate under?

A. Quite often OSHA 1910.120(q). They're going into confined spaces. They're dealing with heights. They're dealing with environments that can have other than normal breathing air conditions. They're dealing with slip and fall, all of those things.

*Id.* pp. 177-79.

Schroeder is qualified by both education and experience to render opinions on the salvage operation at issue. However, as stated at the March 29 hearing, the phrase "light the fuse" in opinion #8 is argumentative and prejudicial, suggesting, colloquially, that West Side took an affirmative step to cause the explosion. For that reason, the terminology "light the fuse" cannot be used. This ruling did not bar Schroeder from testifying that, in his expert opinion, West Side permitted a series of events to be set in motion. Similarly, with respect to opinion #10, the Court found the phrase "the most unconscionable act" to be inappropriate. The Court stated that no jury instruction would use that phrase. Schroeder can indicate his opinion as to what caused the accident, but determining that one act is more unconscionable than another is an inappropriate comparison. In short, that terminology cannot be used.

For these reasons, the Court granted in part and denied in part the motion to exclude certain opinions of Dr. Schroeder (Doc. 220).

### IV. **Conclusion**

In summary, for the foregoing reasons and as stated on the record at the March 29, 2012, hearing, West Side's motion to exclude certain

opinions of William Field (Doc. 191) is **DENIED**; motion to exclude certain opinions of Michael Schulz is **DENIED** (Doc. 197); to exclude certain opinions of Russell Ogle (Doc. 214) is **DENIED**; and to exclude certain opinions of Dr. Schroeder (Doc. 220) is **GRANTED in part and DENIED in part**, as set forth above.

   IT IS SO ORDERED.

   DATED this 5th day of April, 2012


           <u>s/ Michael J. Reagan</u>
           MICHAEL J. REAGAN
           United States District Judge