IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN W. JENTZ; JUSTIN BECKER and AMBER BECKER; and ROBERT SCHMIDT, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 10-cv-0474-MJR-PMF |
| | ) |
| CONAGRA FOODS, INC., et al., | )<br>) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

REAGAN, District Judge:

### A. Introduction

Pursuant to Federal Rules of Civil Procedure 12(c) and 56, Defendant, West Side Salvage, Inc., moves for judgment on the pleadings and for summary judgment on third-party claims and cross-claims asserted by ConAgra Foods, Inc., for common law indemnity and breach of contract (Doc. 195).

West Side submits that ConAgra is trying to pass the buck for its neglect of its facilities and for its policies of placing profits ahead of safety. West Side contends that ConAgra attempts to deflect blame by filing a third-party complaint and cross-claim against West Side, a small contractor untimely retained by ConAgra to address the deteriorating bin contents.

1

Grounds for judgment on the pleadings or summary judgment asserted by West Side are threefold: (1) ConAgra cannot maintain its claims for "common law indemnification" because Illinois law has long abolished such causes of action absent a specific "pre-tort relationship" that does not exist in this case; (2) ConAgra's claim for breach of contract fails as a matter of law because no contract existed at the time of the accident; and (3) even if West Side had a contract with ConAgra, summary judgment is appropriate on those allegations regarding indemnity because such claims are not recognized under Illinois law.

On March 29, 2012, the Court denied on the record and in detail ConAgra's motion for summary judgment as to Third-Party Defendant West Side Salvage, Inc.'s, Waiver of the Protection under *Kotecki v. Cyclops* (Doc. 186). The Court found that "there is a genuine issue of material fact as to whether the April contract was intended by the parties to be a fully integrated final expression of their agreement and govern their relationship." Doc. 255, Transcript, 19:6-12; see also Doc. 261. Because the Court has already determined that the validity of the April contract is a jury question, the Court will not address express contractual indemnification – or any alleged contractual breach - herein.

ConAgra responds that, rather than attempting to pass the buck to a small contractor, it reasonably relied on West Side's being the expert in bin cleaning operations and salvage that it holds itself out to be. ConAgra

asserts that an extensive factual record evidences a pre-tort relationship between ConAgra and West Side that developed over the course of several weeks, including numerous communications and visits, during which ConAgra negotiated and contracted with West Side to address the hot bin. Secondly, ConAgra contends that West Side entered into a contract with ConAgra and controlled the scope of the work on the bin for a full week before the explosion.  Thirdly, according to ConAgra, a contract between the parties was executed on West Side's behalf by West Side's Director of Operations and, under Illinois law, such contracts are valid.  Lastly, ConAgra asserts that West Side attempts to conflate ConAgra's separate and distinct claims for common law indemnity and breach of contract.  ConAgra submits that its breach of contract claim is predicated upon multiple breaches by West Side – including requirements that West Side maintain sufficient insurance, require its sub-contractors to maintain sufficient insurance, assume responsibility for all actions of the contractor's and subcontractor's employees, remedy all damages and loss caused to the property by the contractor and/or the sub-contractor – and not solely upon indemnity.

## B. **Standard of Review**

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings after both the complaint and answer have been filed.  A court reviewing motions brought pursuant to Rule 12(c) employs the same standard that it applies when reviewing a motion to

3

dismiss for failure to state a claim under Rule 12(b)(6). **Buchanan-Moore v. County of Milwaukee**, 570 F.3d 824, 827 (7th Cir. 2009), *citing* **Pisciotta v. Old Nat. Bancorp**, 499 F.3d 629, 633 (7th Cir. 2007). A 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief can be granted. **Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7**, 570 F.3d 811 (7th Cir. 2009). Dismissal is warranted under Rule 12(b)(6) if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544, 570 (2007); **EEOC v. Concentra Health Services, Inc.**, 496 F.3d 773, 776 (7th Cir. 2007).

In **Tamayo v. Blagojevich**, 526 F.3d 1074, 1083 (7th Cir. 2008), the Seventh Circuit emphasized that even though **Bell Atlantic** "retooled federal pleading standards" and "retired the oft-quoted *Conley* formulation," notice pleading is still all that is required. "A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Id. Accord* **Pugh v. Tribune Co.**, 521 F.3d 686, 699 (7th Cir. 2008)("surviving a Rule 12(b)(6) motion requires more than labels and conclusions"; the allegations "must be enough to raise a right to relief above the speculative level").

Summary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. ***Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010)**; ***Breneisen v. Motorola, Inc.*, 512 F.3d 972 (7th Cir. 2008)**, *citing **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23 (1986)*. In ruling on a summary judgment motion, the district court must construe all facts in the light most favorable to, draw all legitimate inferences in favor of, and resolve all doubts in favor of the non-moving party. ***National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008)**.

When the non-moving party bears the burden of proof, though, he must demonstrate the existence of a genuine fact issue to defeat summary judgment. ***Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)**. To survive summary judgment, the non-movant must provide admissible evidence on which the jury or court could find in his favor. ***See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008)**.

In deciding a summary judgment motion, the court may not evaluate the weight of the evidence, judge the credibility of witnesses or determine the truth of the matter. The court's only role is to determine whether there is a genuine issue of triable fact. ***National Athletic*, 528**

F.3d at 512, *citing Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).

### C. Analysis

#### Common law indemnification

Illinois law recognizes that a cause of action for implied indemnity must derive from a pre-tort relationship between the parties, not merely their involvement in a common undertaking. Examples of pre-tort relationships which support a duty to indemnify include lessor/lessee, employer/employee and master/servant. *See, e. g., Schulson v. D'Ancona v. Pflaum, LLC*, 821 N.E.2d 643, 647 (Ill.App.Ct. 2004); *Kerschner v. Weiss & Co.*, 667 N.E.2d 1351, 1359 (Ill.App.Ct. 1996).

The Illinois Court of Appeals explained,

> [I]ndemnification may arise from contract or from situations in which a promise to indemnify can be implied from the relationship among tortfeasors. "The fundamental premise … is that the indemnitee, although without fault in fact, has been subjected to liability solely because of the legal relationship with the plaintiff or a nondelegable duty arising out of common or statutory law."

*Kerschner*, 667 N.E.2d at 1359, *quoting Frazer v. A.F. Munsterman*, 527 N.E.2d 1248 (Ill.1988).

The United States Court of Appeals for the Seventh Circuit reiterated this standard in *BCS Ins. Co. v. Guy Carpenter & Co., Inc.*, 490 F.3d 597 (7th Cir. 2007),

6

> Under Illinois law, implied indemnity is available to a principal who, through no fault of his own, is held liable for its agent's negligent tort against a third party.... Furthermore, implied indemnity is applied in situations where the indemnitee, although without fault in fact, has been subjected to liability *solely because of the legal relationship with the plaintiff* or a nondelegable duty arising out of common or statutory law. The ultimate purpose of indemnification is to shift the entire responsibility from the party who has been compelled to pay the plaintiff's loss to another who actually was at fault.

**490 F.3d at 603 (internal quotation marks and citation omitted) (emphasis added in *BCS*)**.

Emphasizing that the "liability must be wholly derivative" and result *solely* from the agent's actions, the Seventh Circuit held that to prevail on a claim for implied indemnity under Illinois law, a plaintiff must establish that there was a pre-tort relationship between the indemnitor and the indemnitee, and that the indemnitee was held derivatively liable for the acts of the indemnitor. ***BCS*, 490 F.3d at 603.**

Likewise, in ***Schulson*, 821 N.E.2d at 647** (which involved a third-party action for implied indemnity, but not a crossclaim), the Illinois Court of Appeals declared:

> Under implied indemnity, a promise to indemnify will be implied by law where a blameless party is derivatively liable to the plaintiff based on the party's relationship with the one who actually caused the plaintiff's injury.... To state a cause of action for implied indemnity, a third-party plaintiff must allege: (1) a pre-tort relationship between the third-party plaintiff and the third-party defendant, and (2) a qualitative distinction between the conduct of the third-party plaintiff and the third-party defendant.

Clearly then, to establish a claim for implied indemnity under Illinois law, the plaintiff (or third-party plaintiff or crossclaim plaintiff) must first demonstrate a pre-tort relationship between the indemnitor and the indemnitee. And to prevail on summary Judgment, the defendant must establish that no such pre-tort relationship existed.

To make this determination, the Court need not consider whether a contract existed between ConAgra and West Side because, under Illinois law, the lack of a contract between the indemnitor and the indemnitee "is irrelevant to the issue of whether a pre-tort relationship existed." ***Zajac v. Illinois Heating & Ventilating Co.*, 403 N.E.2d 674, 677 (Ill.App.Ct. 1980) (collecting cases)**.

West Side asserts that the Court should enter judgment on the pleadings because ConAgra has not sufficiently alleged an adequate pre-tort relationship that would give rise to a duty to indemnify. According to West Side, this case involves nothing more than a "common undertaking" by West Side and ConAgra to remove the material from the hot bin. West Side submits that ConAgra's cross-claim against West Side does not allege an employer/employee or master/servant relationship but rather alleges an amorphous "special relationship," upon which liability cannot be premised. Lastly, West Side contends that ConAgra is not a blameless party liable only for the acts of its contractor, West Side.

8

According to ConAgra, its pre-tort relationship with West Side began within 24 hours of its learning of the issue with the bin. ConAgra contacted West Side at that time and remained in contact until it hired West Side to clean out the bin. ConAgra asserts that it envisioned its relationship with West Side as owner/contractor from the beginning. West Side controlled and managed the work on the bin from the time it arrived at the site and that ConAgra's only involvement after contracting with West Side was undertaken at West Side's request.

Judgment on the pleadings because ConAgra did not specifically allege a particular relationship, such as master/servant, must be denied. Under federal notice-pleading standards, the "special relationship" alleged by ConAgra was sufficient to put West Side on notice of its claims. In Count 2, Common Law Indemnification (West Side), ConAgra alleges:

> If ConAgra is liable to Plaintiff herein by reason of the allegations set forth in his First Amended Complaint, which liability ConAgra expressly denies, then it will only be by virtue of the special relationship which existed between ConAgra and West Side.

Doc. 129, p. 6, ¶ 27. Whether the "special relationship" between ConAgra and West Side which supports a duty to indemnify is master/servant, owner/contractor or other, this allegation is sufficient under the **Tamayo** standard of providing "fair notice of what the claim is and the grounds upon which it rests" and showing "that it is plausible, rather than merely speculative, that [the plaintiff] is entitled to relief." **526 F.3d at 1083**.

9

Furthermore, ConAgra has offered sufficient evidence of a pre-tort relationship such that summary judgment is not warranted on this basis. ConAgra has shown a specific relationship beyond "mere involvement in a common undertaking." Setting aside the question of whether ConAgra and West Side entered into an express agreement, West Side was on-site on April 19 and undertook the task of cleaning the bin on April 20. A business relationship had been formed with more than mere involvement in a common undertaking. West Side had a prescribed job that was separate and distinct from ConAgra's responsibilities. The suggestion that they were acting "in common" simply does not describe their relationship. Moreover, West Side has elsewhere argued strenuously that control of the project always remained in ConAgra's hands. While the Court acknowledges that "a foolish consistency is the hobgoblin of little minds," West Side can scarcely now be heard to argue that the parties' relationship was merely a "common undertaking" rather than master/servant, owner/contractor or the like.

Even discounting the contacts between ConAgra and West Side prior to West Side's employees arriving at the site of the accident, West Side's actions evidence a pre-tort relationship. Neither ConAgra nor West Side has submitted any authority (nor has the Court discovered any) on the question of whether any particular length of time is required to establish a pre-tort relationship, but the Court is satisfied that the length of time that West Side was involved on-site was sufficient to establish such a

10

relationship. Indeed, West Side admits that there was a "pre-explosion relationship" – without defining how that differed from a pre-tort relationship, except to argue that the "special relationship" alleged by ConAgra is insufficient for purposes of common law indemnity (Doc. 255, Trans. 101:21-102:2).

West Side cannot surmount the initial hurdle of establishing that no pre-tort relationship existed. As a result, the Court need not also consider whether there was a qualitative distinction between ConAgra's conduct and that of West Side, **see *Schulson*, 821 N.E.2d at 647,** or whether West Side cannot be held derivatively liable for the acts of ConAgra, **see *BCS*, 490 F.3d at 603**.

Because a pre-tort relationship existed between ConAgra and West Side and that relationship was sufficiently pled, judgment on the pleadings or summary judgment on the issue of common law indemnity is not warranted. Whether the claims survive Rule 50 scrutiny is for another day.

### D. Conclusion

For the foregoing reasons, West Side's motion for judgment on the pleadings and for summary judgment (Doc. 195) is **DENIED**.

IT IS SO ORDERED.

DATED this 16th day of April, 2012

<u>s/Michael J. Reagan</u>
MICHAEL J. REAGAN
United States District Judge
