1                     IN THE UNITED STATES DISTRICT COURT
                     FOR THE SOUTHERN DISTRICT OF ILLINOIS
2

3    JOHN W. JENTZ, JUSTIN BECKER, )
     AMBER BECKER AND ROBERT       )
4    SCHMIDT,                      )
                                   )
5                    Plaintiff,    )
                                   )
6        vs.                       ) No. 10-00474-MJR
                                   )
7    CONAGRA FOODS, INC. AND WEST  )
     SIDE SALVAGE, INC.,           )
8                                  ) May 25, 2012
                     Defendant.    )
9

10                    **TRANSCRIPT OF PROCEEDINGS**
                 **TRIAL DAY/VOLUME #13 (A.M. SESSION)**
11             **BEFORE THE HONORABLE MICHAEL J. REAGAN**
                  **UNITED STATES DISTRICT COURT JUDGE**
12

13   **APPEARANCES:**

14   **For the Plaintiffs:**   Robert A. Clifford, Esq., Kevin P.
     Durkin, Esq., Colin H. Dunn, Esq., Brad L. Badgley, Esq.,
15   Marc A. Taxman, Esq., Sean P. Murray, Esq., Julie Levinson
     Pustilnik, Esq.

16   **For the Defendant (ConAgra):**   John W. Patton, Jr., Esq.,
     John A. Ouska, Esq., Joseph C. Orlet, Esq., John G. Schultz,
17   Esq., Jason B. Moore, Esq.

18   **For the Defendant (West Side):**   John G. Schultz, Esq.,
     Jason B. Moore, Esq.
19
     Court Reporter:            Laura A. Blatz, RPR, CRR, CCR(MO)
20                              U.S. District Court
                               750 Missouri Avenue
21                              East St. Louis, IL  62201
                               (618) 482-9481
22

23

24       Proceedings recorded by mechanical stenography;
     transcript produced by computer.
25

1      *(Court convened)*

2      *(Jury out)*

3          *THE COURT:*  First of all, responsive pleadings to

4      the Fifth Amended Complaint filed by Plaintiff Jentz, the

5      Second Amended Complaint filed by Plaintiff Schmidt, and the

6      Sixth Amended Complaint filed by Plaintiffs Becker,

7      Amber Becker and Justin Becker.  Responsive pleadings filed

8      at close of business next Thursday including any

9      counterclaims or cross-claims.  And the reasons we're doing

10     this at this juncture is because, while working on jury

11     instructions over the past several days, it became clear

12     that the plaintiff was going to streamline the complaints,

13     and it is my preference to go to verdict with the complaints

14     in the form that will mirror the jury instructions or at

15     least the expectation of the plaintiffs according to their

16     evidence and according to what they believe their theory of

17     the case is.

18         So as a result I gave them leave to file these

19     complaints and so now I give leave to the defendants, by

20     close of business on Thursday, to file their answers, any

21     affirmative defense, as well as any cross-claims or

22     counterclaims.

23         And then with respect to our agenda, I think next

24     is our Rule 50 motions at the close of the plaintiff's case

25     as well as at the close of all the evidence.  So that it is

```
 1    clear, because I don't think this was on the record
 2    initially, again let me repeat that, as a matter of
 3    accommodation, the parties have agreed that these motions
 4    are timely filed.  I asked the attorneys to not argue these
 5    at the close of the -- or even -- didn't even need to file
 6    them at the close of plaintiff's case or the close of all
 7    the evidence because I wanted to accommodate the jury, not
 8    take any time to argue those motions at the close of
 9    plaintiff's case.  In addition, did not want to
10    inconvenience any of the witnesses.  As a result, everybody
11    has stipulated that they are timely filed, both at the close
12    of plaintiff's case as well as close of all the evidence.
13           So at this time, out of the presence of the jury,
14    we're going to spend today working on Rule 50 motions, jury
15    instructions and other matters that need to be taken up
16    before the jury comes back on Tuesday for final argument.
17           So Mr. Ouska, on behalf of ConAgra, your motion for
18    directed verdict under Rule 50 at close of the plaintiff's
19    case, and if there's anything different you want to add,
20    close of all the evidence, I'll consider that.
21           MR. OUSKA:  Thank you, Judge.  Judge, as you know
22    from the evidence, this case is about an explosion that
23    occurred while West Side was working on ConAgra's bin.  When
24    ConAgra hired West Side to remedy the problem in the hot
25    bin, ConAgra's conduct prior to the start or beginning of
```

 1   West Side's work back on April 20th, 2010, may not and

 2   should not be considered in determining negligence,

 3   proximate cause as related in this case to the injuries

 4   sustained by Mr. Jentz, Mr. Becker and Mr. Schmidt.

 5          ConAgra merely created the condition that led to

 6   ConAgra's decision to hire the expert, West Side, to remove

 7   the pellets from the hot bin.  Once West Side started its

 8   work it was West Side's duty to exercise ordinary care in

 9   dealing with the bin and removing the product.  After

10   West Side started its work there was no evidence to support

11   that ConAgra was negligent in any way.  ConAgra did not

12   prevent West Side from conducting its work in a safe manner

13   nor did ConAgra force West Side to perform its work in an

14   unreasonably dangerous manner or in any unsafe manner.

15          The sole proximate cause, Judge, of this accident

16   was the conduct of West Side.  Its conduct caused the bin to

17   explode and its conduct, through Mel Flitsch, in ordering

18   both Mr. Jentz and Mr. Becker into the tunnel after the fire

19   department had been called and after the evacuation order

20   had been sounded, those acts were the proximate cause of

21   plaintiff's injury.  Again, the acts of West Side, through

22   its employees, including Mel Flitsch.

23          Yesterday you heard arguments again, Judge,

24   regarding punitive damages.  I will again be brief on that

25   issue.  Again, we believe that punitive damages has no place

1    in this case with respect to ConAgra.  Briefly, Judge, you

2    are the gatekeeper of this issue.  You must believe that

3    justice requires the jury's consideration of punitive

4    damages.  It is our position that justice certainly does not

5    require such an onerous imposition or consideration by this

6    jury.

7          For those reasons, and all the reasons set forth in

8    our written motion, Judge, we'd ask that our motion be

9    granted.  Thank you.

10         THE COURT:  Plaintiff's response?

11         MR. DUNN:  Yes, Judge.

12         THE COURT:  On behalf of Schmidt and Jentz.

13         MR. DUNN:  That's right.

14         Judge, you've heard the evidence in the case, and

15   certainly we believe that a reasonable jury could find, in

16   viewing the evidence in the light most favorable to us, that

17   both ConAgra's negligence was a proximate cause in the

18   injuries that both Mr. Jentz and Mr. Schmidt sustained, as

19   well as they committed those acts with a conscious disregard

20   for the safety of both Mr. Jentz and Mr. Schmidt.

21         You heard specifically that ConAgra was aware there

22   was a fire in the bin as early as March 12th, 2010, that

23   they delayed doing anything to remedy that situation because

24   of a concern of money, and they put money over safety in the

25   case.  You heard that from several witnesses who are

1    longtime ConAgra employees who all believe that, not only

2    did Mr. Friedt put money over safety in this case -- and

3    Mr. Friedt is a managerial employee, that's not disputed --

4    but also that he refused to call the fire department despite

5    the repeated requests to do so because of a concern about

6    what happened in this case, that being that an explosion in

7    the bin.

8            So we certainly believe that the evidence would

9    support a jury's finding in this case that, viewed in the

10   light most favorable to us, that ConAgra's conduct was a

11   proximate cause of the injuries sustained by Mr. Jentz and

12   Mr. Schmidt.  We've already argued and the Court has ruled

13   on the fact that a reasonable jury could find that ConAgra

14   committed those acts and omissions with a conscious

15   disregard for the safety of both Mr. Jentz and Mr. Schmidt.

16   Obviously, the Court denied a motion for summary judgment

17   earlier, and so for the reasons we've stated in that

18   response, we believe that the Court properly has put the

19   issue to the jury on whether or not ConAgra's conduct was

20   not only wilful and wanton but also warranting punitive

21   damages.

22           *THE COURT:*  Mr. Taxman?

23           *MR. TAXMAN:*  Thank you.  Thank you, Your Honor.

24   Mark Taxman for the Becker's.

25           I'd adopt everything Mr. Dunn just said on behalf

 1   of Jentz and Schmidt, and equally applicable to the

 2   Becker's.  I would only add final observation that seems

 3   that the argument made by ConAgra in support of their motion

 4   at this point is that, because they hired West Side, that

 5   they no longer had a duty.  And the evidence clearly stated

 6   in the case that there was a hierarchy within ConAgra that

 7   applied at all times to this bin and there was a duty, so I

 8   believe the motion should be denied, should go to the jury.

 9         THE COURT:  Okay.  Mr. Schultz, on behalf of

10   defendant West Side.

11         MR. SCHULTZ:  West Side stands on the positions

12   taken in the Rule 50 motion that a submissible case has not

13   been made for punitives, and that would be that the decision

14   by Mel Flitsch to send those men in was not a money-driven

15   decision.  There was no financial incentive for that.  In

16   fact, the reason he did it was to remove or move equipment

17   so the fire department could come in and try to address this

18   situation that was developing in the bin.  So it had a

19   safety component to it.  It was not malicious.  There was no

20   aforethought to it.  He did it in the heat of the moment and

21   I don't think that his actions give rise to a punitive

22   damage submission.

23         Other than that, we'll stand on what's in the

24   written motion.

25         THE COURT:  Mr. Dunn?

1           MR. DUNN:  Judge, the evidence is that Mr. Flitsch

2    sent Mr. Jentz back into the building knowing that the fire

3    department had been summoned because of his concerns that

4    there was going to be something bad about to happen.  We

5    think that that's the equivalent of sending somebody back

6    into a burning building, which any jury could easily find to

7    be of conscious disregard.  So based on that, we would

8    believe that looking at the evidence most favorable to us,

9    that there's certainly evidence that would support a

10   punitive damage award as to Mr. Jentz.

11          As to Mr. Schmidt, there's evidence that there was

12   vital information that was not provided to A&J, that being

13   the smoke, the high temperatures, the fact that fire had

14   been found.  I understand West Side's position is that they

15   were not told any of that information, but certainly we're

16   confident in the evidence Mr. Friedt said that that was told

17   to him, so we think at this point there's sufficient

18   evidence in the case that would warrant a punitive damage

19   instruction and award for Mr. Schmidt as well.

20          THE COURT:  Okay.  With respect to these motions

21   filed both at the close of plaintiff's case and at the close

22   of all the evidence, again, they're timely filed and argued.

23   Parties stipulated they were timely filed.

24          Under Rule 50, if a party's been fully heard on an

25   issue during a jury trial and the Court finds that a

1  reasonable jury would not have a legally sufficient

2  evidentiary basis to find for the party in issue, the Court

3  may resolve the issue against the party and may grant a

4  motion for judgment as a matter of law against the party on

5  a claim or defense that under controlling law can be

6  maintained or defeated only with a favorable finding on that

7  issue.

8       With respect to the West Side motions filed at

9  Document 382 as to Jentz, 383 as to Schmidt, and 397 as to

10  ConAgra, the Court denies the motion for Rule 50, concluding

11  that a reasonable jury could find that the claims filed

12  against West Side in those respective cases are viable.

13       With respect to the motions filed by ConAgra at

14  Doc. 391 and 392, I'm going to take under advisement because

15  I've not read the submissions.  I didn't know until just a

16  few moments ago that they were, in fact, filed in writing

17  because of a docketing glitch that listed them as something

18  other than a pending motion.

19       If I grant any relief under either of those motions

20  I will notify you by 5:00 tomorrow evening.  Have your cell

21  phone numbers.  Otherwise, I'll get a written order on

22  those.  So Docs. 391 and 392 are taken under advisement.

23       Okay.  Let's go off the record now.

24  *(Off the record)*

25                    *   *   *   *

1            *THE COURT:*  We're back in open court on the record.

2            The following instructions are going to be placed

3    in a common packet and are the instructions that the parties

4    have agreed to without objection.  So the record's clear, on

5    Monday, Tuesday and Wednesday of this evening we met off

6    site for about two-and-a-half hours each evening to go over

7    instructions.  I have ruled on some of them off the record.

8    Some I have not ruled on and have reserved ruling.

9            The parties have gotten together for many, many

10   more hours than I have to discuss instructions, and I met

11   with some of the individuals last night to go over

12   instructions, so that is why I can say that these

13   instructions are given without objection.

14            Following instructions given, no objection:

15   ConAgra instruction No. 7, which is Seventh Circuit 1.07.

16   ConAgra instruction No. 8, Seventh Circuit Pattern

17   instruction 1.08, given, no objection.  ConAgra instruction

18   No. 9, Seventh Circuit 1.09, given, no objection.  ConAgra

19   instruction No. 13, Seventh Circuit Pattern 1.11, given, no

20   objection.  ConAgra instruction 14, Seventh Circuit Pattern

21   1.12, given, no objection.  ConAgra instruction one -- 16,

22   Seventh Circuit Pattern 1.14, given, no objection.  ConAgra

23   instruction No. 17, Seventh Circuit Pattern 1.16, given, no

24   objection.  ConAgra instruction No. 18, Seventh Circuit

25   Pattern 1.17, given, no objection.  ConAgra instruction 20,

1    pattern instruction 1.21 from the Seventh Circuit, given, no

2    objection.  ConAgra instruction 21, Seventh Circuit Pattern

3    1.24, given, no objection.  ConAgra instruction 23,

4    Seventh Circuit Pattern 1.27, given, no objection.  ConAgra

5    instruction 26, pattern instruction 1.33 from the

6    Seventh Circuit, given, no objection.  ConAgra instruction

7    27, Illinois Pattern Instruction 10.01, given, no objection.

8    Becker instruction No. 1, IPI 50.11, given, no objection.

9    ConAgra instruction No. 2, Seventh Circuit Pattern 1.02,

10   given, no objection.  Becker instruction No. 3,

11   Seventh Circuit 1.01, given, no objection.  ConAgra

12   instruction No. 3, Seventh Circuit 1.03, given, no

13   objection.  ConAgra instruction 4, Seventh Circuit Pattern

14   1.04, given, no objection.  ConAgra instruction No. 5,

15   Seventh Circuit 1.05, given, no objection.  ConAgra

16   instruction No. 6, Seventh Circuit Pattern 1.06, given, no

17   objection.  ConAgra instruction No. 2028 IPI 10.02, given,

18   no objection.  ConAgra instruction 30, IPI 10.04, given, no

19   objection.  ConAgra instruction 36, IPI 15.01, given, no

20   objection.

21        Okay.  Now off the record.

22        *(Off the record)*

23                    *   *   *   *

24        *THE COURT:*  We're back on the record.  The

25   following instructions are in the Justin Becker case --

  1    strike that.

  2           There's another common instruction to which there

  3    was no objection.  This is ConAgra instruction 19,

  4    Seventh Circuit Pattern 1.18, and it's given, no objection.

  5    There's an instruction to which there was no objection that

  6    was to go in the common packet, but yesterday when Paul and

  7    Julie and Jason and Colin and I were in the back, Paul

  8    indicated he would like to re-argue whether or not this

  9    should go in every packet as opposed to a common packet.  It

 10    is ConAgra 25, Seventh Circuit 1.31 modified, and it reads:

 11           *If you decide for a defendant on the question of*

 12           *liability, then you should not consider the question*

 13           *of damages as to that defendant.*

 14           Paul, could you --

 15           *MR. ESPOSITO:*  Our only point is, if we're telling

 16    the jurors, you know, to consider plaintiff by plaintiff,

 17    which we are, and we're putting all the damages instructions

 18    in a packet for a particular plaintiff -- this is a damages

 19    instruction too.  It's telling them not to consider damages

 20    if they've ruled against the plaintiff on liability.  The

 21    jury shouldn't have to go back and look in a common

 22    instruction, and frankly, they might very well forget what's

 23    in the common instructions.  This is a gentle simple

 24    reminder that in every case you're just -- you're looking at

 25    liability first, and if liability, then damages.  So we feel

1   it goes appropriately in each packet.

2           MR. SCHULTZ:  We join in that on behalf of

3   West Side.

4           MR. DUNN:  Judge, this instruction I have, it's

5   presented in the common packet because it's common to all

6   plaintiffs.  The point that ConAgra and West Side's making

7   is that they want to emphasize this repeatedly over and over

8   and over again, and that's unfair to the plaintiffs because

9   no instruction should be unfairly or unduly emphasized, and

10  that's why they want this four times.  It's accurately

11  stated.  That's why it's common instruction, it goes to the

12  common packet.

13          MR. CLIFFORD:  I think to add to that, it is

14  cumulative (a); (b) I don't think any instruction should be

15  given more than one time.

16          MR. ESPOSITO:  If that's the case then we should

17  take all the instructions on present cash value, that kind

18  of stuff and flip them all into common.  We got a mess on

19  our hands just to try to do all that.  I was the one that

20  put them in the separate packets.  It just made sense that a

21  jury is understanding the damages issues with regard to a

22  particular plaintiff.  Everyone agrees that it accurately

23  states the law.  It just makes sense to put all the damages.

24          MR. CLIFFORD:  That's advocacy.  I mean John and

25  John are going to say throughout their remarks to the jury

 1   that they should not consider damages for a defendant that

 2   the jury rightly in their minds should find not at all

 3   responsible.

 4        *THE COURT:*  Okay.  I understand the point.  I'm

 5   going to deny it for two reasons:  The first is, I don't

 6   think it's going to be the problem you think it is because

 7   of the way I'm going to tell the jury how to handle the

 8   folders.  I'm going to tell them that each case is

 9   individual and falls and stands on its own merits, with the

10   exception of Amber's, who can only succeed if Justin

11   succeeds.  And that when they decide to, for example,

12   deliberate on the Jentz case they should have the red Jentz

13   folder in their hand and they should have the green common

14   folder in their hand and that full set of instructions is

15   what they should consider as they consider Jentz.  Then I'm

16   going to tell them the same thing:  When they get to Justin

17   Becker, they need to use the green and blue folders.

18        The second thing, I think it's confusing to put

19   this in Amber Becker's packet.  She can only succeed if

20   Justin succeeds.  And I'm going to clear that up with

21   another instruction we have.  So I'm going to give it over

22   objection.  To the extent that the defense wants it in

23   individual packets, I'm going to place it in the common

24   packets.

25        So I'm going to -- should I show an objection to it

 1   though to the extent that it's not in the other packets?

 2           *MR. ESPOSITO:*  Objection to that extent.

 3           *THE COURT:*  By West Side Salvage and ConAgra.  So

 4   the record's clear, on each instruction that is marked I

 5   have used a stamp.  It says: *Given, refused, no objection,*

 6   *objection by plaintiff, defendant*, and then there's a line.

 7   I circle the appropriate ruling the Court makes and on the

 8   line I write "CA" for ConAgra, "WSS" for West Side.  So for

 9   example, on this last instruction it's going to be shown

10   that I gave it, there was an objection by West Side Salvage

11   and ConAgra.  Okay.  That will go in the common.

12           All right.  The next agreed-to instruction in the

13   Justin Becker case is ConAgra's 49.  It is the Verdict Form

14   C, given, no objection.

15           *MR. ESPOSITO:*  You going to -- I think I tendered

16   you one that had the case caption on it, Your Honor.

17           *THE COURT:*  Yes.  The one with the case caption is

18   the one that goes to the jury.  You can see it.  The marked

19   copy doesn't have the caption, which is no big deal.

20           *MR. OUSKA:*  The number and -- which one was that?

21           *THE COURT:*  ConAgra 49 in Becker, correct.

22           Next agreed instruction is ConAgra 104.  It's IPI

23   600.02.  It talks about the relative degree of legal

24   responsibility.  Given, no objection.  This goes in

25   Justin Becker.  The next given, no objection, Justin Becker,

 1   is instruction 11, IPI 34.04, mortality tables.  The next

 2   given, no objection, in Justin Becker is definition of loss

 3   of a normal live.  It's ConAgra No. 40.  It's IPI 30.04.02.

 4        Okay.  This instruction needs argument.  It is

 5   ConAgra 31A, IPI 12.04.  And there's an objection by Becker

 6   to this instruction.

 7        MR. TAXMAN:  Judge, we object to the long form

 8   being given in this case.  Again, we've discussed this.  No

 9   reason had been articulated so I'd kind of like to hear

10   their argument and I'd like to respond to it if I could.

11        THE COURT:  Okay.  Remember, we have a unique

12   situation in this case where I indicated off the record that

13   I thought I would give the long form in the Becker case but

14   not in Jentz and Schmidt, the reason being that in Becker

15   there is one defendant not present at the table; whereas,

16   in -- and that would be West Side; whereas, in Jentz and

17   Schmidt, West Side is a directly named defendant.

18        So argument on behalf of ConAgra as to why this is

19   an appropriate instruction in the Becker case.

20        MR. ESPOSITO:  May I add, Your Honor, before I get

21   to that argument, that we tendered 31 that you also refused.

22        THE COURT:  And we'll get to refused.  What I want

23   to do is all the ones that I'm going to give or argue that I

24   haven't decide.  Refused we'll do at the end.

25        MR. MOORE:  I want to make sure West Side's heard

1    on this as well.

2          *THE COURT:*  Sure.  Everybody's going to get a

3    chance.  Just because this says objection, Becker, doesn't

4    mean somebody else doesn't have one.

5          *MR. ESPOSITO:*  This is the sole proximate cause

6    instruction, Your Honor, requesting the long form.  Just as

7    a plaintiff does not have to point to a single defendant, we

8    don't have to -- you know, we don't have to establish

9    100 percent cause.  We are entitled to point to anyone who's

10   been in the case whose conduct was a proximate cause of the

11   fault.  That will include people who have not been sued or

12   have been sued.  If we're bringing them in, if we've sued

13   them or if someone else has sued them, they could be a cause

14   of the accident.  We are entitled to point to the fact that

15   they are the sole proximate cause.

16          I think the evidence -- Mark had asked for an

17   evidentiary showing.  I can't stand up here and give all the

18   evidence but I can tell you that it was absolutely clear

19   from Mel Flitsch's testimony that there's sufficient

20   evidence to establish that West Side was the sole proximate

21   cause.  There's sufficient evidence to establish from

22   Gene Schwers's testimony that West Side was the sole

23   proximate cause.  Everyone can dispute it, everyone can make

24   their arguments, but the Supreme Court's standard isn't that

25   the Court is the determiner of who's the sole proximate

 1    cause.  If there's any evidence, it goes to the jury.  And

 2    consequently, this instruction is a proper instruction.

 3    Frankly, I think this is such a serious issue that it would

 4    be reversible error not to give this instruction, not to

 5    give a long form instruction.

 6         *THE COURT:*  Mr. Taxman?

 7         *MR. TAXMAN:*  I disagree with the evidence.  They

 8    pointed to two causes, and how can one of them be sole?  I

 9    don't think they've met their burden to have this

10    instruction.  I still object to it.

11         *MR. MOORE:*  Your Honor, West Side objects.  We just

12    feel like there's not sufficient evidence upon which a

13    reasonable jury could conclude that West Side was the sole

14    proximate cause of the explosion.  There's ample evidence in

15    the case as to ConAgra's delay and mishandling of the

16    situation, which led to the explosion.  I don't think it's a

17    situation where ConAgra simply set the table or created the

18    condition and then West Side came in and independently or

19    affirmatively caused something that wasn't going to happen

20    anyway.  So I think that -- I don't disagree that the

21    instruction can be given in certain instances, but this is

22    not one of them.  For lack of evidence, we object to the

23    long form.

24         *MR. ESPOSITO:*  Your Honor, Mark said that I pointed

25    to two causes.  Actually, I only pointed to one.

```
 1    Gene Schwers and Mel Flitsch work for the same company,
 2    West Side.  That's who we're pointing to as at fault; not
 3    Schwers and Flitsch, but West Side, who acts through their
 4    agents.  You know, the -- you heard the argument.  You heard
 5    the evidence.  The question -- we're not to be here
 6    resolving the issue of sole proximate cause.  We're here to
 7    decide whether there is evidence that was presented to the
 8    jury from which a jury could reasonably find -- in other
 9    words, they would have to argue that, under the Pedrick
10    standard, the federal equivalent -- I can't remember which
11    is applicable right at this moment, but under either
12    standard, a verdict saying that West Side was the sole
13    proximate cause could never stand.  That just can't be the
14    case under the evidence in this case.
15         MR. MOORE:  Your Honor, one more thing.  I believe
16    there's been expert testimony in this case to the effect
17    that, had ConAgra gotten the material out of the bin
18    earlier, the situation never would have arisen.
19         THE COURT:  Okay.  I'm going to give this
20    instruction over objection of both the plaintiff Becker and
21    third-party defendant West Side Salvage.  We're in a unique
22    position with respect to these consolidated cases that will
23    ultimately, I believe, lead me to give the long form as to
24    the Becker case and the short form as to Jentz and Schmidt.
25              The instructions on use indicate that this
```

 1   instruction should be used only where negligence of a person

 2   who is not a party to the suit may have occurred or -- may

 3   have concurred or contributed to cause the occurrence.   In

 4   this case it is not up to me to decide, as a matter of law,

 5   whether or not there's been a sole proximate cause shown.

 6   Proximate cause is uniquely a jury situation.   A jury could

 7   find in this case that West Side Salvage was the sole

 8   proximate cause.   That would thereby obviate ConAgra of

 9   responsibility.

10        So this instruction, which is ConAgra No. 31A, is

11   given over objection of the plaintiff and West Side Salvage.

12   And I would note that there are, as we go throughout our

13   instruction conference today, some alternate instructions

14   that have been tendered that I said I was going to refuse.

15   I know ConAgra will not have one to this but we'll get to

16   them later.   For organizational purposes it's easier for me

17   to get through what I'm going to give, argue, and ones I

18   said I'm going to refuse we'll do at the very end.

19        Let's go off the record then.

20        **(Off the record)**

21                        *   *   *   *

22        *THE COURT:*   The next instruction to which there is

23   an objection is 45.01, Becker instruction 12A.   There's

24   objections by West Side Salvage and ConAgra.   And I know

25   that wilful and wanton is an issue in this case.   Let's

1   start with, Mr. Esposito, your objection to this

2   instruction.

3         MR. ESPOSITO:  Your Honor, if I recall this

4   instruction correctly, this was an issue where we had

5   contributory wilful and wanton misconduct in the case.  Am I

6   right?  Is that your recollection?

7         THE COURT:  And your -- well, I think objection for

8   one for sure is that it instructs wilful and wanton, to

9   which you object.  I know that.

10        MR. ESPOSITO:  That's right.  I'm sorry.  I'm --

11   yes.  Our objection, Your Honor, is that the plaintiffs have

12   not made a submissible case for wilful and wanton

13   misconduct, particularly given the fact that the only

14   reason, as all plaintiffs have conceded -- certainly the

15   Becker's have conceded that the only reason they have a

16   wilful and wanton count in here is to get punitive damages.

17   If that is the case, and it is, then their showing of wilful

18   and wanton conduct has to be far more than the slightly

19   above negligent conduct that is allowable if the plaintiffs

20   were here seeking compensatory damages for wilful and wanton

21   misconduct.

22         The Supreme Court of Illinois, in the case of

23   Lloyd's vs. Remington Arms -- Justice Miller decided the

24   case -- made it clear that the conduct that supports a

25   punitive damage claim has to be quasi criminal in nature.

1    "Quasi criminal" means that if the legislature had defined

2    conduct as a crime, this would fit in the definition of a

3    crime.  This nowhere does.  I won't repeat all the evidence

4    but I will say there's certainly evidence of -- whatever you

5    want to say about the negligence of ConAgra, we don't

6    believe it's there, but whatever you want to say about it,

7    the conduct did not rise to the level of quasi criminal

8    misconduct.

9         They were out there, they were trying to do the

10   right thing, they were trying to do it in a timely fashion.

11   They weren't displaying a conscious and reckless disregard

12   for a danger.  If anything, they were displaying an

13   attention to safety.  They were trying to get the problem

14   done.  We can't take cases that involve negligence and use

15   words to turn them into wilful and wanton misconduct.  We

16   have to look at the conduct, and more particularly, we have

17   to look at the mental state.  The mental state in a wilful

18   and wanton case is critical.  It's what distinguishes

19   negligence from wilful and wanton.  It's the difference

20   between running a red light because you weren't paying

21   attention to the red light and running the red light because

22   you said, *I don't care, I'll get through.*  That's the

23   difference.

24        That was not what was displayed in this case under

25   no one's version of the evidence.  Whatever mistakes,

1    arguendo, were made, it was not because people didn't care

2    about safety and it was not quasi criminal conduct.  So with

3    that -- you know, the evidence -- we all know the evidence.

4    It just doesn't support wilful and wanton.

5            I think our second objection, if I remember, was

6    that if our conduct is wilful and wanton, then Mr. Becker's

7    conduct is too.  He was a trained person.  He was trained

8    probably since boyhood to know the dangers of fire.  He was

9    trained to know, I'm sure, that you don't go back into a

10   building that's about to explode or about to catch fire.  He

11   slavishly obeyed an order from someone who wasn't his true

12   boss, because he's a West Side guy -- actually, I take that

13   back.  It was his true boss.  Getting confused.  He obeyed

14   an order when he didn't have to.  I think the evidence as to

15   safety is, everyone takes care of themselves first, and he

16   didn't.  He didn't have to go back in there.  He could have

17   said, *I'm not going in there.*

18       *THE COURT:*  You're getting into argument now, Paul.

19   I understand your point on the --

20       *MR. ESPOSITO:*  I'll stop.

21       *THE COURT:*  That's for the jury.  Off the record.

22   **(Off the record)**

23                    *   *   *   *

24       *MR. TAXMAN:*  I'm not going to respond to objection

25   No. 2 -- it's not germaine to this question -- but I adopt

 1    the same comment that I made about the wilful and wanton.

 2             THE COURT:  I don't know that we were on -- may not

 3    be on the record.  You mean remember all this stuff we did.

 4             MR. TAXMAN:  I mean at the close of both cases

 5    before we played the video.

 6             THE COURT:  We had argument at the pleading stage.

 7    We argued summary judgment.

 8             MR. TAXMAN:  But I mean, again, there is ample

 9    testimony to support this wilful and wanton, and I disagree

10    with the hypothetical about the red light.  These are people

11    who had written policies that told them exactly what to do.

12    They did the opposite.  By "these people", I mean ConAgra.

13    These are management personnel that disregarded specific

14    requests to call the fire department and wouldn't do it.

15    This is specific management people knowing that a horrendous

16    situation that they know can end in a tragedy is going on

17    for six hours and they don't take any action, and they

18    should have, and they had over two lifetimes, by their own

19    expert's testimony, to do something.

20             THE COURT:  And Mr. Schultz, Mr. Moore, I had you

21    joining in the objection to the extent this could be passed

22    on to you through contribution.  You object to punitive

23    damages being given?

24             MR. MOORE:  Yes.

25             THE COURT:  Any additional argument?

1        MR. MOORE:  No additional.

2        THE COURT:  12A is given over objection of

3   West Side and ConAgra in Justin Becker.

4        MR. CLIFFORD:  What I did is I left them in the

5   order in which you gave them to me.  If Paul doesn't mind,

6   I'll put them in the order I think they should be.  I think

7   that might be easier.  I'm just doing it topically.

8        MR. ESPOSITO:  Sure.  Pass them to John.

9        THE COURT:  Then give them to Patton.  He needs

10  something to do.

11       The next Becker instruction to which there's an

12  objection is Becker 22 on punitive damages.  It's IPI 35.01.

13  There are objections both by ConAgra and West Side Salvage.

14       MR. ESPOSITO:  Our objection, Your Honor, was that

15  we don't believe this is a punitive damages case.

16       THE COURT:  Off the record a second.

17    **(Off the record)**

18                    *  *  *  *

19       THE COURT:  For same reasons the Court's

20  articulated in the past regarding punitive damages, I

21  believe this is an appropriate instruction in the Becker

22  case.  22 for Becker will be given over objection of both

23  ConAgra and West Side Salvage.

24       23A for Becker is IPI 35.02 modified.  There's an

25  objection to it by both ConAgra and West Side.  Again, it

 1    involves punitive damages.

 2            *MR. ESPOSITO:*  Punitive damages, we object to that.

 3            *THE COURT:*  Same argument?

 4            *MR. TAXMAN:*  Yes.

 5            *THE COURT:*  Court adopts its prior rulings.  23A

 6    given over objection of ConAgra and West Side.

 7            Off the record now.

 8     **(Off the record)**

 9                            *  *  *  *

10            *THE COURT:*  Becker instruction 6 is IPI 14.04, and

11    it is given without objection.  Tells the jury the parties

12    and the counts.

13            *MR. ESPOSITO:*  This is given with objection only

14    because it's wilful and wanton.

15            *THE COURT:*  I'm sorry, you're right.  I will show

16    that as given with objection.  Given, objection by ConAgra

17    and West Side Salvage, because it refers to punitive

18    damages.

19            Next is Becker 9, 34.01, damages in the future.

20    Given, no objection.  Okay.  Next is an instruction to which

21    there is an objection.  It's Becker 25.  It's IPI 21.02.02,

22    and there are objections as to minimum, the wilful and

23    wanton counts by both West Side and ConAgra.  Anything else?

24            *MR. ESPOSITO:*  That's correct.

25            *MR. PATTON:*  No.

 1          *THE COURT:*  Okay.  So it will be given over

 2     objection of both West Side and ConAgra.

 3          Let's go off the record a minute.

 4     **(Off the record)**

 5                    *   *   *   *

 6          *THE COURT:*  Mr. Esposito, your objection as to

 7     Becker instruction 25 -- in addition to the fact that I am

 8     instructing on punitive, my understanding is you also have

 9     an objection as to the burden of proof?

10          *MR. ESPOSITO:*  Correct, Your Honor, as to any

11     punitive count, wilful, wanton, we object.  It should be the

12     burden is clear and convincing evidence.

13          *THE COURT:*  Mr. Dunn, your response?

14          *MR. DUNN:*  Judge, there's no case that ConAgra has

15     tendered in this case that supports that position any way,

16     shape or form.  Their argument, as I understand it, is that

17     there's some public policy reasons why it should be done.

18     The IPI doesn't support that proposition.

19          I would also note, to the extent there is some

20     public policy basis for it, that the Illinois legislature

21     had passed a statute that required that.  That statute was

22     found to be unconstitutional by the Illinois Supreme Court.

23     So clearly, as the law stands right now, it is clearly the

24     law that, as I understand, the only issue as to whether or

25     not Illinois law requires it, Illinois law does not require

```
 1    it, and if they were to require it, the legislature would
 2    have to tell this Court that that's the case.
 3                MR. ESPOSITO:  Just quickly.
 4                THE COURT:  Wait a minute.
 5                MR. TAXMAN:  I'll adopt those arguments.
 6                MR. ESPOSITO:  Quickly, Your Honor.  I think the
 7    U.S. Supreme Court has recognized that clear and convincing
 8    evidence standard provides a check on punitive damages.
 9    Frankly, I think it's going to be a due process violation if
10    you don't.  It's too great a penalty to impose such a low
11    standard of care -- so low burden of proof, excuse me.  I
12    think it would be a due process violation to go with
13    preponderance of the evidence in these kind of cases.
14                THE COURT:  Okay.  And I heard lengthy argument off
15    the record.  I found no authority, nor has counsel cited to
16    me authority, that the burden of proof is heightened.  The
17    jury's told in a specific instruction about what they can
18    consider and not consider, including whether it's required
19    for the public good, and so I'm going to overrule the
20    objection, and the jury will be informed that the burden of
21    proof throughout the case is preponderance rather than clear
22    and convincing.
23                Next -- double check this.  I don't think there's
24    an objection to this.  It's Becker 10B, 34.02, future
25    damages being reduced to present value.  The change we made
```

1    on this one, I think the reason we had sexual relations and

2    companionship in there, that did not belong in Becker so we

3    had stricken that.

4         *MR. ESPOSITO:*  I think this is correct.

5         *THE COURT:*  We took health out and included

6    services.

7         *MS. LEVINSON:*  We've also added emotional distress.

8         *THE COURT:*  Wait a minute.  There is something new

9    here then.  They've added emotional distress and --

10        *MR. ESPOSITO:*  We object to that.  That goes

11   into -- the emotional distress is part of the pain and

12   suffering component.  They're fully entitled to recover for

13   emotional distress but under the pain and suffering

14   component.

15        *MR. MURRAY:*  The only thing I would point out,

16   Judge, I think under the mental suffering aspect we're

17   talking about conscious awareness of an event, you know,

18   them being there and what they went through.  I think with

19   emotional distress we're getting into shock and panic, and

20   certainly there's been evidence in this case that the fire

21   ball coming, you know, the experience of that and everything

22   he went through, and I think that's the distinction here.

23        *MR. ESPOSITO:*  I don't think the distinction

24   supports it.  If you look on 30.07, it speaks about this

25   element in connection with the claim for negligent

1    infliction of emotional distress, like a Rickey claim or

2    something like that.  As I said, there -- all these things

3    that Sean just talked about are compensible under the pain

4    and suffering component.  We don't dispute that at all.  But

5    to put the emotional distress in there along with pain and

6    suffering is going to provide an improper double recovery.

7         THE COURT:  This is 30.05.01.  It's going to come

8    up in several other instructions.  It's an itemized element

9    of damages under the Illinois Pattern Instruction, and it

10   reads:

11          *The emotional distress experienced and*

12          *reasonably experienced, to be reasonably to be*

13          *experienced in the future.*

14        The comments say:

15          *Under certain circumstances a plaintiff can*

16          *recover damages for negligent infliction of emotional*

17          *distress even in the absence of a physical impact.*

18        Does that not intimate that if there is a physical

19   impact that this is a recoverable element?

20        MR. ESPOSITO:  They're really talking about the

21   Rickey cases.

22        THE COURT:  They are *Rickey vs. Chicago Transit*.

23        MR. ESPOSITO:  Where you're a bystander in the zone

24   of danger type of thing, you know, and you've suffered great

25   emotional distress because of it, but you weren't hurt

 1  physically by the accident.  That's what they're getting.

 2  Again, their claim for emotional distress is fully

 3  compensible pain and suffering.  The pain, physical

 4  suffering, mental at all stages of their journey here, and

 5  that's the way it should be worded.

 6          THE COURT:  Mr. Dunn?

 7          MR. DUNN:  Judge, I have a case that cites the

 8  proposition that it's a separate item of damages.  As I

 9  understand ConAgra's argument here, they're not arguing that

10  this evidence doesn't support the finding as to emotional

11  distress, but that it cannot be a separate line item in the

12  cases.  I can't pronounce the name, *B-A-B-I-K-A-N vs. Mruz*,

13  M-R-U-Z, 2007, Ill.App. 1st, 102579.  That's a medical

14  malpractice case where the plaintiff was permitted to have,

15  as a line item, emotional distress, even though No. 1,

16  negligent infliction of emotional distress was -- and No. 2,

17  there was a separate line item for pain and suffering.

18  That's Illinois' appellate court case, recent case that

19  permitted the separate line item for that.  So based upon

20  that, Judge, we'd ask that it be a separate line item in

21  this case.

22          THE COURT:  What was the nature that case?

23          MR. DUNN:  Medical malpractice case.

24          MR. ESPOSITO:  I can't speak for the case but it's

25  the wrong law.

1          MR. MOORE:  Although we don't have a dog in this

2     fight, we just adopt and incorporate.

3          THE COURT:  Becker 10B given over objection of both

4     ConAgra and West Side.

5          Next we have Becker 8B, as in boy.  This also has

6     an emotional distress in it.  That is different from what we

7     discussed off the record the past few nights.  Same

8     objections?

9          MR. ESPOSITO:  Our objection's the same,

10    Your Honor.

11         THE COURT:  Okay.  Are there any other objections

12    to this instruction?

13         MR. MOORE:  Judge, I'm going to stop interjecting

14    if you just write in West Side Salvage anyway.  But I think

15    we're in line with ConAgra on these Becker instructions even

16    though we're not a direct defendant.

17         THE COURT:  Just keep me honest on it because I

18    don't want to miss anything.

19         MR. MOORE:  I noticed after I said it last time

20    you'd already written it in there.

21         THE COURT:  Sometimes I forget.  I have these

22    moments.  They come after having more than two kids.  If I

23    haven't warned you enough, I don't know what else I can say.

24         Any other objection?  Okay.  It's given over

25    objection of both ConAgra and West Side.

 1              Okay.  Then we have Verdict Form A.  There's

 2    objection to this by both West Side and ConAgra, again,

 3    because it includes emotional distress.  There's also an

 4    objection to this by, I know ConAgra, because the items have

 5    been line itemed both past and future.

 6              *MR. ESPOSITO:*  Correct.

 7              *THE COURT:*  So I know those are objections.  If

 8    there are any additional, I'm happy to hear them, and please

 9    argue the objections you do have.

10              *MR. ESPOSITO:*  This is verdict form -- Judge, just

11    for point of clarification.  This is the instruction that

12    we're tendering if they find no comparative fault by

13    ConAgra, correct?  Then there's going to be another one if

14    there is comparative fault?

15              *THE COURT:*  Correct.  The next one is B, and we

16    have your C.

17              *MR. ESPOSITO:*  I believe -- so then the objections

18    you articulate for us that you stated, that's it?

19              *THE COURT:*  Also objected to West Side.  So

20    instruction 13B is given over objection of ConAgra and

21    West Side.

22              Off the record.

23         ***(Off the record)***

24                        *   *   *   *

25              *THE COURT:*  Next is Verdict Form B.  It's

```
 1    instruction 14B, IPI 600.14.  Again, the objection behalf of

 2    both ConAgra and West Side is that I have itemized past and

 3    future -- itemized the damages.  Second objection -- and

 4    I've overruled that.  Second objection is loss of normal

 5    life.  I've overruled that objection.

 6              Are there any other objections to this instruction?

 7              MR. ESPOSITO:  We don't have objection on loss of

 8    normal life.

 9              THE COURT:  If I said loss of a normal live, I

10    meant emotional distress.

11              MR. ESPOSITO:  Right.  We object to the past and

12    future.

13              THE COURT:  Right.  I misspoke on that.  Okay.

14    It's given over objection of both West Side and ConAgra.

15              ConAgra instruction 103 is IPI 600.06, and it is

16    given without objection.

17              Next is, I need the issues instruction on Becker.

18    It was your No. 7, Julie?

19              MS. LEVINSON:  I think we were offering that as

20    Court 1.

21              THE COURT:  You're right.  Now we have what I've

22    referred to as Court's 1.  And the reason I'm calling it

23    Court's 1 is because originally the plaintiff had included a

24    lot of elements of -- or allegations of negligence that it

25    wanted to preserve a ruling on, and I indicated I was not
```

1    going to give all of those.

2           So what we need to do now is go over Court's 1 and

3    determine what allegations of negligence are truly going to

4    go to the jury, as well as the allegations of wilful and

5    wanton misconduct.  So just what we will need for the

6    record, if you want to preserve anything for the record on

7    behalf of Becker, is tender an issues instruction that has

8    everything in it that you want.  And I'm going to refuse it

9    because it includes things I'm not going to include.

10          Let's now look at what's referred to as Court's 1.

11   Is Mark going to argue this or you?  Doesn't matter to me.

12          *MS. LEVINSON:*  He was planning to but didn't

13   realize it was going to come up.

14          *THE COURT:*  Here they are.  Okay.  Issues

15   instruction.  I guess the way to start is, these are the

16   allegations currently that you want to present to the jury.

17          *MR. TAXMAN:*  Yes, sir.

18          *THE COURT:*  Okay.  So let's start with ConAgra.

19          First of all, I know with respect to Count 3, your

20   objection is to wilful and wanton instruction with regard to

21   punitive damages in the first instance, and that's noted on

22   both behalf of ConAgra and West Side and overruled to that

23   extent.  Let's look at the specific allegations, first of

24   all, of negligence that are under Count 1 and see what

25   objections defendant ConAgra and/or West Side have to the

 1    specific allegations.

 2         MR. ESPOSITO:  Do you want us to go ahead and start

 3    speaking?

 4         THE COURT:  Sure.

 5         MR. ESPOSITO:  As an overriding objection as we

 6    said the other night, we object to any allegations of

 7    negligence for conduct that preceded the time that West Side

 8    came onto our property on April 19.  We think that's covered

 9    by the case *Board of Trustees vs. Coopers & Lybrand.*  As to

10    specific objections -- so (a) we objected to the extent that

11    it's earlier than April 19th; (b) we object to the last

12    part.  In other words, if you look at this instruction,

13    Your Honor, this allegation, it says you allowed wheat and

14    pellets within grain Bin C15 to self-heat and smolder, then

15    it says, creating an unreasonable -- excuse me, creating an

16    increased risk of fire and unreasonably dangerous condition.

17    That last part is causation.

18         If this one's given it should stop at the -- it

19    should stop with after the word "smolder".  It's also

20    duplicative Number A.  As to C, we can live with C.  As to

21    D --

22         MR. TAXMAN:  I'm sorry.  What did you say to C?  I

23    missed what you said to C.

24         THE COURT:  Can live with C.

25         MR. ESPOSITO:  As to D, we had, it failed to have

```
 1    the wheat pellet middlings removed from Bin C15 in a timely

 2    fashion.   And then I cut everything else off because I think

 3    that's causation after that.   We think D, we think E and F

 4    are duplicates of what is above.   We can live with G, H, I,

 5    J.   We think it should break off where it says, "continued

 6    to conduct operations within Elevator C", and break off

 7    right there because then it gets into causation.   K is a

 8    duplicate of G.

 9              THE COURT:  Off the record.

10         (Off the record)

11                           *   *   *   *

12              MR. OUSKA:  There is no K.  They got an L.  So --

13              THE COURT:  Sustained.

14              MR. OUSKA:  This is J, and then it jumps to L, but

15    our --

16              MR. ESPOSITO:  We're tracking these, right?

17              THE COURT:  Off the record.

18         (Off the record)

19                           *   *   *   *

20              MR. ESPOSITO:  We were at K.  Then the L here that

21    I'm looking at is, failed to immediately evacuate

22    individuals working around Bin C15 on April 27th.  We object

23    to that one as duplicative.

24              MR. OUSKA:  Their L -- they went from J to L.  L,

25    we're objecting because that's duplicative of G, which talks
```

 1    about implement the facility Emergency Action Plan.  With

 2    regard to M, we also believe that that's duplicative of G,

 3    which, again, talks about the failure to implement the

 4    facility action Emergency Action Plan.  With regard to N, we

 5    believe that that's duplicative of I, which talks about

 6    failure to timely alert and notify local fire department,

 7    because when you look at N, it says, *refused to call the*

 8    *fire department*, so we believe that N is duplicative of I.

 9    With regard to O, failed to maintain a clean Bin C, we

10    believe that's duplicative of A, which is failure to

11    properly maintain the wheat middling pellets.

12         And finally, with regard to P, *Instructed West Side*

13    *to remove the pellets from the tunnel in violation of*

14    *industry standards.*  What industry standards?  I don't think

15    there's been any evidence of that, Judge.  The proper way --

16    *Instructed West Side to remove the pellets from the tunnel*

17    *in violation of industry standards.*  I don't know if there's

18    been any evidence that suggests that the removal from the

19    pellets in the tunnel violated industry standards.  So we

20    don't believe that's applicable, fits in this particular

21    case.

22         *MR. ESPOSITO:*  Just one further comment, Judge.

23    When John and I were looking at this we were looking off of

24    Jentz's.  We were assuming as we did this that the

25    allegations as to Becker, Jentz and Schmidt against ConAgra

  1   are all the same.  So I think we're covering all three.

  2           THE COURT:  Right.

  3           MR. OUSKA:  Except when we looked at Jentz, they

  4   put the letters in correct order.  They did not skip that

  5   one letter we talked.  But other than that, I think in

  6   content it's the same.

  7           THE COURT:  How about the wilful and wanton

  8   allegations?

  9           MR. ESPOSITO:  Standard objection.  We object to

 10   all of --

 11           THE COURT:  As does West Side.

 12           MR. ESPOSITO:  We would take out, Your Honor, A on

 13   all of these.  We take out, at the beginning, *with conscious*

 14   *disregard of or utter indifference to the safety of Jentz.*

 15   That's unduly repititious.  They talked about we were being

 16   unduly repititious.  That's unduly repititious.  The jury is

 17   instructed as to the meaning of wilful and wanton

 18   misconduct.  And go on.  John's got it.

 19           MR. OUSKA:  Following up on Paul, we believe A

 20   should read -- again, striking that prefatory clause Paul

 21   spoke about.  We believe it should say, *Refused to call the*

 22   *fire department to the Chester facility at any time prior to*

 23   *the explosions*, *that despite repeated requests because of*

 24   *concerns that doing so would adversely affect the facility*

 25   *operations.*  So that language after "explosion", it says,

1    *Despite repeated requests*, etc., etc.  That's argumentative.

2    I think that they've -- the jury's been properly and

3    sufficiently apprised of what the allegations of misconduct

4    alleged in the wilful and wanton as to ConAgra by just

5    simply saying, *Refused to call the fire department to*

6    *Chester facility at any time prior to the explosion*.  So for

7    that reason.

8            With regard -- again, B, we believe it should read,

9    *Failed to inform John W. Jentz or his employer of a known*

10   *fire in Bin C15*.  C, again striking a prefatory clause,

11   should read, *Failed to follow the recommendation of*

12   *West Side Salvage to immediately remove the knowingly --*

13   *remove the knowingly dangerous wheat middling pellets*.

14           I would just, you know, say to immediately remove

15   the wheat middling pellets.  We don't need to characterize

16   it as knowingly dangerous wheat middling pellets in Bin C15,

17   and then we have it end right there, because, again,

18   argument is -- saying because it was putting money over

19   safety, that could be argued.  That should not be part of

20   the allegations directed in this wilful wanton section

21   against ConAgra.  Proceeding on D -- strike that.

22           With conscious disregard, again, Judge, we believe

23   that D should read:  *Continued to conduct operations within*

24   *Elevator C despite requests by West Side -- despite requests*

25   *by West Side Salvage to not do so*.  Period.  We need to

 1    include, *which increased risk of explosion*.  It's argument.

 2    That should not be in there, for the reasons we stated

 3    previously.

 4         E, again take out the *conscious disregard* prefatory

 5    phrase, and it should read:  *Failed to immediately evacuate*

 6    *individuals working in and around Bin C15 on or before*

 7    *April 27th, when ConAgra knew or should have known of the*

 8    *imminent danger to those individuals that an explosion could*

 9    *occur.*

10         And F, we believe that F is duplicative of E, which

11    again talks about evacuation.  So with regard to A through

12    D -- excuse me, A through E, those are our objections to

13    those allegations.

14         THE COURT:  West Side, do you adopt those arguments

15    also, and objections?

16         MR. MOORE:  Do you have written what you just said?

17    We incorporate.  Judge, we incorporate.

18         THE COURT:  Okay.  Are the allegations in with

19    respect to plaintiff's contributory wilful and wanton

20    misconduct from the defendant's position?

21         MR. ESPOSITO:  I think if you look at these as is

22    typed, Your Honor, I can explain how this happened.  We sent

23    a list to Julie and the whole group.  If you look at the end

24    of each one, it says all plaintiffs, all plaintiffs.  And

25    one might say Schmidt, one might say Jentz and Becker.  I

```
 1    was just doing that to the attorneys to tell them which

 2    allegations this went to, so some of that language has got

 3    to come off.

 4              THE COURT:  Okay.

 5              MR. ESPOSITO:  This is just Becker.

 6              THE COURT:  Right, this is just Becker.  Okay.

 7              Mr. Taxman, your response on behalf of the

 8    plaintiff?

 9              MR. TAXMAN:  As to the wilful and wanton, we had

10    eliminated that prefatory language already.  So I know you

11    were reading from the Jentz one.  We don't have a problem

12    with that.  As to the others, I disagree with cutting them

13    off by incorporating, for instance, in A, after the word

14    "explosions", despite repeated requests, etc., that that is

15    the basis of the wilful and wanton count.

16              THE COURT:  I think that stays in only because

17    eventually they were called.  So I agree it's causation but

18    in this context I think it completes the allegation.

19              MR. TAXMAN:  I mean -- all right.

20              THE COURT:  The ones that concerns me after hearing

21    the arguments is on wilful and wanton we say, Conduct of

22    defendant ConAgra was wilful and wanton in one or more of

23    the following respects.  I've defined wilful and wanton

24    already.  Why should I include "conscious disregard for" and

25    "utter indifference"?
```

 1              MR. TAXMAN:  Your Honor, I'm on the same page as

 2   you.  In ours -- I don't know which one you're looking at.

 3   I don't have any of that language in here.

 4              THE COURT:  Actually, I'm looking at your original.

 5              MR. TAXMAN:  Julie corrected --

 6              MR. DUNN:  Court's 1 was based on --

 7              THE COURT:  What I'm looking at is the one I'm

 8   going to refuse of Justin Becker.  For the record, it's your

 9   original.  So you actually have it?

10              MR. TAXMAN:  Yes, sir, we do.

11              THE COURT:  Then the other one that was of concern

12   to me was the allegation of negligence.  Both instructed

13   West Side Salvage to remove the pellets in the tunnel in

14   violation of industry standards.

15              MR. TAXMAN:  I think we can flush that out more.

16              We put in industry standards both through -- in

17   Becker's case, the adoption of Russ Ogle's testimony.  In

18   addition, Mr. Durkin, during the cross-examination of

19   Dr. Schroeder, specifically put in the industry standard.

20   And I have to -- I don't remember it off the top of my head.

21   We can get you the number.  Maybe to make this clear, we

22   should cite perhaps the name of the standard.  I don't know

23   where Kevin is, but there was a standard that it went from

24   NFPA, the one which incorporated the second standard for

25   addressing the fire, and in there it stated that the

Vol.XIII, Pg.44

1    materials should not be -- they should be removed from the

2    site of the facility.  I'm paraphrasing.

3            MR. PATTON:  I want to address that if I can.

4            THE COURT:  Go ahead.

5            MR. PATTON:  That standard only was referring to

6    when there was a fire in the bin.

7            MR. ESPOSITO:  The other thing is it says --

8            MR. PATTON:  Let me just -- so the standard we're

9    referring to when there's a fire and this is an emergency

10   situation, attack it from the side.  There was no fire in

11   the bin when they were -- came out on the 19th and began the

12   pellet removal.  So whatever standards they're citing

13   doesn't apply to the removal process in this case.

14           MR. TAXMAN:  Well, I -- may I, Your Honor?

15           THE COURT:  Sure.

16           MR. ESPOSITO:  Before you -- the other thing it

17   says, we instructed West Side to do it in violation of

18   industry standards.  We didn't give such an instruction.

19           THE COURT:  It's vague reference what you're

20   saying.  Go ahead.

21           MR. TAXMAN:  In terms of instructions we can

22   certainly tweak, for lack of a better word, that word, but

23   there is evidence in this case that the West Side folks

24   wanted to take it out of the side and they couldn't do that

25   because it would have interfered with scale operations.

 1    That's in response to what Paul just said.

 2            But as to what John said with regard to a fire,

 3    both Ogle and Schroeder said there was a fire.  Ogle said

 4    there was a fire as of March 12th, and Schroeder said as of

 5    the 12th maybe, but certainly by the 16th, there's a fire in

 6    the bin.  They're both in agreement on that.  So that's not

 7    a reason for leaving this standard out.  The expert

 8    testimony in the case was that there was a fire and was a

 9    fire the entire time.

10            *THE COURT:*  To address the -- I'm going to let it

11    go as is, with the change though.  It does say, *Instructed*

12    *West Side to remove the pellets from the tunnel, in*

13    *violation of industry standards.*  Should it not say

14    "permitted"?  Because they didn't instruct them to do

15    something in violation of standards.  You understand what

16    I'm saying?

17            *MR. TAXMAN:*  Yes, yes.

18            *THE COURT:*  Paul's objection is as to vague

19    reference.

20            *MR. TAXMAN:*  "Permitted" would be fine because

21    there was definitely, you know, give-and-take on both sides

22    at the end of the day.

23            *MR. ESPOSITO:*  It makes it a little bit better.  We

24    still object.

25            *THE COURT:*  Sure.

 1          MR. TAXMAN:  Do you want the exact standard?  We're

 2     trying to look that up.  We can talk about that.

 3          THE COURT:  Do you want the standard quoted?  I

 4     know you don't want it at all, but rather it be quoted?

 5          MR. PATTON:  No, not at all.

 6          THE COURT:  Okay.  Off the record.

 7     *(Off the record)*

 8                         *   *   *   *

 9          MR. ESPOSITO:  C talks about the period up to

10     lunch.  D talks about the period while they were at lunch.

11     So they are not duplicative.  E was directed to Schmidt, so

12     that's correct.  Was there another one?

13          MR. TAXMAN:  Yes.  E, we're going to knock out.  D

14     would be my preference to knock out based on --

15          THE COURT:  I'm going to keep it in.  I think

16     they're two different timeframes.  One's before lunch and

17     one's during lunch.

18          MR. TAXMAN:  What about B and F?

19          MR. ESPOSITO:  Could you move that screen, Judge.

20     I think that F -- F can cover -- and if you want me to put

21     the period, cover after lunch.  Came back, it was clearly

22     going out of control.

23          THE COURT:  F doesn't talk about lunch.

24          MR. TAXMAN:  Sort of innocuous.

25          MR. ESPOSITO:  Embers were specifically -- that's

 1    when they were finding them.  After lunch was the

 2    continuation of the fire and the failure to call, as Flitsch

 3    said yesterday.

 4         THE COURT:  Okay.  We're not communicating.  We're

 5    talking about B as in boy and F as in Frank.

 6         MR. ESPOSITO:  Correct.  That's who I'm talking

 7    about.

 8         THE COURT:  Those don't have any time references.

 9         MR. ESPOSITO:  No, they don't.  We can put, if

10    that's --

11         THE COURT:  Your argument, time references, and I

12    don't see any.

13         MR. ESPOSITO:  The embers were discovered in the

14    morning.  The fire was continued to be fought in the

15    afternoon during periods that they should have been alerting

16    people.

17         THE COURT:  I think F subsumes B.

18         MR. TAXMAN:  Unless you define some other

19    condition, that's true, and also unless we limit it in time.

20         THE COURT:  I'm going to strike B and leave F

21    because F is broader and more encompassing.

22         MR. ESPOSITO:  We'll argue the whole thing through

23    F?  That's what you're saying?

24         THE COURT:  Okay.

25         MR. DUNN:  Would that be to all plaintiffs, Judge?

 1          THE COURT:  Yeah.  I'm going to be consistent.

 2    Okay.  That concludes argument on this instruction, right?

 3          MR. TAXMAN:  You want us to retype this right now?

 4          THE COURT:  Here's what we're going to do.  Okay.

 5    So I'm giving Court's 1 over objection of the plaintiff,

 6    defendant West Side and defendant ConAgra.

 7          MR. ESPOSITO:  With what you ruled just now and the

 8    addition of that paragraph as to Schmidt, are we okay with

 9    that?  Are you okay with the paragraph directed to Schmidt?

10          THE COURT:  I did not -- actually didn't even look

11    at it.  I want to hear from Schmidt.  Do you have any

12    objection?

13          MR. DUNN:  The only objection would be that there's

14    no No. 1.  West Side yesterday said that they --

15          THE COURT:  There's going to be an objection so

16    hold off 'til we get to Schmidt.

17          Okay.  Next I have for discussion ConAgra 29.  This

18    is IPI 10.03.  And I've got a note to reserve ruling on it.

19    I think the reason I was going to reserve ruling, there was

20    one time when plaintiffs for Jentz and Schmidt were going to

21    try to convince me there's no comparative fault, I think.

22          MR. PATTON:  Sounds right.

23          MR. OUSKA:  Right.

24          THE COURT:  So looking at 29, is there any

25    objection to it, ConAgra 29?

 1            MR. CLIFFORD:  No, sir.

 2            THE COURT:  Given no objection.

 3            MR. OUSKA:  Is that going into common judge.

 4            THE COURT:  Yes into common.  Julie, would you do

 5   an unmarked of ConAgra 29.

 6            MS. LEVINSON:  What did you say?

 7            THE COURT:  A clean ConAgra 29.

 8            MS. LEVINSON:  Sure.  There were a few judge that

 9   you had requested previously and they're not done yet

10   because I don't have them.

11            THE COURT:  I got notes.

12            MR. MURRAY:  The issue is we don't have the IPI's

13   loaded into our computer.  Literally we have to type these.

14            THE COURT:  Do you want my IPI.  Let's go off the

15   record on this one.

16        **(Off the record)**

17                        *   *   *   *

18            THE COURT:  This one, ConAgra 33, IPI 14.02, this

19   is the definition of contributory wilful and wanton conduct.

20            MR. ESPOSITO:  We believe that there's contributory

21   wilful and wanton misconduct.

22            THE COURT:  I was going to instruct on that in

23   Court's 1.  This was a reserved ruling, ConAgra 33, IPI

24   1402, contributory wilful and wanton conduct.

25            MR. ESPOSITO:  We tendered that because we thought

1    the plaintiff's conduct was contributory wilful and wanton.

2         MR. DUNN:  Judge, there's absolutely no evidence

3    that any of the plaintiffs in this case acted with conscious

4    disregard or utter indifference for their own safety or the

5    safety of others.  Just, there's nothing that would support

6    a jury's finding that in this case that most they knew of an

7    unspecified hazard, but none of these plaintiffs knew of any

8    specific hazard, immediate explosion risk that was about to

9    occur.  Just like Mr. Patton's cross-examination of all of

10   them, none of them admitted to knowing that the bin was

11   about to explode, and so we think that it -- we understand

12   that it's a low standard for the Court to decide whether or

13   not to give an instruction, but the evidence just simply

14   does not support it in this case, and we think it would be

15   unduly prejudicial to put that in the mind of the jury.

16        MR. MURRAY:  I join in what Mr. Dunn just said.

17   I'd like to add that their own expert said these plaintiffs

18   were zero percent at fault, so how, in a case where their

19   own expert says that these plaintiffs are zero percent at

20   fault, can there be an instruction on wilful an wanton

21   contributory fault?

22        MR. PATTON:  Can I address?

23        MR. MOORE:  West Side would join in with ConAgra

24   and ask that the record reflect we're --

25        MR. PATTON:  The evidence of that -- contrary to

1    Sean's characterization that the experts didn't say that,

2    the experts weren't there on the day of the accident.

3         THE COURT:  Frankly, I understand that but it's not

4    persuasive on this decision because that's one expert saying

5    that.  I remember Mr. Durkin did extract that.

6         MR. PATTON:  The folks that were there were Becker,

7    Jentz and Schmidt and Flitsch.  Mr. Schmidt testified that

8    on the morning of the accident they discovered embers and

9    smoke.  All of them agree.  Despite their saying they didn't

10   know that, let's put this in context -- did suddenly have

11   erased memories of these events, but Schmidt said he was

12   told by Jentz that morning, glowing burning embers.  They're

13   now aware of a dangerous condition.  They all did admit that

14   fire and embers can lead to an explosion.

15        Flitsch then testifies yesterday that none of these

16   three individuals ever told him of the condition that they

17   discovered in the morning, and that he should have been told

18   of these facts that existed in the morning because he agreed

19   that burning embers and smoke means fire, and fire means a

20   potential for an explosion.  So I believe we have presented

21   evidence, through the testimony of the witnesses, that rises

22   to the level of wilful and wanton conduct.  And their

23   failure to tell Mr. Flitsch of the condition that existed in

24   the morning, and Mr. Flitsch testified that he hadn't been

25   told that in the morning, they would have called the fire

 1   department in the morning.

 2         THE COURT:  Mr. Clifford, I heard from Mr. Dunn and

 3   Mr. Murray.  The issue is whether I should instruct in the

 4   Becker case, but it also bleeds over to Jentz and Schmidt on

 5   the issue of wilful and wanton contributory negligence.  Do

 6   you have anything to say on behalf of Jentz and Schmidt?

 7         MR. CLIFFORD:  I adopt what Colin said.  I don't

 8   have anything to add to the discussion.

 9         THE COURT:  I'm going to refuse it.  I think the

10   level of conduct of the plaintiffs in this case warrants a

11   contributory fault instruction but I don't think that a

12   reasonable jury could find that they were guilty of wilful

13   and wanton contributory negligence based upon testimony that

14   I heard in the case.  So this instruction, which is 1402,

15   ConAgra 33, is refused over objection of plaintiffs Jentz,

16   Schmidt and Becker.

17         MR. PATTON:  Judge, could I just throw -- I'm not

18   asking you to change your ruling.  I wanted to have one more

19   fact entered about wilful and wanton.  They all testified

20   that they did not tell ConAgra of these conditions that were

21   discovered that day, and I think that's, as well, wilful,

22   wanton conduct that affects ConAgra in this case.

23         THE COURT:  My position is that the allegations

24   against the plaintiffs, at best, rise to contributory fault.

25         Next is ConAgra 34, 14.03, I'm going to refuse for

```
 1   the same reason.  It refers to plaintiffs' contributory and

 2   wilful, wanton conduct, and I rule as a matter of law that

 3   that cannot be sustained based upon the facts of this case,

 4   and so it is refused over objection by all three plaintiffs,

 5   Jentz and Becker and Schmidt -- all four plaintiffs.

 6           MR. CLIFFORD:  Your Honor, can I interject off the

 7   record when you're free?

 8           THE COURT:  Give me one second.  I think we've

 9   completed Becker now.  Okay.

10           MR. ESPOSITO:  One more consideration in the Becker

11   case, Your Honor.

12           THE COURT:  Yes, sir.

13           MR. ESPOSITO:  If you remember, we tendered -- do

14   you remember we tendered some special interrogatories?  I

15   had done one that was common to all three plaintiffs and you

16   said, very least, it needs to be broken up.  I've redone

17   that.  I've broken it up.  I have one special interrogatory

18   as to proximate causes, I have two special interrogatories

19   as to punitive damages, so those can be put off.  I do have

20   one in Becker if you want.

21           THE COURT:  Now is the time because -- I think you

22   need to check your notes, but I think I've covered

23   everything.  Now we'll look at the packet and confirm that,

24   but I think I've covered everything in Becker.

25               Let's take the issue of special interrogatories.
```

1   And what I said off the record is the ones that were

2   tendered I didn't think were appropriate because they needed

3   to be broken down if I gave them at all, and then I wanted

4   to hear some authority.

5            MR. ESPOSITO:  Okay.  Here's -- I just gave --

6            THE COURT:  Under consideration now is ConAgra

7   special interrogatory 1A with respect to Justin Becker.  It

8   reads:  *Was the conduct of ConAgra a proximate cause of the*

9   *injuries to Justin Becker?  Yes or no.*

10           MR. TAXMAN:  We suggest it was.

11           THE COURT:  Mr. Esposito?

12           MR. ESPOSITO:  You know -- and this is going to be

13  the same for Schmidt and is going to be the same for Jentz,

14  so we've got one for each of them.  It's just a special.  It

15  goes to the ultimate issue in this case of proximate cause.

16  If it's ruled in our favor, which would be no answer, it

17  ends the case all across the board.  I did look for some

18  authority on it, Your Honor.

19           THE COURT:  That's what I wanted to get.  The

20  reason I told you off the record I was going to refuse the

21  first form, it read something like, *Was the conduct of*

22  *ConAgra proximate cause of the injuries to Justin Becker,*

23  *Robert Schmidt and Jentz?*  And I said, hey, they could find

24  yes as to one but not as to the other, and a simple yes or

25  no as to all three wouldn't be appropriate.  So now you've

```
 1   broken them down.

 2           MR. ESPOSITO:  So that took care of that problem.

 3           THE COURT:  So tell me the law.

 4           MR. ESPOSITO:  The law is that it's discretionary.

 5   There's no question about that.  But I found a case here --

 6   my office found a case.  It's an old case but decided by

 7   some pretty learned people, including learned hand Justice

 8   Swan, saying that -- you know, saying the hope that they

 9   really provide for a compulsory rule on this such that when

10   a person asks for it, they can get it.  This case is -- and

11   you're welcome to see this, Judge.  It's -- I marked up.  If

12   you go to page 6.  It's two copies of the same case.

13           And our position is, particularly in this case,

14   when you're dealing with punitive damages and you're dealing

15   with really high compensatory awards, we really do need

16   every check we can appropriately get just to make sure that

17   the jury's properly focused on the proper issues.  Proximate

18   cause is, I think as everyone agreed, is a huge issue in

19   this case, and you know, in a Rule 60 motion -- 50 motion,

20   excuse me, one of the cases we cited on punitive damages

21   talked about clear and convincing evidence.  I'm not

22   resurrecting that whole issue but it said that clear and

23   convincing is a good way to check the jury as to punitive

24   damages.  If we're not going to talk about clear and

25   convincing, I think we should be talking about special
```

```
 1    interrogatories that really do provide the basis for a check

 2    on the jury and what they're doing that -- what they're

 3    focusing on, and make them focus on some concepts that are

 4    critical to the defense of ConAgra.  That's it.

 5            THE COURT:  I'm going to look at Rule 49.

 6            THE COURT:  Rule 49 says:  With respect to special

 7    verdicts, the Court may require a jury to return only a

 8    special verdict in the form of a special written finding,

 9    and then it also gives specific alternatives, discretion.

10            MR. TAXMAN:  Judge, yes.  The law that we

11    discovered was the same, obviously as we talked about off

12    the record, discretionary.  "We", being everybody

13    collectively.  There's enough paper in this case the jury's

14    got to fill out, enough verdict forms and make enough

15    decisions that I submit, you know, this isn't an instruction

16    that's going to focus them any greater than the law that

17    specifically guides them on these issues.

18            I think potentially a pitfall to have them check a

19    wrong box when they've been instructed specifically on the

20    law.  And this instruction does nothing to change their

21    focus; it just restates 1501 and the other burden of proof

22    and issues instructions already in the case.

23            MR. SCHULTZ:  West Side joins in Becker's

24    objections to the instruction.  I think it asks the jury to

25    find twice against ConAgra and could result in
```

```
 1   aninconsistent verdict, so I don't think it -- we object to
 2   it as well.
 3           MR. DUNN:  Judge, we would say we agree with
 4   Mr. Taxman, that the jury here is being properly told what
 5   the law is.  I haven't heard ConAgra say otherwise.  And so
 6   we think that the cases in the Seventh Circuit that talk
 7   about this actually show a hesitancy in giving questions
 8   like this where the jury's being properly instructed.  So we
 9   think that it leans toward not giving this type of
10   interrogatory if the jury otherwise being properly
11   instructed, and so because of that, we would ask that it not
12   be given.
13           MR. ESPOSITO:  The whole purpose of this is to make
14   sure that the jury isn't doing something inconsistent.
15           THE COURT:  Okay.  And I understand that and I'm
16   not adverse to special interrogatories.  I've given them in
17   the past.  I'm adverse when they're voluminous.  That's not
18   the case here.
19           Here's the problem I see:  Let's say the jury
20   decides that with respect to Justin Becker there has been no
21   evidence of future emotional distress.  Okay.  They can
22   answer this question honestly and check "no" and still give
23   him awards as to all the other elements of damages, and it
24   would look like an inconsistent verdict but it could be
25   supported by the evidence because this special interrogatory
```

 1    talks about all of his injuries.  What if they determined

 2    that one of the allegations that the plaintiffs have made

 3    with respect to injuries has not been proven and they don't

 4    give him any money for a certain line item?

 5         *MR. ESPOSITO:*  But their answer would be "yes".  I

 6    mean they would be answering, yeah, he was -- if they

 7    didn't, say, give him emotional distress, they would be

 8    giving him all those others.

 9         *THE COURT:*  They could say "no", because one of his

10    injuries is emotional distress and they say, no, it wasn't.

11    So they can honestly answer this "no", still give him award

12    for other elements of damages, and it would not be

13    inconsistent.  On its face it would be to us, but with what

14    happens in the back of the jury room, it would not.

15         *MR. ESPOSITO:*  I think that confuses juries with

16    damage amounts.  If they don't find that he suffered those

17    emotional damages, they're going to put a zero in that spot.

18         *THE COURT:*  Let's say they put a zero there.  Then

19    they're asked, *Was the conduct of ConAgra a proximate cause*

20    *of the injuries to Justin Becker?*  They might say, well, are

21    we talking about claimed injuries where they're asking for

22    emotional distress?  I'm going to refuse -- I think they're

23    going to be instructed on proximate cause.  They can't find

24    for Becker unless they find proximate cause, and so -- and I

25    understand your concern, and I spent probably two hours

 1   myself researching this.

 2        I'm happy to find nobody else found anything

 3   besides what I found, which is nothing.  I, frankly, didn't

 4   even find the case you found.  I looked at Rule 49, but I

 5   didn't go back to learned hand.  So this would be refused

 6   objection.  West Side and ConAgra.  Or objection,

 7   plaintiff -- I'm sorry.  West Side agrees with this

 8   instruction, so it's --

 9        *MR. TAXMAN:*  West Side joins in the objection,

10   Your Honor.

11        *MR. MOORE:*  We joined in the objection.

12        *THE COURT:*  Okay.  Off the record.

13     **(Off the record)**

14                    *   *   *   *

15        *THE COURT:*  Were there any other special

16   interrogatories applicable to Becker?

17        *MR. ESPOSITO:*  We give two more.  We have two more,

18   both punitive damages, and we have -- and the same

19   instruction would be for Jentz and Schmidt.

20        *THE COURT:*  Okay.  I've got -- off the record.

21     **(Off the record)**

22                    *   *   *   *

23        *THE COURT:*  This is ConAgra 102, and I was holding

24   this for the issues instruction.  Have you -- has that been

25   straightened out now?  This is your contribution claim

1   against West Side.

2       *(Break)*

3                               *   *   *   *

4           THE COURT:  The next instruction is Becker 5.  It's

5   IPI 1401.  It's the definition of wilful and wanton conduct.

6   This is given over objection of ConAgra and West Side and

7   will go in Jentz, Schmidt and Justin Becker's packet

8   separately.  Any other objection?  The objection is, of

9   course, you don't believe I should instruct on wilful and

10  wanton.

11          MR. MOORE:  That's correct, Your Honor.

12          THE COURT:  Given over objection, objection by

13  ConAgra and West Side Salvage.

14          Next I have an instruction that we all argued, what

15  I would describe as a lively debate, and that is income

16  taxation.  And I think everybody agrees that this is an

17  instruction that can be given without objection.  It's

18  different than the one tendered by ConAgra.  And this would

19  go in the common packet.

20          MR. ESPOSITO:  No objection.

21          THE COURT:  Actually, it would not go in the common

22  packet because I think we have a separate one for Amber that

23  doesn't have the punitive damages.  So this would go into

24  Jentz, Schmidt and Justin Becker.  It's given, no objection.

25          Okay.  The next instruction in Becker is No. 4.

 1   Actually, it's a common instruction, Pattern Instruction

 2   1.13.  Remember, originally had the witness's age in it and

 3   we decided that didn't belong.  Does anyone have any

 4   objection to this particular instruction?

 5            *MR. ESPOSITO:*  No.  That's fine.

 6            *THE COURT:*  Okay.  Given, no objection.  Let's go

 7   off the record.

 8       *(Off the record)*

 9                        *  *  *  *

10            *THE COURT:*  Next, on Amber Becker, Instruction 21,

11   IPI 45.02, verdict form finding for ConAgra against

12   Amber Becker.  That was given, no objection.

13            Next we have Becker instruction 16 for Amber, IPI

14   34.01.  I think this is given, no objection.  Paul, take a

15   look at this.

16            *MR. ESPOSITO:*  It's okay, Judge.

17            *THE COURT:*  Okay.  Next is Verdict Form A for

18   Amber Becker.  It's Becker No. 20, IPI 45.01.  Any objection

19   to that?  There's a typo, capital T.

20            *MR. OUSKA:*  Other than that --

21            *THE COURT:*  Okay.  All right.  Plaintiff's 18 for

22   Amber Becker is given, no objection.  Life expectancy.

23            Just for the record, back on Becker 19, I'm showing

24   there's no objection as to the form.  But to the extent that

25   there could be a punitive damage award for Justin, thereby

1    enabling Amber to have a consortium award, both ConAgra and

2    West Side object.  So I'm going to change it to an objection

3    by ConAgra and West Side.

4            Okay.  Off the record.

5        *(Off the record)*

6                        *  *  *  *

7            THE COURT:  As to Amber Becker, we aren't going to

8    have separate contribution instructions for the jury because

9    the parties have stipulated that if the jury assesses

10   Justin Becker with any percentage of fault, that as a matter

11   of law, I can assess that same percentage to Amber's

12   damages.

13           MR. MOORE:  Correct.

14           THE COURT:  Okay.  Next we have, for Amber Becker,

15   it's Instruction Z, as in zebra.  This is the income tax

16   instruction.  But we took out the portion about wilful and

17   wanton being taxable because she does not have a wilful and

18   wanton claim under the *Hayward* case -- *Hammond.*

19           Any objection?  Okay.  Hearing none, Z for

20   Amber Becker given, no objection.  That's a wrap on Amber.

21           Let's take a look at -- this is West Side's

22   Instruction No. 1 for common -- this would go in the all

23   cases, all folders except for Amber Becker.  Is there any

24   objection to this?  Any objection to West Side 1?

25           MR. DUNN:  No objection.

1          *THE COURT:*  West Side 1 given, no objection.

2          So West Side 1 will be given without objection in

3     Becker, Jentz and Schmidt; Becker being Justin Becker only.

4          Okay.  We now move to the Jentz instructions.

5     After considerable discussion with respect to the damage

6     allegation of increased risk of harm, the parties are

7     stipulating that the recommended itemization of the damages

8     in this case, which would include a percentage of future

9     harm, not be included in the packet, and therefore, waiving

10    that portion of the 30.04.04, is that correct, on behalf of

11    plaintiffs Jentz and Schmidt?

12         *MR. DUNN:*  Judge, I believe that they waived the

13    need for that instruction in entirety, not just the -- the

14    proposed verdict form at the end with the entire

15    instruction, I believe they're waiving it.

16         *THE COURT:*  Everybody agrees with that?

17         *MR. ESPOSITO:*  Yeah.  We weren't giving that

18    calculation instruction?

19         *MR. OUSKA:*  Yes.  We are waiving that provision of

20    it, but of course, our objection to that element in the

21    damages is preserved, and we object to that.

22         *THE COURT:*  We'll get to that.  I'm just going

23    to -- West Side agrees to waive that also, 30.04.04,

24    calculation?

25         *MR. SCHULTZ:*  If you say so, yes.

 1          *THE COURT:*  In Jentz.  Given without objection,

 2    Jentz 5, IPI 34.04, mortality table.  We have a clean one?

 3    Jentz 6, IPI 45.01, is given over objection of ConAgra and

 4    West Side; the objections being that includes wilful and

 5    wanton conduct with a request for punitive damages

 6    ultimately, and both ConAgra and West Side have articulated

 7    their reasons why they think this is inappropriate.

 8          *MR. ESPOSITO:*  Also that it doesn't include

 9    contributory wilful and wanton.

10          *THE COURT:*  Correct.

11          *MR. MOORE:*  Please incorporate the same thing to

12    West Side.

13          *THE COURT:*  Noted and overruled.

14          Jentz 6 given over objection of ConAgra and

15    West Side Salvage.  Next is Jentz No. 3.  This is the burden

16    of proof.  It's IPI 21.02.01 and 21.02.02.  It is given over

17    objection of ConAgra and West Side for two reasons I can

18    articulate:  One is, it includes wilful and wanton

19    allegations against those defendants which request punitive

20    damages, and secondly, it does not include wilful and wanton

21    comparative fault.  Are there any other objections on behalf

22    of ConAgra?

23          *MR. ESPOSITO:*  That's it, Judge.

24          *THE COURT:*  Any other on behalf of West Side?

25          *MR. MOORE:*  No, not at this time.

 1          *THE COURT:*  Given over objection.

 2          Going back to the Becker case, I erroneously

 3     included West Side's No. 1 regarding the size of

 4     West Side Salvage.  That would be only to punitive damages,

 5     and there's no punitive claim against West Side.  In fact,

 6     there's no claim against West Side.  So by agreement I will

 7     withdraw from Justin Becker, West Side No. 1, and throw it

 8     in the trash.  Good catch, Mr. Schultz.

 9          *MR. SCHULTZ:*  Huge victory for West Side.

10          *THE COURT:*  ConAgra No. 60, IPI 600.02, is given

11     without objection.  Again, we're in the Jentz case.

12          Going back to Becker 15, there is an objection to

13     this by both ConAgra and West Side to the extent that the

14     jury is considering wilful and wanton misconduct, and Amber

15     could receive a verdict based upon that, so ConAgra and

16     West Side do object to this instruction.  That's given over

17     the objection.

18          Same thing with Verdict Form A, which is 20,

19     Amber Becker.  Same objection.  Given over objection of both

20     ConAgra and West Side.

21          Next, in Jentz, given, no objection, is ConAgra 65,

22     definition of loss of a normal life.

23          *MR. CLIFFORD:*  Judge, could you put that on the

24     screen?

25          *THE COURT:*  Sure.

1          MR. CLIFFORD:  Thank you.

2          THE COURT:  I may have done this already but in

3    case I didn't, Jentz 6 given over objection of both ConAgra

4    and West Side.  I think I did do it.  It includes wilful and

5    wanton.  Object to that.  It does not include wilful and

6    wanton contributory fault, and they object to the lack of

7    inclusion there.

8          Same thing with respect to Jentz 3, the burden of

9    proof.  Same objections.  Court gives that over objection.

10   Off the record.

11       *(Off the record)*

12                        *  *  *  *

13         THE COURT:  This is an important one, as they all

14   are.  This is the issues instruction in Jentz.  These

15   allegations are the same that were in Court's 1, and so if

16   you want to -- I don't pretend to tell you how to protect

17   your record.  I will consider, for argument purposes, all

18   your prior arguments as to Court's 1, reincorporated as to

19   Jentz 2, not for closing.  Any additional argument or

20   duplicative argument?

21         MR. ESPOSITO:  If they're all the same then our

22   objections are the same.

23         THE COURT:  And the plaintiff's objections are the

24   same also?

25         MR. DUNN:  That's correct.

 1          *THE COURT:*  Jentz 2 will be given over objection of

 2    all plaintiffs and all defendants.  Must be a really bad

 3    instruction.  In fact, should we call this Court's 2?  You

 4    had objections to Court's 1.

 5          *MR. DUNN:*  As to Schmidt.

 6          *THE COURT:*  Mr. Schmidt.

 7          *MR. ESPOSITO:*  Just so I'm clear, this doesn't have

 8    anything with regard to the counterclaims in it, correct?

 9    It's just all the plaintiff's claims?

10          *THE COURT:*  Correct.

11          *MR. ESPOSITO:*  Just plaintiff's claims against us.

12    Okay.

13          *THE COURT:*  So I'm going to give this as Jentz 2,

14    objections by defendants ConAgra and West Side Salvage.

15          This is ConAgra 22A.  I think this belongs, if

16    anywhere, in Becker and -- no, in Jentz and Schmidt because

17    it talks about -- well, actually, no.  It belongs in all of

18    them, does it not?  Include third-party claims?

19          *MR. CLIFFORD:*  I would say it does not follow that

20    if one is liable, any of the others.  Wouldn't say --

21          *THE COURT:*  Right, and that's what we have in

22    the -- sorry.  Very good, Bob.  See it in the margin?

23          *MR. CLIFFORD:*  How about that.

24          *THE COURT:*  Any objections to that if we correct

25    that?  Okay.  It's going to say -- this only applies to

1    Jentz and Schmidt because there aren't two defendants in

2    Becker.

3            MR. CLIFFORD:  Right, but it could be -- if you

4    wanted, you could write that in such a way to make it

5    applicable generic for all three.

6            THE COURT:  Here's how I've changed it.  We can put

7    it in the common if you all agree.  Listen, don't read:  *You*

8    *must give separate consideration to each claim and each*

9    *party in this case.  There are multiple defendants and it*

10   *does not follow that if one is liable any of the others are*

11   *all liable.*

12           Maybe I should say there are multiple plaintiffs

13   and it does not follow that if one is successful the others

14   are too.

15           MR. PATTON:  Yes.

16           THE COURT:  Rather than naming the plaintiffs.

17           MR. CLIFFORD:  That just -- okay.  I'd like to see

18   it, but that's just reading the new instruction, switching

19   the focus from the defendants not being liable if one is to

20   the plaintiffs not being successful -- I mean I suppose it's

21   a goose gander deal, but --

22           THE COURT:  Let me read it again because I don't

23   understand what you're saying.  Off the record.

24       **(Off the record)**

25                           *   *   *   *

 1              *THE COURT:*  Let's take a look at this one for

 2     common.  It says:  *It was the duty of the defendants, before*

 3     *and at the time of the occurrence, to refrain from wilful*

 4     *and wanton conduct which would endanger the safety of the*

 5     *plaintiffs.*

 6              I know there's an objection by ConAgra and

 7     West Side because it's punitive to begin with, but does this

 8     belong in Jentz, Justin Becker?

 9              *MR. CLIFFORD:*  You could say for the safety of any

10     plaintiff.

11              *THE COURT:*  Forget this because we aren't going to

12     do this as to count -- any problem with it as is, as I just

13     changed it?  Okay.  35 will be given, and it needs to go in

14     Jentz, Becker and Schmidt -- Justin Becker.

15              *MR. SCHULTZ:*  On Becker there's not a punitive

16     claim against West Side.

17              *THE COURT:*  I'm sorry.  It goes in.

18              *MR. SCHULTZ:*  The other two.

19              *THE COURT:*  Jentz and Schmidt.  Well, in

20     Becker's -- there's a punitive against ConAgra and West Side

21     in Becker.

22              *MR. ESPOSITO:*  Going into a particular -- just say

23     the plaintiff.

24              *THE COURT:*  Yeah, you're right, for the safety of

25     the plaintiff.  This does go in Jentz, Becker and Schmidt,

1    right?

2         MR. SCHULTZ:  I wouldn't think it would go in

3    Becker.

4         THE COURT:  There's a punitive case, *Becker vs.*

5    *ConAgra.*

6         MR. SCHULTZ:  One defendant.

7         THE COURT:  Right.  And it was the duty -- oh, it

8    was the duty of the defendant ConAgra before and at the

9    time.  It says defendants.  So in Becker we need to strike

10   the "s".

11        MR. SCHULTZ:  Yes.

12        THE COURT:  Got you.

13        MR. MOORE:  May be specifying defendant ConAgra.

14        MR. PATTON:  You don't have to highlight that.

15   There's only one defendant.

16        Let's look at this one.  This is ConAgra 97.

17   Actually, it's -- this is being tendered as an alternative.

18   They're preserving their right to complain about punitive

19   damages.

20        MR. ESPOSITO:  You're reading the second page.

21        THE COURT:  I've already given this then.

22        MR. ESPOSITO:  You've given it in the Becker case.

23   Are we going to give that separate?  I mean is that going to

24   be -- the packet I had made was punitives as a separate type

25   of thing, not -- because there's a battle, remember, whether

1    they should be --

2         *THE COURT:*  Right.

3    **(Off the record)**

4                    *   *   *   *

5         *THE COURT:*  Forget what I just said about this

6    instruction.  This goes in the trash.  Okay.  This goes in

7    Jentz and Schmidt; this goes in Becker.

8         There's another objection to punitive damages that

9    we discussed in detail off the record that ConAgra would

10   like to make, as well as West Side, regarding the Court

11   giving separate instructions and permitting a punitive award

12   as to each plaintiff as opposed to the three in the

13   aggregate.

14        *MR. ESPOSITO:*  Correct.  There should only be one

15   punitive award in this case.  Giving more than one punitive

16   award makes the damages excessive.  It violates due process.

17   I believe -- punished three times for the same conduct.

18        *MR. SCHULTZ:*  West Side joins.

19        *THE COURT:*  Plaintiff's response?  Off the record.

20   **(Off the record)**

21                    *   *   *   *

22        *MR. DUNN:*  Judge, the case law tells us that we

23   need to have a proportionality analysis.  The only way to do

24   that is individualized punitive damages awards.  That would

25   be consistently in the U.S. Supreme Court cases on the

 1    subject.  We'd also -- for that reason we'd also say that

 2    these are three separate cases, and if we're not to be

 3    trying them together -- the only reason we're trying them

 4    together is based on defendant's motion to consolidate, save

 5    judicial economy.  If they were separate and apart there

 6    would be individualized punitive damages awards, different

 7    treatment in this case simply because the consolidated

 8    trial.

 9         *THE COURT:*  I ruled that there can be separate

10    potential punitive damage award for each plaintiff, except

11    for Amber Becker, who has a derivative claim.  I did that on

12    the basis of, number one, these were individual cases

13    originally, and had they been tried separately each

14    plaintiff was entitled to have his or her case determined

15    separately, would be entitled to such an instruction based

16    upon the evidence as I heard it.  Secondly, with respect to

17    Becker -- strike that.

18         With respect to Jentz and Becker -- no, strike

19    that.

20         With respect to Jentz and Schmidt, they have direct

21    actions against West Side for punitive damages, and doing

22    one aggregate verdict form when that conduct is different

23    from the conduct which Schmidt complains of just against the

24    defendants in his case, to me would mean that the jury would

25    not be able to consider the different defendants separately,

 1   and when, in fact, we could have separate defendants in the

 2   Becker case vis-a-vis Schmidt and Jentz.

 3        Secondly, policy considerations regarding how many

 4   times can a defendant be punished, while important, is not

 5   as persuasive as in, for example, the asbestos cases where

 6   you have millions of cases.  Here we have a finite number of

 7   cases, a finite number of potential plaintiffs.

 8        Next we have ConAgra 74 and Jentz Verdict Form B.

 9   Given, no objection.  ConAgra 75, Verdict Form C, given, no

10   objection.

11        Jason, contribution?

12        MR. MOORE:  We're in the Jentz case, right?

13        THE COURT:  Yes.

14        MR. MOORE:  I have West Side No. 2, which is marked

15   up, marked copy.  Here's a clean copy.

16        THE COURT:  All right.  Paul, this is the

17   contribution action, West Side vs. ConAgra.  It's West Side

18   No. 2.

19        MR. ESPOSITO:  Let me just ask you a question:  Are

20   these nothing more than the allegations?

21        MR. MOORE:  Same allegations in the pleading, Paul.

22        MR. ESPOSITO:  That plaintiff has against us.

23        MR. MOORE:  That's exactly right.  I believe this

24   tracks the Fifth Amended Complaint in Jentz.  There's

25   nothing in there that's not -- that's literally copied and

 1   pasted from plaintiff's.

 2        MR. ESPOSITO:  We discussed all these today?

 3        MR. MOORE:  We discuss all of them today?

 4        MR. ESPOSITO:  When we were discussing the

 5   plaintiff's.

 6        MR. PATTON:  Issues instruction, yeah.

 7        MR. ESPOSITO:  Were these the same issues?  We're

 8   just going to adopt our objections if these are the same.

 9        MR. MOORE:  They're the same allegations raised by

10   plaintiff against ConAgra.  That's all I can say.

11        MR. PATTON:  We'll assume that they're identical

12   and we'll just restate our same objections and all the

13   responses.

14        MR. MOORE:  The nature of our claim is derivative

15   of the plaintiff's, so a hundred percent tracks the language

16   of the plaintiff's allegations.

17        MR. PATTON:  And we're doing likewise in our

18   contribution claim against West Side and Becker, so the

19   jury's not kind of following the same road map, everybody's

20   theories.  Might have a few additional ones, but --

21        THE COURT:  Are you working on those?

22        MR. PATTON:  They're done.

23        MR. ESPOSITO:  We've got the Becker ones done.  And

24   then --

25        MR. MOORE:  That's the one we had to take up, Paul.

 1    Here's yours Jason.

 2          THE COURT:  So what are the other objections to

 3    West Side's 2 by ConAgra?

 4          MR. ESPOSITO:  Yes.  The objections are identical

 5    as to the issues -- the objections are the same objections

 6    that were raised in the issues instruction by plaintiffs

 7    Becker, Schmidt and Jentz, and we raise those same

 8    objections.

 9          THE COURT:  Okay.  Over objection, Jentz 2 --

10    West Side Salvage.

11        MR. MOORE:  We're going to have packet, same one in

12    the Schmidt case.

13          THE COURT:  Let's do it now then.

14          MR. MOORE:  It's right here.

15          MR. ESPOSITO:  Our objection in the Schmidt would

16    be the same as the objections in the Jentz.

17          MR. MOORE:  I will represent to you it's the exact

18    same situation in Schmidt as Jentz.  It's the same

19    allegations.  They just track the plaintiff's allegations

20    against ConAgra.

21          THE COURT:  Same ruling.  West Side Salvage 3 given

22    over objection of ConAgra.

23          MR. MOORE:  Your Honor, I have Instructions 4 and

24    5, which are simply the -- in the respective case, Jentz and

25    Schmidt.  It's the burden on our contribution claims.

 1          *MR. ESPOSITO:*  Standard 104?

 2          *MR. MOORE:*  600.

 3          *THE COURT:*  Same as the original.

 4          *MR. MOORE:*  Same thing as in Schmidt.

 5          *THE COURT:*  West Side Salvage 4 in Jentz given, no

 6  objection.  West Side Salvage Schmidt given, no objection.

 7          *MR. ESPOSITO:*  Your Honor, you may recall in the

 8  Becker case we had not got to our counterclaim against

 9  West Side.

10          *MR. MOORE:*  It's a third-party.

11          *THE COURT:*  Third-party claim, right.

12          *MR. ESPOSITO:*  Here is our 102, which is -- not

13  102.  What is it?  104, which is the issues instruction as

14  to --

15          *MR. MOORE:*  I have some objections.  Subparagraph

16  C, I think the word "true" is argumentative.  Subparagraph

17  E, F, G, H.  So with respect to E, "monitor"; F, "monitor";

18  G, "monitor"; H, "train".  That's not what West Side Salvage

19  was hired to do.  West Side Salvage was hired to remove

20  pellets.  This is assuming and purporting to place a duty

21  upon West Side Salvage that did not exist, and it's beyond

22  the scope of the evidence.  And then finally with respect to

23  subparagraph I, word "dangerous" I think is argumentative.

24          *MR. PATTON:*  May I respond?

25          *THE COURT:*  Please.

 1          MR. PATTON:  In terms of the term "monitor",

 2   Mr. Flitsch clearly testified every single day they

 3   monitored the danger, hazards, and they were to put any --

 4   they had to put monitors down to monitor, and failed to do

 5   that.  The litany of --

 6          THE COURT:  That objection's overruled.

 7          MR. MOORE:  It will be noted, correct.

 8          THE COURT:  You bet ya.  How about the allegation

 9   that the word "true" here is argumentative?  True condition

10   of the bin.

11          MR. MOORE:  It's argumentative.

12          THE COURT:  It implies that there was some

13   deception in the communication is how I understand the

14   objection.  Without true and just make condition of the bin?

15          MR. PATTON:  Can.

16          MR. MOORE:  What about on I?

17          THE COURT:  *Dangerous conditions*, it says.

18   "Dangerous" is argumentative.

19          MR. PATTON:  No.  We already have "dangerous",

20   failed to -- work site dangerous.

21          THE COURT:  "Dangerous" is okay.  So by agreement,

22   we're going the take out the word "true" in subparagraph C,

23   or do you want to tender it as that?

24          MR. PATTON:  No.

25          THE COURT:  Let's redo -- let's take out the word

 1    "true" and give me a clean and a marked.

 2         MR. MOORE:  Your Honor, just to be technical here,

 3    you overruled my objection with regard to the word

 4    "monitor".  Does that also apply to my issue with the word

 5    "train", *adequately train employees*?  I mention that as

 6    being similar to my monitor issue.  I think it goes beyond

 7    the scope of any duty, goes beyond the scope of the

 8    evidence.  West Side Salvage was hired to remove pellets.

 9         THE COURT:  Okay.  Your objection's overruled.  I

10    think this is part of the evidence and the allegations.

11         MR. ESPOSITO:  Your Honor, this is just the 606

12    burden of proof, and this was part of the issue.

13         THE COURT:  Okay.  I need to -- who has the

14    original of this?  Who can make this change?

15         MR. ESPOSITO:  Julie can make the changes.

16         MR. MOORE:  I have an issue, and I circulated this

17    in an e-mail.  It seems a very petty thing.  It says

18    West Side.  I want it to say West Side Salvage consistently

19    throughout these instructions.  I think it's misleading.  I

20    think it goes to a key issue in the case.  It's a subtle --

21    it should be West Side Salvage.

22         MR. PATTON:  Can we settle for West Side

23    Specialists?

24         MR. MOORE:  No.

25         THE COURT:  I want to be consistent, whatever --

1    I've called them west Side Salvage Inc. in my power point.

2         MR. PATTON:  You want Salvage and you want

3    Specialist, okay.

4         THE COURT:  Let's make it West Side Salvage.

5         MR. ESPOSITO:  I don't have a problem with any of

6    these arguments about salvage.  We've been calling them

7    West Side, we've been calling them ConAgra.  Our whole

8    name's ConAgra Foods.

9         MR. MOORE:  But the issue -- one of the issues in

10   this case is whether and what extent we are a firefighter or

11   whether we're a salvage company or both, and our position is

12   that we're a salvage company.  Other than that, I'm fine

13   with this.

14        THE COURT:  Okay.  Back on the record.  We're going

15   back to Jentz Instruction 67.  There is an objection to the

16   emotional distress portion of this by both ConAgra and

17   West Side that has not been articulated, the argument being

18   that emotional distress should not be a separate line item.

19   We made that objection as to Becker.  I heard arguments

20   completely.  And I'm willing to incorporate your arguments

21   in my ruling, but 67 will be given over objection of both

22   ConAgra and West Side.  It's listed as a ConAgra

23   instruction.  That's just for our ability to follow these

24   instructions.  It does not mean they've tendered this.  In

25   fact, they have not.

```
 1            MR. ESPOSITO:  Correct.

 2            THE COURT:  Next, ConAgra 66 is given without

 3     objection in Jentz.  This is present cash value -- no,

 4     future damages.

 5            MR. ESPOSITO:  Then there's this -- this was the --

 6     back to Becker.  It's the burden of proof on the

 7     contribution.

 8            THE COURT:  That's given, no objection.  ConAgra

 9     103, Justin Becker, given, no objection.  Do we have a clean

10     one?

11            MR. MOORE:  This was no objection?

12            THE COURT:  First time it's been tendered.  I take

13     it there's no objection.

14            MR. MOORE:  I think this is a standard 06.

15            THE COURT:  I gave the one you submitted, so why

16     would we -- did we already give this in Justin's?

17            MR. MOORE:  I don't have that in Justin's, you

18     know, because I have the contribution claim.

19            THE COURT:  That's right.  Justin Becker.  Oh, we

20     need a clean -- Paul, I need a clean of this.  Is that

21     Julie?

22            MR. ESPOSITO:  Yeah.

23            THE COURT:  Let's take five.

24        (Break)

25                              *   *   *   *
```

1    *(Court Reporter Barb Kniepmann took over at this point*

2    *and reported the rest of the proceedings for the day)*

3                          *    *    *    *

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          **REPORTER'S CERTIFICATE**

2

3           I, Laura A. Blatz, RPR, CRR, CCR(MO), Official Court
    Reporter for the U.S. District Court, Southern District of
    Illinois, do hereby certify that I reported in shorthand the
4   proceedings contained in the foregoing 80 pages, and that
    the same is a full, true, correct, and complete transcript
5   from the record of proceedings in the above-entitled matter.

6           Dated this 26th day of May, 2012.

7

8                              /s/
                               _____
9                              LAURA A. BLATZ, RPR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25