IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOHN W. JENTZ, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 10-CV-0474-MJR |
| | ) | (Lead case) |
| CONAGRA FOODS, INC. AND | ) | |
| WEST SIDE SALVAGE, INC., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

*Consolidated with:*

| | | |
|---|---|---|
| JUSTIN AND AMBER BECKER, | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| VS. | ) | 10-CV-0952-MJR |
| | ) | |
| CONAGRA FOODS, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

*Consolidated with:*

| | | |
|---|---|---|
| ROBERT SCHMIDT, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | 11-CV-0391-MJR |
| | ) | |
| CONAGRA FOODS, INC. AND | ) | |
| WEST SIDE SALVAGE, INC., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

1

MEMORANDUM AND ORDER

REAGAN, District Judge:

I.   Introduction

A jury trial commenced in this consolidated action on May 8, 2012, and concluded on June 1, 2012. On June 11, the Court provided the parties with a draft Judgment, allowing them until June 18 to object to the form of the Judgment (Doc. 486).

On June 18, Defendant ConAgra Foods, Inc., filed its Objection to the Court's form of Judgment (Doc. 490). Among ConAgra's proposed amendments was the addition of Paragraph 9: "Becker – ConAgra vs. West Side third Party Complaint for Contribution; *Kotecki* waiver."[1]

The *Kotecki* issue was first raised on January 20, 2012, when ConAgra moved for summary judgment on its third-party complaint against West Side Salvage, Inc., on the basis that West Side had waived any protections limiting its liability for contribution under *Kotecki v. Cyclops Welding Corp.*, 585 N.E.2d 1023 (Ill. 1992). Finding that a genuine issue of

---

[1] The paragraph ConAgra seeks to add to the Judgment is as follows:
**Becker-ConAgra vs. West Side Salvage, Inc. Third-Party Complaint for Contribution**
9. As to Count III (Contribution) of ConAgra Foods, Inc.'s Amended Third-Party Complaint, Doc. 436, judgment is entered in favor of Third-Party Plaintiff ConAgra Foods, Inc., against West Side Salvage, Inc. in the amount of: $15,571,600.00 as to Justin Becker and $110,000 as to Amber Becker. The Court also grants ConAgra's Motion for Judgment as a Matter of Law, Doc 402, as to West Side Salvage, Inc.'s waiver of *Kotecki* protection, on which the Court had previously reserved its ruling, Doc. 403, based on the jury's verdict in favor of ConAgra on its breach of contract claim against West Side Salvage.  Doc. 490-1, p. 3.

2

material fact existed as to whether the April 19, 2010 contract was fully executed and governed the parties' relationship, the Court denied ConAgra's motion as to whether the contract was enforceable and reserved as to the *Kotecki* waiver (Doc. 403). On June 1, the jury found that ConAgra had proven that the April 19, 2010 contract between ConAgra and West Side was valid and awarded ConAgra $3,000,000.00 in damages for property damage.

The issues pending before the Court are (1) whether West Side agreed to the indemnification provision in the contract and knowingly bargained away its *Kotecki* protection; (2) whether ConAgra waived or abandoned its claim for contractual indemnification; (3) whether Illinois or Iowa law should apply to the issue; (4) whether the language of the indemnification clause constitutes a *Kotecki* waiver; and (5) whether the judgment should specify that liability is joint and several.

II. Discussion

A. Whether West Side agreed to the indemnification provision

West Side contends that there cannot be a finding of waiver because there is no evidence that it knowingly bargained away its *Kotecki* protection and, in fact, that testimony established the opposite. West Side submits that Ken Langham testified that he signed the contract without reading the terms and conditions and without understanding what he was signing. At trial, ConAgra questioned West Side's President Gene Schwers for hours without asking a single question about contract negotiations,

3

execution or whether West Side intended to waive the *Kotecki* cap. West Side also asserts that the testimony of ConAgra's contract administrator, Cathy Rihanek, who stated that West Side had to sign the contract to get paid, shows that there was no bargained-for exchange. Lastly, West Side submits that ConAgra presented the jury with very specific questions regarding what West Side was required to do under the contract but did not ask the jury to decide whether and to what extent West Side agreed to the indemnity provision.

So, in essence, West Side asks the Court to strike the clause or render it a nullity. The jury decided that the April 2010 contract was valid and enforceable, so the Court's analysis begins with how Illinois courts interpret a contract.

Under Illinois law, "[a] contract must be construed as a whole, viewing each provision in light of the other provisions." ***Reserve at Woodstock, LLC v. City of Woodstock***, 958 N.E.2d 1100, 1111-12, (Ill.App.Ct. 2011), *citing Thompson v. Gordon*, 948 N.E.2d 39 (Ill. 2011). "The parties' intent is not ascertained by viewing a clause or provision in isolation, or by looking at detached portions of the contract." ***Id., citing Thompson***, 948 N.E.2d 39; ***Hot Light Brands, LLC v. Harris Realty, Inc.***, 912 N.E.2d 258 (Ill.App.Ct. 2009) (an agreement is to be interpreted as a whole; we should give meaning and effect to every provision when possible, and we will not interpret the

**agreement in a way that would nullify provisions or would render them meaningless).** Or, summing up succinctly, contract interpretation "is not a smorgasbord at which you take what you like and leave what does not appeal to your tastes." ***Wells Fargo Funding v. Draper & Kramer Mortg. Corp.*, 608 F.Supp.2d 981, 987 (N.D.Ill. 2009)**.

As required by Illinois law and the basic principles of contract interpretation, the Court must give full meaning and effect to every provision of the April 2010 contract and may not interpret the contract in a manner that would nullify a provision. In short, the indemnification clause is valid and enforceable.

  B. <u>Whether Con Agra waived or abandoned its claim for contractual indemnification</u>

West Side asserts that by not presenting evidence and not asking the jury to decide the factual issue of whether and to what extent West Side agreed to indemnify ConAgra, ConAgra waived its opportunity to have the legal issue of whether West Side waived its *Kotecki* protection decided by this Court as a matter of law. The undersigned Judge agrees that ConAgra waived or abandoned its claim for contractual indemnification. But it does not follow that ConAgra waived its claim that West Side waived its *Kotecki* protection. That is discussed below.

During ConAgra's lengthy examination of Schwers, it did not inquire about contract negotiation, contract execution or the issue of indemnity and the *Kotecki* cap. The questions directed to the jury for its

5

verdict did not include any question regarding whether West Side was required to indemnify ConAgra. The jury found that West Side was required under the contract to

>(a) remove all pellets from bin 15, using vacuum, bin whip and entry as needed;
>
>(b) employ on the work only workers skilled in the task assigned to him;
>
>(c) be solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the work;
>
>(d) be responsible for the acts and omissions of all his employees and all subcontractors, their agents and employees and all other persons performing any of the work under a contract with West Side Salvage;
>
>(e) be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the work, comply with all applicable laws, ordinances, rules, regulations and orders of any public authority having jurisdiction for the safety of persons or property or to protect them from damage, injury or loss; and
>
>(f) remedy without cost, charge or expense to ConAgra all damage or loss to any property caused in whole or in part by West Side Salvage, any subcontractor or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable.

ConAgra presented no evidence on indemnification and did not ask the jury to decide the factual issue through an offered jury instruction. As a result, ConAgra waived or abandoned its claim for contractual indemnification, which was included in Count IV of ConAgra's Second Amended Cross-claim against West Side (Doc. 435).

      C. <u>Whether Illinois or Iowa law governs Justin Becker's workers' compensation claim</u>

West Side submits that Iowa law arguably applies to the issue before the Court. Citing *Moore v. Wausau Club v.Dick Judson Orchestras, Inc.*, 777 F.Supp. 619, 621 (N.D.Ill. 1991), West Side contends that the place of the employer's benefits coverage is the single most important factor in determining which state's workers' compensation law to apply. Under Iowa law, ConAgra's contribution claim fails because contribution claims by a third-party tortfeasor against a plaintiff's employer are not permitted. According to West Side, since Becker's workers' compensation coverage is based in Iowa, Iowa law must be applied to his workers' compensation claim.

Even if West Side were correct, its argument fails because it did not raise the issue in a timely manner and has repeatedly invoked Illinois law in defending against ConAgra's third-party claim. West Side did not raise this defense in its Answer to ConAgra's Complaint or to its Second Amended Complaint (Docs. 134, 160). In West Side's response to ConAgra's motion for summary judgment (Doc. 186), it invoked the protection of Illinois law under *Kotecki* and made no mention of Iowa law.

The Federal Rules of Civil Procedure require parties to raise all affirmative defenses at the pleadings stage. "Failure to plead an affirmative defense may result in waiver of that defense." **Fort-Greer v. Daley, 228 Fed.Appx. 602, 603-04 (7th Cir. 2007)**. "The person served with the

7

summons and third-party complaint … must assert any defense against the third-party plaintiff's claim under Rule 12;…" **Fed. R. Civ. P. 14(a)(2)(A)**. With certain exceptions not relevant here, "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." **Fed. R. Civ. P. 12(b)**.  While the Court may allow a defense to be asserted later and give the plaintiff the opportunity to respond, **Fort-Greer, 228 Fed.Appx. at 604**, in this instance where the action has been tried to verdict, it is far too late to allow West Side to invoke Iowa law.

West Side has throughout the case inconsistently taken the position that Illinois law applies, particularly in relying on *Kotecki*.[2]  "'It is fundamental to our adversarial process that a party waives his right to complain of an error where to do so is inconsistent with the position taken by the party in an earlier court proceeding.'" **Sbarboro v. Vollala**, **911 N.E.2d 553, 564 (Ill.App.Ct. 2009)**, *quoting McMath v. Katholi*, **730 N.E.2d 1 (Ill. 2000)**, *quoting Auton v. Logan Landfill, Inc.*, **475 N.E.2d 817 (Ill. 1984)**.  It would be manifestly unfair and prejudicial for the Court

---

[2] In West Side's response to ConAgra's motion for summary judgment on *Kotecki* grounds (Doc. 236), it argued,
> Illinois has the most significant contacts in this case for purposes of determining that there was no valid and enforceable contract between the parties on the date of the accident in this case…. The Work Order Contract form does not contain a choice of law provision. That being said, the subject matter of the form (bin 15) was located in Illinois and the work called for was to be performed in Illinois. Therefore, Illinois law applies to the contract dispute between ConAgra and West Side.

to allow West Side to opt for application of Iowa law now simply because it fears that its position under Illinois law is less tenable.

In sum, West Side cannot avoid the consequences of its own actions. West Side waived its right to raise a choice-of-laws defense and is barred from raising it now.

The question that remains is whether the contractual provision in this case operated as a waiver of the *Kotecki* cap on West Side's contribution liability. **See *Liccardi v. Stolt Terminals, Inc.*, 687 N.E.2d 968, 971 (Ill. 1997)**

D. <u>Whether West Side waived its *Kotecki* protection</u>

The Court arrives at this issue through the somewhat circuitous route laid out in Illinois statute and case law. Plaintiff Justin Becker, a West Side employee, cannot sue West Side directly. His exclusive remedy is pursuant to the Illinois Workers' Compensation Act. **820 ILCS 305/11**. However, where a party other than an employer causes an employee to be injured at work the employee can sue the third party for damages. **See 820 Ill. Comp. Stat. 305/5(b)**. The third party can in turn seek contribution from the employer, thereby bringing the employer into the suit. ***Id.***

In *Kotecki*, the Illinois Supreme Court ruled that a third-party defendant employer's contribution liability is limited to the amount of the employer's workers' compensation liability. ***Kotecki*, 585 N.E.2d at 1027-28.** *Kotecki* was the Court's attempt "to balance the competing interests of

the employer, as a participant in the workers' compensation system, and the equitable interests of the third-party defendant in not being forced to pay more than its established fault." ***Virginia Sur. Co., Inc. v. Northern Ins. Company of New York***, **866 N.E.2d 149, 154 (Ill. 2007)**, *citing **Kotecki*, 585 N.E.2d 1023**.

An employer may contractually waive the cap on its contribution liability, resulting in the employer becoming liable for its full *pro rata* share of contribution. ***Braye v. Archer-Daniels-Midland Co.*, 676 N.E.2d 1295, 1300 (Ill. 1997); *Estate of Willis v. Kiferbaum Const. Corp.*, 830 N.E.2d 636, 641 (Ill.App.Ct. 2005)**. "In essence, a party who agrees to waive *Kotecki* as an affirmative defense voluntarily assumes contribution liability in excess of the limitations provided under the Compensation Act." ***Willis*, 830 N.E.2d at 641**, *citing **Christy–Foltz, Inc. v. Safety Mutual Casualty Corp.*, 722 N.E.2d 1206 (Ill. 2000)**.

The Court is unpersuaded by ConAgra's reliance on *Braye* for establishing that the indemnification clause in the ConAgra/West Side contract waived *Kotecki* protection. As West Side contends, the Illinois Supreme Court's holding is limited to answering two certified questions: (1) whether the liability cap provided to an employer who has paid workers' compensation benefits may be waived by contract; and (2) whether the alleged contractual language at issue in that case operated as a waiver of the *Kotecki* cap or was void for being in violation of the Construction

10

Contract Indemnification for Negligence Act. *Braye*, **676 N.E.2d at 1297**. The Court did not determine whether the language of the indemnification provision actually waived *Kotecki* protection. Rather, as the Court summarized,

> [W]e hold that an employer may enter into a valid and enforceable contractual agreement to waive the *Kotecki* limitation on the employer's contribution liability. We further hold that the purchase order in the case at bar is not void as being violative of the Indemnification Act.

*Id.* at **1304**.

Because the Illinois Court did not decide whether the contractual language at issue operated as a waiver of the *Kotecki* cap, *Braye* does not aid this Court's analysis of whether the indemnification clause in the ConAgra/West Side contract operated as a waiver.

The Court instead turns to the *Willis* case for guidance on what constitutes a waiver of *Kotecki* protection under Illinois law. There, the Illinois Appeals Court examined two indemnification clauses. The clause which the court found did *not* constitute a valid waiver, paragraph 7, reads as follows:

> The Subcontractor agrees to assume entire responsibility and liability, to the fullest extent permitted by law, for all damages or injury to all persons, whether employees or otherwise, and to all property, arising out of it, resulting from or in any manner connected with, the execution of the work provided for in this Subcontractor [*sic*] … and the Subcontractor, to the fullest extent permitted by law, agrees to indemnify and save harmless the Contractor … from all such claims including, without limiting the generality of the foregoing, claims for which the Contractor may be or may be claimed to be, liable and legal fees and

11

> disbursements paid or incurred to enforce the provisions of this paragraph….

***Willis*, 830 N.E.2d at 639**.

The clauses which the court found *did* constitute a waiver, paragraphs 11.11.1 and 11.11.2, read as follows:

> [T]he Subcontractor shall indemnify and hold harmless the Owner, the Architect and the Contractor and all of their agents and employees from and against all claims, damages, losses, and expenses … arising out of or resulting from the performance of the Subcontractor's work under this Subcontract, provided that any such claim … is attributable to bodily injury … to the extent caused in whole or in part by any negligent act or omission of the Subcontractor of anyone directly or indirectly employed by him or anyone for whose acts he may be liable, regardless of whether it is caused in part by a party indemnified hereunder.
>
> In any and all claims against the Owner, the Architect, or the Contractor or any of their agents or employees by any employee of the Subcontractor, anyone directly or indirectly employed by him or anyone for whose acts he may be liable, the indemnification obligation under this Paragraph 11.11 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.

***Willis*, 830 N.E.2d at 639-40**.

In distinguishing the provisions, the appellate court noted that in paragraph 11.11.1 of the contract, the subcontractor agreed to indemnify the contractor "against claims of injury 'caused in whole or in part by any negligent act or omission of the Subcontractor.'" ***Id.* at 642**. Paragraph 11.11.2 added that "'the indemnification obligation under this Paragraph

11.11 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under ... workmen's compensation acts.'" The court observed that the words "'shall not be limited,' or other phrases purporting to indemnify either party for its own negligence" did not appear in paragraph 7 as they did in the indemnification provisions in paragraphs 11.11.1 and 11.11.2. *See id.*

In the current proceeding, the Work Order Contract provides for indemnification as follows:

> **9. INDEMNITY**: Contractor shall indemnify and save harmless Owner, its agents, servants, employees or representatives against all losses and all claims, demands, actions, suits, payments and judgments arising from property damage, personal injury or otherwise brought or recovered against Owner, its agents, servants, employees or representatives by reason of any act or omission of the Contractor, its agents, servants, employees or representatives in the execution or guarding of work, including any and all expenses, legal or otherwise incurred by Owner, its agents, servants, employees or representatives in the defense of any suit or claim.

The indemnity clause in the ConAgra/West Side contract closely tracks the language of paragraph 7 in *Willis*, with the exception of the phrase "to the fullest extent permitted by law." What the Court does not find in the ConAgra/West Side contract is the express language indicating that indemnification "shall not be limited" or other phrases by which West Side agrees to indemnify ConAgra for ConAgra's own negligence. There is

13

certainly no explicit reference to benefits under the workers' compensation act, which the court identified as among the pivotal phrases in paragraph 11.11.2.

In sum, the language of paragraph 9 of the ConAgra/West Side contract is too broad to constitute a waiver of West Side's *Kotecki* protection. West Side did not waive its *Kotecki* protection because the provision does not contain sufficient specific contractual language necessary to constitute a waiver.

E. <u>Whether the judgment should specify joint and several liability</u>

ConAgra and Plaintiffs propose that the Court add the term "joint and several liability" to the Judgment. This proposal goes beyond the jury's verdict and seeks to add legal conclusions regarding satisfaction of the judgments, a step which is both unsound and unnecessary. The Court's draft judgment accurately reflects the jury verdict and the legal responsibility of each party based on the jury's determination of comparative fault. Nothing else is necessary.

III. <u>Conclusion</u>

For the foregoing reasons, the Court **DENIES** ConAgra's motion for judgment as a matter of law as to the *Kotecki* waiver (Doc. 402). This final issue having been resolved and the parties' objections considered, the Court will enter Judgment promptly.

IT IS SO ORDERED.

DATED this 6th day of August, 2012

s/Michael J. Reagan
MICHAEL J. REAGAN
United States District Judge
