IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN W. JENTZ, JUSTIN BECKER, AMBER    )
BECKER and ROBERT SCHMIDT,             )
                                       )
                    Plaintiffs,        )
                                       )   Case No. 10-cv-0474-MJR
v.                                     )
                                       )
CONAGRA FOODS, INC., et al.,           )
                                       )
                    Defendants.        )
                                       )

MEMORANDUM AND ORDER
DENYING WEST SIDE'S POST-TRIAL MOTIONS (Docs. 516, 517)

REAGAN, District Judge:

I.    Introduction

        Following a 17-day trial, the jury entered its verdicts in favor of
Plaintiffs John Jentz and Robert Schmidt and against Defendants ConAgra Foods, Inc.,
and West Side Salvage, Inc. The jury awarded Jentz compensatory damages in the
amount of $41,585,000.00 and apportioned 45% of the legal responsibility for
proximately causing Jentz's injuries to West Side (Doc. 460). The jury also awarded
punitive damages in favor of Jentz and against West Side in the amount of
$1,000,000.00 (Doc. 454). The jury awarded Schmidt compensatory damages in the
amount of $2,915,000.00 and apportioned 35% of the legal responsibility for
proximately causing Schmidt's injuries to West Side (Doc. 472). The jury awarded no
punitive damages against West Side as to Schmidt (Doc. 470).

West Side now renews its motion for judgment as a matter of law on Count III (Negligence) and Count IV (Willful and Wanton) of Jentz's Fifth Amended Complaint, pursuant to Fed. R. Civ. P. 50(b), or, in the alternative, for a new trial, pursuant to Fed. R. Civ. P. 59(a)(1)(A) (Doc. 516).  West Side also moves for judgment as a matter of law on Count III (Negligence) of Schmidt's Second Amended Complaint or, in the alternative for a new trial (Doc. 517).  Because most of the issues raised in these motions overlap, the Court will address them together, discussing separately those issues pertinent to Jentz alone.

II.    Judgment as a matter of law pursuant Fed. R. Civ. P. 50(b)

Rule 50 of the Federal Rules of Civil Procedure allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  **Fed.R.Civ.P. 50(a) (motion for judgment as a matter of law), (b) (renewed motion for judgment as a matter of law).**  Under Rule 50(b) a court may "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law."

The contours of applicable law were defined by the Seventh Circuit Court of Appeals in ***Passananti v. Cook County*, 689 F.3d 655 (7th Cir. 2012).**  Therein, the Court stated, "In deciding a Rule 50 motion, the court construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence." ***Passananti*, 689 F.3d at 659 (citing *Tart v. Illinois Power Co.*, 366 F.3d 461, 464 (7th Cir. 2004) (citing *Reeves v. Sanderson Plumbing Products, Inc.*,**

2

530 U.S. 133, 150-51 (2000)).  "The court does not make credibility determinations or weigh the evidence."  *Id.* **(citing *Waite v. Bd. of Trs. of Illinois Cmty. College Dist. No. 508*, 408 F.3d 339, 343 (7th Cir. 2005) (citing *Reeves*, 530 U.S. at 150**.  The court reviews the entire record but "'must disregard all evidence favorable to the moving party that the jury [was] not required to believe.'"  *Id.* **(quoting *Reeves*, 530 U.S. at 151**.

Rule 50(a)(2) provides that a motion for judgment as a matter of law "must specify the judgment sought and the law and facts that entitle the movant to the judgment."  Plaintiffs submit that West Side does not cite to the record to support any of its arguments.  Furthermore, as to Jentz, West Side cites case law in only two of its 13 arguments, and 10 of its arguments consist of one sentence.  As to Schmidt, West Side raises 11 bases as to why it is entitled to judgment as a matter of law but does not cite to the record to support any of its arguments, and all but one of the arguments consist of one sentence.  Plaintiffs assert that all arguments lacking in specificity, *i.e.*, all but two of West Side's arguments as to Jentz and all of West Side's arguments as to Schmidt, should be denied for failure to comply with the Rule.

In support of Plaintiffs' contentions, they cite ***Nobelpharma Ab v. Implant Innovations, Inc.*, 930 F.Supp. 1241 (N.D.Ill. 1996),** where the Court observed,

> Failure to state the grounds or the motion with specificity may provide grounds for denying the motion. But the requirement is not a technical one. 5A James Moore, *Moore's Federal Practice* ¶ 50.04 (2d ed. 1995). Its purposes are twofold: (1) to assure that the trial court has an adequate basis for its decision; and (2) to afford the adverse party the opportunity to correct any possible infirmities in the proof presented.

**930 F.Supp. at 1249) (quoting *Moore's Federal Practice* ¶ 50.04 (additional citation omitted).**

Clearly, providing no more than a single sentence as grounds for relief fails in the two crucial ways noted in ***Nobelpharma***, apprising neither the Court nor opposing counsel of the reasons that West Side believes judgment as a matter of law is appropriate.  The Court is not required to sift through the record in search of facts pertinent to West Side's position.  ***See United States of America by and through Joseph E. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("[J]udges ... need not try to fish a gold coin from a bucket of mud.").**

However, that is not the end of the analysis because a failure to expressly state a sufficient argument in a Rule 50(b) motion does not result in waiver if previously presented arguments have made the movant's position clear for the Court and opposing counsel.  ***Laborers' Pension Fund v. A & C Environmental, Inc.*, 301 F.3d 768, 777-78 (7th Cir. 2002) (additional citations omitted)).**  West Side's motion does not explain where and how it has previously argued these issues in greater depth, nor did West Side file a reply, which could have been allowable under Local Rules, since this would arguably constitute an exceptional circumstance.  **SDIL-LR 7.1(c)(2).**

The Court, in an abundance of caution, reviewed West Side's Rule 50(a) motion and finds that it, too, suffers from the same lack of specificity – only three of 14 arguments developed beyond a single sentence (Doc. 405).  Turning then to West Side's oral argument on its Rule 50(a) motion, the Court finds that West Side addressed only punitive damages.  Counsel argued that no submissible case had been

made for punitives because the only basis for punitives – Flitsch's decision to send the men back into the tunnel – was safety-driven rather than money-driven and was made without forethought in the heat of the moment (Doc. 411, p. 7).  Beyond that single argument, counsel chose to stand on the written motion.  The Court sees no reason to delve more deeply, particularly since West Side did not file a reply, indicating where in the record these issues were raised more fully.  In sum, the Court finds nothing in the record beyond the cursory arguments advanced in West Side's motion.

      1.   <u>Compensatory damages:  Jentz and Schmidt</u>

The foregoing notwithstanding, the Court concludes that legally sufficient evidence supports the jury's findings regarding the first five of West Side's statements:   (1) Plaintiffs were injured because of West Side's negligence; (2) Plaintiffs' claims against West Side were neither speculative, conjectural nor based on surmise; (3) Plaintiffs' injuries were the direct and proximate result of an act or acts by West Side; (4) West Side negligently failed to properly inspect and monitor the bin for self-heating, smoldering or fire and the presence of combustible gases or vapors; and (5) West Side was otherwise negligent.

Evidence adduced at trial shows that Jentz suffered second, third and fourth degree burns over 70% to 75% of his body.  Schmidt had second-degree burns over 3% of his body, including his hands, neck and face.  Jentz had evacuated and was in a place of safety until West Side's foreman, Mel Flitsch, told him to return to the bin tunnel to remove his tools so they would not obstruct firemen who were being called to the site.  Particularly compelling was Dr. Ogle's testimony:

Q. And it was after Mr. Schmidt ordered the evacuation that Mr. Flitsch
sent Mr. Jentz and Mr. Becker back into the tunnel, is that correct?
A. That's correct.
Q. If that doesn't happen, those gentlemen are not injured, correct?
A. If they don't go back in the tunnel, they don't get injured, correct.
Doc. 351, Ogle Trans., 230:14-21.

Flitsch himself testified that he made a mistake sending the men back into the tunnel.  Doc. 396, Flitsch Trans., 201:18-21.  The jury could have reasonably found that West Side, through Flitsch's conduct, was, at least, negligent, in that Flitsch deemed the situation so dangerous that he had asked ConAgra to call the fire department, yet he sent Jentz and Becker back into the bin.  Flitsch also testified that he knew for a minimum of two hours prior to the explosion that there was a fire in the bin, but he did not tell ConAgra's director of elevator operations Godfrey Friedt nor did he call the fire department or order an evacuation.  Doc. 396, Flitsch Trans., 163:4-21.

Furthermore, Dr. Ogle was critical of West Side's actions in removing the pellets while they were still on fire, failing to monitor the scene and failing to follow accepted practices in fighting the fire. Doc. 339, 69:19-71:15.  During Dr. Ogle's testimony, West Side's website was discussed, on which West Side holds itself out to be an expert on hot bins and fighting elevator fires.  *See* pp. 98, *et seq*.

Finally, evidence offered at trial showed that West Side's Vice-President, Ron Sumner, believed in March, when he visited the site, that the bin was "a ticking time bomb," but that this dangerous condition was not conveyed to A&J and to Plaintiffs.

The evidence recounted shows that the jury had a sufficient basis to conclude that Plaintiffs were seriously injured and that those injuries were caused by West Side's negligence.  Decisions by West Side, particularly Flitsch's decisions, were a proximate cause of Plaintiffs' injuries.

For its sixth ground, West Side asserts that Plaintiffs were aware of the alleged fire and explosion hazards, which were open and obvious.  This cannot fail to bring to mind the exchange between the Beckers' counsel, Mr. Taxman, and ConAgra's counsel, Mr. Patton, during closing arguments, where Mr. Taxman took Mr. Patton to task for suggesting that there was some stupidity, overconfidence or negligence on the part of Plaintiffs for their injuries.[1]  The Court is struck afresh by the failure of those in authority, Flitsch and Friedt (and, by extension, Yount, ConAgra's safety director, who repeatedly spoke with Friedt on the day of the explosion), to detect this allegedly "open and obvious" hazard, call the fire department and evacuate the site.

Jentz testified that he had no experience in fire fighting or bin management, believed that his gas monitor was to keep him from passing out rather than to indicate of presence of explosive gases, and that a "hot bin" was a bin that was warming up.  Doc. 409, Jentz Trans., 15:13-16; 17:9-22; 19:1-5.  Jentz also testified that he understood that a hot bin potentially presented a danger of fire which could cause an explosion.  *Id.* at 61:21-62:2.  Jentz sensed no danger and was

---

[1] The jury ascribed a small percentage of contributory negligence to Plaintiffs Jentz (1%) and Becker (5%), and none to Schmidt (0%).

not worried about anything until the time that Flitsch told him to return to the tunnel to get his tools.  *Id*. at 19-25.  He knew the fire department had been called, but he had worked beside the fire department before, so that did not cause him to believe that an explosion was imminent.  *Id*. at 98:1-7.  When asked why he returned to the tunnel, Jentz responded, "Nobody expressed any concern to me about anything being wrong."  *Id*. at 37:19-23.  To Jentz, the danger was not open and obvious because he had no idea that there was a risk of explosion.

Schmidt testified that he was not trained to do temperature monitoring for bins or to determine if there was a fire in a bin.  Doc. 350, Schmidt Trans., 44:19-25.  He had never been on a job where a fire or an explosion occurred.  *Id*. at 46:9-14.  Neither Schmidt's employer nor West Side provided any information to him that caused him to be concerned about working on the bin.  *Id*. at 49:23-50:13.  West Side did not tell Schmidt that he was working on a "ticking time bomb."  *Id*. at 50:11-13.

Illinois has adopted the rules set forth in sections 343(a) and 343A of the Restatement (Second) of Torts regarding the duty of possessors of land to their invitees.  ***Rusch v. Leonard*, 927 N.E.2d 316, 324-25 (Ill.App.Ct. 2010) (citing Restatement (Second) of Torts §§ 343(a), 343A (1965)).**  "[A] possessor of land owes its invitees a duty of reasonable care to maintain the premises in a reasonably safe condition. *Id*. (citing Restatement (Second) of Torts § 343(a) (1965) (additional citation omitted)).**  Under § 343A(1), a possessor of land cannot be liable for an invitee's injury if the condition that caused the injury was known or obvious to the invitee. *Id*. (citing Restatement (Second) of Torts § 343A(1) (1965)).**  But the danger here was not open and obvious because Plaintiffs were unaware that a risk of

explosion existed.  And, as stated above, if the danger were open and obvious, Friedt or Flitsch would have detected it, called the fire department and evacuated the site.

Even if a danger is open and obvious, a landowner may still be liable if the deliberate encounter exception applies.  ***Rusch,* 927 N.E.2d at 324 (citation omitted).**  The deliberate encounter exception applies here because, even if the risk were open and obvious, Plaintiffs could not do their jobs - operate the bin whip - without working in and around the bin.  ***See LaFever v. Kemlite Co.*, 706 N.E.2d 441, 448 (1998) (plaintiff was injured when he deliberately encountered a work area covered with very slick materials).**

"Under the deliberate-encounter exception, the open and obvious danger rule will not apply if the possessor of land has reason to anticipate or expect that the invitee will proceed to encounter an open and obvious danger because to a reasonable person in the invitee's position the advantages of doing so outweigh the apparent risk."  ***Kleiber v. Freeport Farm and Fleet, Inc.*, 942 N.E.2d 640, 648 (Ill.App.Ct. 2010) (citations omitted).**   "The deliberate-encounter exception recognizes that individuals will make deliberate choices to encounter hazards when faced with employment concerns and that those encounters are reasonably foreseeable by possessors of property."  ***Id*. (citations omitted).**   The focus in this analysis is on what the landowner anticipates or should anticipate the invitee will do.  ***Id*. (citations omitted).**

Plaintiffs had no choice but to work in and around the bin to do their jobs.  It bears repeating:  West Side was aware of the hazard in the bin and could

9

anticipate that Plaintiffs would choose to encounter it.  So, even if the danger were open and obvious, the deliberate encounter exception applies.

For its seventh ground, West Side asserts that Plaintiffs assumed the risk of an explosion.  As stated above, Plaintiffs did not believe there was a risk of explosion, did not understand the dangers of working in the bin and were not warned of the dangers.  Even when Jentz was told to re-enter the tunnel after the evacuation order and after the fire department was called, he did not appreciate the danger because nobody expressed any concern to him about anything being wrong.  Schmidt, who had no special instructions or warnings, believed this was a normal job.

"Traditionally, courts have classified the doctrine of assumption of the risk into three categories: (1) express assumption of the risk; (2) primary implied assumption of the risk; and (3) secondary implied assumption of the risk." *Evans v. Lima Lima Flight Team, Inc.*, **869 N.E.2d 195, 206 (Ill.App.Ct. 2007) (citing *Hanke v. Wacker*, 576 N.E.2d 1113 (Ill. 1991))**. West Side does not specify upon which doctrine it relies, but none of the three applies.  There is no evidence that Plaintiffs expressly assumed the risk, *i.e.*, that they explicitly agreed, in advance, to relieve West Side of a legal duty owed to them. *See id.* **(citing *Duffy v. Midlothian Country Club*, 481 N.E.2d 1037 (Ill. 1985))**.  As to primary implied assumption of the risk, Plaintiffs' and West Side's conduct does not show that Plaintiffs implicitly consented to encounter a  known risk, such that West Side would be excused from its legal duty. *See id*. **(citing *Russo v. Range, Inc.*, 395 N.E.2d 10 (1979)).** And, lastly, "secondary implied assumption of the risk occurs where the defendant's negligence created a danger that was apparent to the injured party, who nevertheless voluntarily chose to

10

encounter it." *Id.,* (citing *Duffy,* **481 N.E.2d 1037**).  Because the Court has found, *supra,* that the deliberate encounter exception applies to Plaintiffs' conduct, West Side is not excused from its legal duty.  As reasonable persons, Plaintiffs made a deliberate choice to encounter the hazard because they could not otherwise do their jobs and that choice was reasonably foreseeable by West Side.  ***See Kleiber*, 942 N.E.2d at 648.**

Plaintiffs did not assume the risk that the bin would explode and that they would suffer severe burns on this job.  West Side has not established that Plaintiffs assumed "any and all risk" that was associated with their work.

West Side's 10th through 13th grounds as to Jentz, which mirror its 8th through 11th grounds as to Schmidt are again single sentence assertions without reference to the record or to case law, in violation of Rule 50(a)(2).[2]  West Side contends that no evidence was offered or received which raises a jury issue on the allegations of Jentz's Fifth Amended Complaint and Schmidt's Second Amended Complaint; that the evidence at trial failed to establish that West Side breached any duty to Plaintiffs; that the evidence at trial failed to establish any facts under which Plaintiffs are entitled to relief against West Side under any allegations contained in the amended complaints; and evidence at trial failed to establish a submissible case against West.

As Judge Rovner of the Seventh Circuit stated epigrammatically, "We need not linger too long" on the matter before this Court.  ***See United States v.***

---

[2] The Court takes up West Side's 8th and 9th grounds for judgment as a matter of law on Jentz's punitive damages claims below, § 2, pp. 11-14.

*Stephenson,* **557 F.3d 449, 454 (7th Cir. 2009).**  Essentially, West Side attempts to draw a line under its previous arguments and write *Q.E.D.*, as if it has already demonstrated that no evidence supports any liability on its part.  Contrary to West Side's bare assertions, as shown above, ample evidence supports the jury's verdicts in favor of Plaintiffs and against West Side on compensatory damages.  The evidence shows that West Side's 10th through 13th grounds as to Jentz and 8th through 11th grounds as to Schmidt are meritless.

For the foregoing reasons, West Side's motion for judgment as a matter of law against Plaintiffs Jentz and Schmidt as to compensatory damages will be denied.

### 2. Punitive damages:  Jentz

For its eighth ground, West Side asserts that Jentz's allegations as to punitive damages (Count IV - Willful and Wanton) fail to state a claim upon which relief may be granted.  More particularly, West Side asserts that Jentz pleaded insufficient factual allegations to maintain a claim for punitive damages against West Side.

In determining whether Jentz has stated a claim, this Court applies federal notice pleading standards, not Illinois's fact-pleading standard.  ***Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services,* Inc.,  536 F.3d 663, 670 (7th Cir. 2008) (citation omitted) ("It is well settled that a federal court sitting in diversity applies federal pleading requirements 'even when the claim pleaded arises under state rather than federal law.'").**  Notice pleading is all that is required.  ***Tamayo v. Blagojevich,* 526 F.3d 1074, 1083 (7th Cir. 2008).**

12

**("A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.").**

The Court has reviewed Count IV of Jentz's complaint in which he seeks punitive damages for West Side's conscious disregard for, or utter indifference to, his safety. Jentz alleges that West Side failed to warn him or his employer of the dangerous condition of the bin and instructed him to return to the tunnel after the call to the fire department had been made. These allegations adequately provide West Side with fair notice of Jentz's claim and the grounds upon which it rests, as well as showing that it is plausible that Jentz is entitled to relief. West Side's argument that there are insufficient factual allegations is based on Illinois law, not applicable here.

For its ninth ground, West Side asserts that there was no evidence at trial supporting a claim for willful and wanton conduct by West Side. According to West Side, no evidence was adduced at trial to show that West Side acted with actual or deliberate intent to harm, or with an utter indifference to, or conscious disregard of, Jentz's safety.

Under Illinois law, punitive damages may only be awarded if a tort is committed "with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." **Loitz v. Remington Arms Co., Inc., 563 N.E.2d 397, 402 (Ill. 1990).** Punitive damages may be imposed for "conduct involving some

13

element of outrage, similar to that usually found in crime" but also for conduct that qualifies as "gross negligence" or "reckless indifference to the rights of others." *Id*. The conduct at issue must go beyond "mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence." ***Id*. (citing Restatement (Second) of Torts § 908, comment *b*, at 465 (1979)).** But "a reckless disregard for plaintiff's rights" is sufficient to support punitive damages, albeit at "the low end of the scale." ***Slovinski v. Elliot*, 927 N.E.2d 1221, 1228 (Ill. 2010)**.

"Punitive damages can properly be awarded against a master or other principal because of an act by an agent only if:  the principal authorized the doing and the manner of the act, the agent was unfit and the principal was reckless in employing him, the agent was employed in a managerial capacity and was acting in the scope of his employment, or the principal or a managerial agent of the principal ratified or approved the act." ***Bates v. William Chevrolet/Geo, Inc.*, 785 N.E.2d 53, 60 (Ill.App.Ct. 2003) (citing *Kennan v. Checker Taxi Co.*, 620 N.E.2d 1208 (Ill. 1993)).** Consequently, punitive damages can properly be awarded against West Side because of an act of Flitsch, who was West Side's agent employed in a managerial capacity and acting within the scope of his employment.

The jury heard *ad nauseum* that everyone knows a person should not re-enter a burning building, but Flitsch, knowing that there was fire and that the fire department had been called, sent Jentz back into the tunnel.  This certainly rises above mere inadvertence, mistake or an error of judgment.  A reasonable jury could conclude, based on the evidence presented at trial, that punitive damages should be

imposed on West Side because Flitsch's conduct qualifies as "gross negligence" or "reckless indifference" to Jentz's safety.

For the foregoing reasons, West Side's motion for judgment as a matter of law against Plaintiff Jentz as to punitive damages will be denied.

III.    West Side's Rule 59(a) motion for a new trial

FEDERAL RULE OF CIVIL PROCEDURE 59(a) provides that in any action where there has been a jury trial, a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court...."  That language has been interpreted to mean that a district court may grant a new trial only if the jury's verdict is against the clear weight of the evidence or the trial was unfair to the moving party.  *Whitehead v. Bond*, 680 F.3d 919, 927-28 (7th Cir. 2012) (citing *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011)).  "A new trial should be granted … 'only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience.'" *Id*. at 928 (quoting *Clarett*, 657 F.3d at 674).  "[A] court will set aside a verdict as contrary to the manifest weight of the evidence only if no rational jury could have rendered the verdict." *Id*. (quoting *Marcus & Millichap Inv*. *Servs*. *of Chi*., *Inc*. *v*. *Sekulovski*, 639 F.3d 301, 313-14 (7th Cir. 2011) (quotations omitted); *see also Galvan v*. *Norberg*, 678 F.3d 581, 589 (7th Cir. 2012)).

West Side offers 19 grounds as to Jentz and 15 grounds as to Schmidt in support of its motion for a new trial.[3]  In grounds 1, 2, 3, 4, 5 and 7 (identical as to Jentz and Schmidt), West Side contends that the Court erred in permitting Plaintiffs' expert, Dr. Russell Ogle, to offer opinions critical of West Side's handling of the bin. Specifically, West Side asserts that the Court committed prejudicial errors when, over West Side's objections, the Court:  (1) allowed Dr. Ogle to express opinions regarding the customs and practices in the grain salvage industry where he admittedly had no experience or expertise in that industry; (2) allowed Dr. Ogle to testify that West Side should have consistently monitored gases and temperatures where he admittedly had no expertise or experience in the grain salvage industry; (3) allowed ConAgra to introduce Exhibit 132, a list of West Side's experience, and asked Dr. Ogle to opine on that experience; (4) allowed Dr. Ogle to testify regarding seven other explosions that purportedly occurred where and while West Side was working when that testimony was false; (5) admitted into evidence Exhibit 147, a list of jobs involving bin explosions, because ConAgra was able to suggest to the jury through the questioning of Dr. Ogle and Gene Schwers that West Side had bins explode on prior jobs it was working on, which was false; and (7) allowed ConAgra's attorney to ask Dr. Ogle about inserting the air lance "near the core" where it assumed facts not in evidence.

---

[3]The Court will address West Side's motion as to Jentz (Doc. 516) and Schmidt (Doc. 517) together as to grounds 1-9 because the issues and analysis are the same.  The Court will continue with the common grounds from each motion, identifying the differing issue numbers as they arise and setting aside until last Doc. 516, grounds 10-12 and 17, which relate to Jentz's punitive damages award. *See below*, pp. 31-37.

In January, 2012, West Side moved to exclude certain of Dr. Ogle's opinions pursuant to **Rule 702 of the Federal Rules of Evidence** and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, **509 U.S. 579 (1993)** (Doc. 214).  West Side, which had also designated Dr. Ogle's opinions as to the cause and origin of the fire and explosion, asserted that Dr. Ogle went beyond his expertise in criticizing West Side for not following "accepted practices for fighting a grain bin fire" and in opining that "if such accepted practices had been followed for fighting the fire in Bin 15, the explosion would have been prevented."

After the motion was fully briefed and oral argument heard, the Court found that Dr. Ogle is an expert on firefighting and emergency response, with knowledge of national standards and recommended guidelines for fighting grain bin fires.[4]  He is a certified safety professional with 25 years of industrial experience, and a member of the National Fire Protection Association.   Dr. Ogle has a Ph.D. in chemical engineering and specializes in the scientific investigation of complex industrial accidents, catastrophic fires and explosions, as well as the prevention of fires, explosions and chemical releases.  Based on these findings, the Court concluded that Dr. Ogle was qualified to testify as to whether West Side followed accepted practices for handling a fire in a grain bin.

For its first and second grounds, West Side contends that Dr. Ogle was not qualified to express opinions regarding customs and practices in the grain salvage industry or on whether West Side should have monitored gases and temperatures

---

[4] Dr. Ogle's qualifications and opinions are set forth in his Report, Doc. 214, Exhs. 3, 4.

because he had no expertise or experience in that industry.  But Dr. Ogle's opinions were based not on custom and practice or knowledge of the industry, but on scientific principles, such as extinguishing a fire through fire dynamics.  Doc. 214, Exh. 4, p. 29. During the active firefighting phase, from April 20 to April 27, 2010, in Dr. Ogle's opinion, neither ConAgra nor West Side conducted the following activities well: removal of pellets from Bin C-15, conducting atmospheric testing for the presence of carbon monoxide or depleted oxygen, and application of water to suppress the fire, cool the aeration vent and reduce smoke production.  *Id.* at p. 31.

Dr. Ogle's opinion was guided by the national standards and recommended guidelines for fighting smoldering fires in concrete bins.  He noted that those practices were available to West Side in NFPA (National Fire Protection Association) 61, Standard for the Prevention of Fires and Dust Explosions in Agricultural and Food Processing Facilities. *Id.* at 34-35.

Dr. Ogle was qualified to offer his opinions, which were based on scientific principles, knowledge, training and experience.   His testimony was scientifically reliable.

For its third and fourth grounds, West Side asserts that it was prejudiced when ConAgra introduced Exhibit 132, a list of West Side's experience, and asked Dr. Ogle for his opinions regarding seven other explosions that purportedly occurred where and while West Side was working.  According to West Side, this injected false evidence into the record.  West Side maintains that Dr. Ogle's opinion was irrelevant, lacking in probative value, unduly prejudicial, inherently unreliable and misleading. One of the central issues in this case, according to West Side, was its claimed

18

expertise:  salvage company or firefighter.  West Side asserts that it was unfairly and inaccurately portrayed as having had experience in fighting grain bin fires and having, through its acts or omissions, been the "sole cause" of the explosion at issue.

The Court has reviewed the trial transcript of West Side's objection to the admission of this exhibit, Dr. Ogle's opinion and subsequent testimony.  Doc. 339, Ogle Trans., pp. 104-06.  ConAgra's counsel asked Dr. Ogle if he recalled reading the testimony of Gene Schwers, West Side's President, indicating that West Side had handled over 100 hot bins or bin fires over the years and had been at the site of seven grain bin explosions.  West Side's counsel objected on the grounds of relevance and lack of foundation.   The Court inquired of ConAgra's counsel whether, as to relevancy, he could tie this up with this witness, and counsel indicated that he could through Dr. Ogle's deposition and through Schwers' deposition or live testimony.  Questions posed by ConAgra's counsel were in the form of hypotheticals, such as, "[i]f I represent to you" and "if he also testified."   West Side's counsel made a record at sidebar that he thought the information was more prejudicial than probative and was extraneous to Dr. Ogle's testimony.

The Court found that the exhibit and testimony were relevant because, as the Court remarked at that time (and as West Side itself maintains), West Side's expertise was a central issue in the case.  As to whether the exhibit was admissible with Dr. Ogle and whether his testimony was proper, the Court appropriately found that this dispute went to the weight and not the admissibility of the evidence.

Even if the Court erred in admitting the exhibit and allowing Dr. Ogle's testimony, those errors would not be grounds for granting a new trial because West

19

Side's substantial rights were not affected.  *See* **Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.")**.  If the information elicited with this witness was false, West Side could cross-examine the witness as well as rebutting his testimony through the testimony of Gene Schwers, West Side's president.

For its fifth ground, West Side asserts that it was prejudiced by the Court's allowing ConAgra to offer into evidence Exhibit 147, a list of jobs involving bin explosions.  According to West Side, this enabled ConAgra to falsely suggest, through the questioning of Dr. Ogle and Schwers, that bins had exploded on prior jobs on which West Side was working.  West Side contends that admitting this Exhibit was unduly prejudicial in that it left the jury with the impression that seven other bins had exploded on West Side's watch, overstated West Side's experience and expertise with regard to fighting grain bin fires, and impugned West Side's reputation.

The Court has reviewed the relevant transcript and finds that West Side's only contemporaneous objection to the admission of Exhibit 147 was that the title of the Exhibit was argumentative.  Doc. 493, Schwers Trans., 40:20-21.  After West Side objected, ConAgra's counsel elicited testimony from Schwers that West Side is a salvage recovery expert and a bin fire expert.  *Id.* at 41:2-8.  The Court then admitted the Exhibit over West Side's objection.  *Id.* at 41:10-11.  ConAgra's only comment on the Exhibit after its admission was that "it gives us a flavor for all of the

20

states that West Side has worked in over the years, true?"  Schwers agreed this was true.  *Id.* at 41:12-14.

As stated above, West Side's expertise was a central issue in this case. As such, this Exhibit was relevant; moreover, ConAgra laid a proper foundation for its admission.  West Side's substantial rights were not affected by the admission of this Exhibit.  **Fed. R. Civ. P. 61**.

For its sixth ground, West Side asserts that the Court's refusal to instruct the jury to disregard ConAgra's question to Flitsch that he had "worked on bins and had fires that ultimately exploded" injected a false issue and misstated the facts to the prejudice of West Side.  West Side contends that the Court instructed the jury to disregard a comment by ConAgra's counsel that West Side had worked on bins and had fires the ultimately exploded because that comment assumed facts not in evidence. However, according to West Side, the Court refused to ask the jury to disregard an almost identical comment made by ConAgra's counsel seconds later in the questioning of Flitsch:  "And you have worked on bins that had fires that ultimately exploded, true?".  West Side asserts that this created an impression in the minds of the jurors that – unlike the first question – the second question assumed facts that were in evidence and that West Side had previously caused explosions while working on grain bins.

In order to provide context for this dispute, the Court reproduces the exchange in full.  Doc. 396, Flitsch Trans., 144:3-145:9.

*Q.* All your years of experience where you worked on bins that have been on fire, bins that have exploded, none of that was existing in Bin 15?

21

*MR. SCHULTZ:* Objection to the form of the question. It assumes facts not in evidence.

*THE COURT:* Overruled.

*MR. SCHULTZ:* I would ask the jury to disregard.

*THE COURT:* Well, sustained as to what's exploded. There is no indication of any similar circumstance here. The jury should disregard it.

*Q. (BY MR. PATTON:)* Let me back up.  You have worked on bins before you came to Chester that had fires in them, true?

*A.* True.

*Q.* And you have worked on bins that had fires that ultimately exploded, true?

*MR. SCHULTZ:* Objection. Same objection, Judge.

*THE COURT:* We are going to have to do this out of the presence of the jury. I don't know that this is going to be admissible.

*MR. PATTON:* You know what? I'll withdraw that question.

*MR. SCHULTZ:* Judge –

*MR. PATTON:* Just moving on here.

*MR. SCHULTZ:* Excuse me.  Can the jury be requested to disregard that information, that's not evidence in this case?

*THE COURT:* Well, it was a question and they know that the questions aren't evidence. There was no answer.

*Q. (BY MR. PATTON:)* Okay. But you did know that bins could explode, right?

*A.* Correct.

The suggestion that the above constitutes error such that a new trial is necessary is meritless.  The Court first granted West Side's request that the jury be instructed to disregard the imputation that Flitsch had worked on bins that had

22

exploded.   When ConAgra made a similar statement a second time, on West Side's objection, ConAgra withdrew the statement.   At West Side's protest, the Court followed up with the statement that the jury had been instructed that questions by counsel are not evidence.[5]   The jury having been properly instructed, the net result was that the jury disregarded ConAgra's counsel's question.   ***Manuel v. City of Chicago***, **335 F.3d 592, 597 (7th Cir. 2003) (citing *United States v. Bell*, 980 F.2d 1095, 1098 (7th Cir. 1992) ("We assume that jurors follow the instructions they are given.")).**   The Court finds no error and, even if the Court's ruling were improper, any error is harmless because it had no significant impact on the outcome of the case.   ***See***, ***e.g.***, ***United States v. Vargas***, **689 F.3d 867, 875 (7th Cir. 2012) (citation omitted) (test for harmless error is whether, in the mind of the average juror, the case "would have been significantly less persuasive had the improper evidence been excluded").**

For its seventh ground, West Side asserts that the Court erred when it allowed ConAgra's attorney to ask Dr. Ogle about inserting the air lance "near the core" where that question assumed facts not in evidence.   West Side asserts that allowing the following question left the jury with the impression that West Side stoked the fire within the bin by blowing air on it.

> Q: And of course, inserting an air lance into an area near the core, that would provide sufficient oxygen to be able to elevate the temperature of that core?

---

[5] Prior to trial, the Court had instructed the jury that questions by lawyers are not evidence.

*MR. SCHULTZ:* Objection. Assumes facts not in evidence. The words "near the core," not in evidence.

*THE COURT:* Overruled.

A: Well, I don't know where the lance was actually operated. The diameter of the bin is 20 feet, so - and the lance itself is less than 10 feet in length, but it's a very large bin, and I'm not sure exactly what area it was being poked into. As I said earlier, I don't know that I would agree with the use of the term "core." It seems to imply there's one glowing ember in the bin, and I don't know that to be the case. There could be multiple nests. We don't know.  Doc. 351, Ogle Trans., 218:7-219:6.

The question itself was generic and commonsensical, and could have been answered in the positive without prejudice to West Side.  It essentially asks what a reasonable juror already knows – whether adding oxygen to a smoldering ember would elevate the ember's temperature.  So, the Court did not err in overruling West Side's objection.

Assuming, *arguendo*, that the question assumed a fact not in evidence – that the air lance was operated near the core - it is difficult to descry how the question was not robbed of any significance by Dr. Ogle's answer.  In a nutshell, he testified that the air lance cannot reach even halfway across a very large bin; he does not know where it was inserted; and he does not agree that there was a core. Subsequent testimony elaborated on the doubtfulness of a core:  Dr. Ogle testified that he "would love to see the data" relied upon by anyone who concluded that the air lance would have contacted a nest.  *Id.* at 219:14-17.  He certainly did not testify that West Side was stoking the fire by blowing air onto the core.

As stated above, the jury was instructed that questions by counsel are not evidence, and it is assumed that jurors follow the instructions they are given.

24

Consequently, even if ConAgra's counsel's question assumed that the air lance was used near the core, the evidence – Dr. Ogle's testimony - was to the contrary.  The evidence was not damaging to West Side and, indeed, was somewhat favorable.  The Court finds no error, and, even if the Court's ruling were improper, any error is harmless because it had no significant impact on the outcome of the case.

For its eighth ground, West Side asserts that the Court erred in admitting into evidence Exhibit 191, over West Side's objection, because the Exhibit improperly injected the issue of liability insurance into the record.  According to West Side the evidence implied that, unlike a different or cheaper contractor, West Side had adequate liability insurance.

This issue was the subject of a fully-briefed motion *in limine* filed by West Side (Docs. 307, 311).  After careful consideration, the Court ruled (Doc. 314) that the Exhibit was admissible under Federal Rule of Evidence 414, which provides, "Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control."  The evidence was offered not to imply the existence of liability insurance for West Side but to show that ConAgra delayed in addressing the hot bin because it was negotiating with a cheaper salvage company, which ultimately could not be hired since it could not meet ConAgra's insurance requirements.  The Court indicated that it welcomed a proposed limiting instruction to be offered both when the evidence was offered and during the charge

25

to the jury.  After input from the parties at sidebar, the Court determined that it would give the following limiting instruction:

> The preceding evidence that Southern Illinois Salvage did not have liability insurance sufficient to meet ConAgra's requirements is to be considered by you only as it relates to the claimed reason why ConAgra did not hire Southern Illinois Salvage, and for no other reason.  Doc. 331, Bindel Trans., 195:19-24.

The Exhibit was properly admitted for the limited purpose described.  As the Seventh Circuit has reasoned, "Absent any showing that the jury could not follow the court's limiting instruction, we presume that the jury limited its consideration of the testimony in accordance with the court's instruction." ***United States v. Lee*, 558 F.3d 638, 649 (7th Cir. 2009) (citation omitted).**  West Side has made no showing that the jury was unable to follow the Court's instruction.  The Court presumes that the jury only considered the evidence of liability insurance as it related to the claimed reason ConAgra did not hire Southern Illinois Salvage.

For its ninth ground, West Side asserts that it was prejudiced because the Court refused its proposed limiting instruction regarding the foregoing issue of liability insurance.  West Side offered the following instruction:

> The preceding evidence that Southern Illinois Salvage did not have liability insurance sufficient to meet ConAgra's requirements is to be considered by you only as it relates to the reason why ConAgra did not hire Southern Illinois Salvage. It is offered to show that there was a time delay in ConAgra's addressing the "hot bin" and hiring West Side Salvage that was occasioned by ConAgra's negotiating with a cheaper alternative salvage company, Southern Illinois Salvage. Southern Illinois Salvage was ultimately unable to meet ConAgra's insurance requirements, and ConAgra hired West Side Salvage.  Plaintiffs seek in this way to show that ConAgra showed a reckless disregard for the rights of others and placed money above safety.

West Side contends that the Court's refusal of this limiting instruction unfairly prejudiced West Side because the jury was left without a full explanation of the limited purpose of allowing the reference to insurance into evidence.

The Court is in the best position to assess the balance between probative value and prejudice, *United States v. Hale*, **448 F.3d 971, 985 (7th Cir. 2006) (citation omitted),** and "to make decisions regarding jury guidance and evidentiary matters." *Estate of Moreland v. Dieter*, **395 F.3d 747, 753-54 (7th Cir. 2005).** The Seventh Circuit has explained that "[a] district court enjoys wide latitude in crafting jury instructions, and as long as those instructions do not 'misstate the law or fail to convey the relevant legal principles in full,' they will stand." *Hicks v. Forest Preserve Dist. of Cook County, Ill.*, **677 F.3d 781, 792 (7th Cir. 2012) (quoting** *Byrd v. Ill. Dep't of Pub. Health*, **423 F.3d 696, 705 (7th Cir. 2005)).**

The Court agreed with ConAgra that West Side's proposed instruction was argumentative and prejudicial.  More particularly, it was prejudicial for the instruction to crystalize in the minds of the jurors that Plaintiffs sought in this way to show ConAgra's "reckless disregard for the rights of others and plac[ing] money above safety."  The instruction crafted by the Court carefully and accurately delimits the jury's consideration of liability insurance by sufficiently informing and not confusing the jury, and without interjecting prejudice.  *See id*.

For its next ground (Doc 516, ground 13; Doc. 517, ground 10), West Side asserts that it was prejudiced because the Court included a separate line on the verdict form for past and future emotional distress, over West Side's objection.  West

27

Side asserts that this constitutes prejudicial error because emotional distress is not a separate element of damages but is, rather, a component of pain and suffering.

West Side again offers no authority for its contention – which, in fact, runs contrary to Illinois law.   In *Babikian v. Mruz*, **956 N.E.2d 959 (Ill.App.Ct. 2011),** the Illinois Appeals Court rejected the defendant's contention that an instruction was improper that informed the jurors that they could award damages for pain and suffering and also for emotional distress, if they determined that such damages were proved to have resulted from the defendant's negligence. *Babikian,* **956 N.E.2d at 964.** The appellate court stated, "In fact, the rule in Illinois is just the opposite." *Id*. Consequently, there was no error in providing separate lines on the verdict form for past and future emotional distress as a separate item of damages and not simply a component of pain and suffering.

For its next ground (Doc 516, ground 14; Doc. 517, ground 11), West Side asserts that it was prejudiced because the Court refused ConAgra's Instruction No. 33, in which West Side joined.  Instruction No. 33 would have allowed the jury to find that Plaintiffs engaged in willful and wanton conduct because they were aware of burning embers  and knew that fire and embers can lead to an explosion.

The Court refused the instruction, stating that "the level of conduct of the plaintiffs in this case warrants a contributory fault instruction but I don't think that a reasonable jury could find that they were guilty of willful and wanton contributory negligence based upon testimony that I heard in the case."  Doc. 411, 52:9-14.  The evidence adduced at trial showed that the explosion was caused by carbon monoxide gas igniting, not the dust, and no evidence was presented that

Plaintiffs were aware that carbon monoxide could ignite.  There was no basis for a jury to find that Plaintiffs engaged in willful and wanton conduct.

As stated above, the Court is in the best position "to make decisions regarding jury guidance and evidentiary matters," *Estate of Moreland*, **395 F.3d at 753-54,** and to craft jury instructions, *Hicks*, **677 F.3d at 792**.   The presiding judge who "observes the witnesses, hears the substance and tone of counsels' arguments and both watches and assesses the jury's reactions" is in the best position to make determinations regarding jury instructions with respect to the evidence.   *United States v. McKnight*, **665 F.3d 786, 792 (7th Cir. 2011) (citation omitted).**

Giving a willful and wanton instruction as to Plaintiffs' conduct was not supported by the evidence, which rose to a level of contributory negligence at most.  West Side is not entitled to a new trial based on the Court's refusal to give ConAgra Instruction No. 33.

For its next ground (Doc. 516, ground 15; Doc. 517, ground 12), West Side asserts that the Court erred in submitting ConAgra's Instruction No. 102 (also identified by West Side as Instruction No. 104) to the jury, over West Side's objection.  West Side contends that ConAgra's instruction contained argumentative language and purported to place duties on West Side beyond those contained in the contract.

Some confusion is apparent here, not only as to the Instruction number at issue and by whom it was offered, but also as to which Plaintiff it is to whom West Side refers.  In both of West Side's motions, as to Jentz (Doc. 516) and as to Schmidt (Doc. 517), West Side refers to a jury instruction offered by ConAgra and given in the *Becker* case (ConAgra Instr. No. 102, e, f, g, l).  *See* Doc. 516, p. 20; Doc. 517, pp. 15-

16.  Furthermore, West Side argues that "this characterization unfairly suggests that West Side Salvage could and should have warned *Plaintiff Justin Becker* of the conditions existing within the bin."  Doc. 516, p. 20; Doc. 517, p. 21 (emphasis added).

Applying the principle of taking substance over form, and attempting to determine West Side's intent in making this argument, the Court delved into the record and found that the jury instructions at issue were submitted by Plaintiffs and objected to by both West Side and ConAgra (Doc. 462, Jentz Instr. No. 2, a, b, c, e; Doc. 474, Schmidt Instr. No. 2 a, b, c, e).  The instructions mirror those in the Becker case to the extent that West Side challenges them here.

The record reflects that the Court considered the parties' arguments as to the words "monitor" and "dangerous" in the instructions, determined that their inclusion was supported by the evidence, and overruled West Side's objections.  Doc. 411, pp. 76-77.  As previously stated, the Court is in the best position – and has wide latitude - in making decisions on jury guidance and evidentiary matters.  The Court did not err in submitting instructions to the jury that included the words "monitor" and "dangerous."

For its next ground (Doc. 516, ground 16; Doc. 517, ground 13), West Side asserts that the Court erred in sending the reports of the economists back to the jury, at the jury's request, during the deliberations.  West Side submits that this constituted error because evidence had closed and there was no reason why Plaintiffs should have been afforded another opportunity to present their damage calculations to the jury, especially when jurors took notes during trial.

30

West Side offers no authority for its contentions.  In making its decision, the Court relied on *Deicher v. City of Evansville, Wis.*, **545 F.3d 537, 542 (7th Cir. 2008)**, which provides that it is generally within the trial court's discretion to determine which exhibits are provided to the jury during its deliberations (*See* Doc. 488, 5:11-10:4).  That discretion is exercised by excluding exhibits that neither party has relied on, that have no relevance to any central issue or "that are cumulative, prejudicial, confusing, or misleading."  *Id*. **(citing Fed. R. Evid. 403).**  The exhibits had been properly admitted into evidence, were relevant and were not prejudicial. The Court noted that it had not sent the reports back to begin with because of the sheer volume of exhibits – some 865 – and because the reports typically include the experts' curriculum vitae, which would be duplicative.  The parties were heard on the record before the Court made its decision.  The Court thoughtfully considered various options before deciding to send the reports back, including deciding not to send just the numbers because the numbers were not in evidence and because doing so would unduly highlight them.  The Court did not err because it reasonably exercised its discretion in sending the economists' reports to the jury during deliberations.

For its last two grounds, West Side contends that repeatedly allowing testimony regarding prior explosions, where there was no evidence of these, cumulatively prejudiced West Side and that repeatedly allowing inadmissible evidence and refusing other evidence over West Side's objections prejudiced West Side (Doc. 516, grounds 18, 19; Doc. 517, grounds 14-15 ).

Based on all the foregoing, West Side has failed to show that it was prejudiced by cumulative error.  Since West Side offers no other specifics, including

31

any authority for these contentions, the Court concludes that there was no cumulative error, and if there was error, it was harmless.

**2.**    **Jentz - punitive damages award (Doc. 516, Grounds 10-12, 17)**

For its 10th ground, West Side asserts that the Court erred in allowing Plaintiffs' medical expert, Dr. Yarkony, to ask Jentz to take his shirt off in the presence of the jury.  West Side contends that exposing the jury to gruesome burn scars was unduly prejudicial and cumulative, given the admission of prior photographs.  According to West Side, the in-court demonstration failed the Rule 403 balancing test in that its probative value was slight, given ample evidence already seen and heard by the jury, and its prejudicial effect considerable because of the gruesome nature of the injuries.

The Court carefully reviewed case law before concluding that the in-court demonstration should be allowed.  Citing *Wigmore*, the Court noted "that 'autoptic profference' is always proper unless reasons of policy apply to exclude it." Doc. 352, 145:20-22.  The Court explained that this meant "seeing in the flesh as opposed to a photograph, when choosing between the two, the former's preferred." *Id*. at 145:22-24.  The Court also cited *Spaak v. Chicago & N.W. Ry. Co.*, **231 F.2d 279, 281 (7th Cir. 1956) (no abuse of discretion in allowing jury to exhibit injured foot to jury)** and *Darling v. Charleston Cmty. Mem'l Hosp.*, **200 N.E.2d 149, 185 (Ill.App.Ct. 1964) (the possibility that the demonstration may be unpleasant or gruesome is not determinative but should be considered and weighed against the possible usefulness to the jury).** *Id*. at 147:3-24.

32

The Court decided to allow Jentz's counsel to choose between a photograph taken that day to be sent back to the jury or a personal view only, because allowing both would be cumulative and prejudicial.  However, photographs taken at a previous date could be sent back so that the jury could assess any change over time.  *Id.* at 148:12-19.

Jentz's physical condition was a relevant issue for the jury to consider. Disfigurement is an element of his damages that was pleaded.  The Court did not highlight the injuries by allowing both a personal view of Dr. Yarkony's examination and photographs to be taken of it.  In short, the Court did not err in allowing Dr. Yarkony to request that Jentz take his shirt off in the jury's presence.

For its 11th ground, West Side asserts that the Court erred in submitting to the jury Jentz's claim for punitive damages against West Side, through Jentz's Instruction Nos. 2, 3, 6 and 8, when there was no evidence of willful and wanton conduct by West Side.  West Side maintains that there was no evidence offered at trial to show that it (1) acted with a conscious disregard for, or an utter indifference to, Jentz's safety; (2) failed to warn Jentz or his employer of the known dangerous condition within Bin C-15; or (3) instructed Jentz to go into the tunnel after the decision to call the fire department was made.

Whether punitive damages can be awarded for a particular cause of action is a question of law, but whether a defendant's conduct was sufficiently willful or wanton to justify the imposition of punitive damages is a fact question for the jury to decide. ***Medow v. Flavin*, 782 N.E.2d 733, 746 (Ill. App. 2002) (citing *Schmidt v. Ameritech Illinois*, 768 N.E.2d 303 (2002); *Cirrincione v. Johnson*, 703 N.E.2d**

33

**67 (Ill. 1998))**.  Under Illinois law, punitive damages may be awarded only "where the defendant's conduct is willful or outrageous due to evil motive or a reckless indifference to the rights of others" or "where the wrongful act complained of is characterized by wantonness, malice, oppression, willfulness, or other circumstances of aggravation."  *Gambino v. Boulevard Mortgage Corp.*, **922 N.E.2d 380, 423 (Ill.App.Ct. 2009)**.  As more fully explained above (p. 14), punitive damages could properly be awarded against West Side because of an act of Flitsch, who was West Side's agent employed in a managerial capacity and acting within the scope of his employment.

Evidence offered at trial showed that West Side was aware in March, 2010, that the bin was in a dangerous condition (Sumner's "ticking time bomb" comment), that West Side was aware of the escalating dangerous condition (*e.g.*, smoke, embers, burned pellets) and that it failed to provide that information to A&J. The Court is confounded by West Side's assertion that it did not instruct Jentz to go into the tunnel after the decision to call the fire department was made where, according to the evidence at trial, including Flitsch's admission, that is exactly what occurred.  Consequently, legally sufficient evidence was offered to show that West Side evinced a reckless indifference to Jentz's rights.  The Court properly submitted Jentz's claim for punitive damages against West Side through Instruction Nos. 2, 3, 6 and 8, because there was evidence of willful and wanton conduct by West Side.

For its 12th ground, West Side asserts that the Court erred in refusing West Side's proffered Instruction No. 7, which required the jury to find clear and

34

convincing evidence before it returned a verdict of punitive damages against West Side.

West Side cites no authority for its contention that clear and convincing evidence is the standard in Illinois for a punitive damages verdict.  This is unsurprising because, as the Court has previously found, the Illinois Supreme Court, in *Best v. Taylor Machine Works*, **689 N.E.2d 1057 (1997)**, declared unconstitutional 735 ILCS 5/2-1115.05(b) (West 1996), which required plaintiffs to demonstrate by clear and convincing evidence that punitive damages were appropriate.  Furthermore, the Seventh Circuit Court of Appeals recently took note of "the Supreme Court's insistence on a presumption in favor of the less onerous standard of preponderance of the evidence in federal civil cases." *S.E.C. v. First Choice Mgmt. Servs., Inc.*, **678 F.3d 538, 544 (7th Cir. 2012) (citing *Grogan v. Garner*, 498 U.S. 279, 286 (1991); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 387-391 (1983)).** The United States Supreme Court explained that exceptions to this general rule are uncommon and are ordinarily recognized only when taking unusual coercive action - action more dramatic than imposing an award of money damages or other conventional relief. *Price Waterhouse v. Hopkins*, **490 U.S. 228, 253 (1989).** The imposition of punitive damages is a conventional form of monetary relief.  Consequently, this Court properly applied the preponderance standard to the punitive damages claims presented to the jury.

For its 17th ground, West Side asserts that the Court erred in refusing to answer the jury's question "on punitive damages, can we check yes and the word zero?" and instead referring the jury to the instructions.  West Side contends that the

35

response "yes" would have certainly resulted in no punitive damages being awarded against West Side.  West Side maintains that by refusing to say "yes," the Court in effect said "no."

       After extensive discussion with the parties and thoughtful consideration, the Court concluded that the best course was to refer the jury back to the instructions and verdict form.  The Court responded to the jury's question as follows:

> At about 1:21 this afternoon, I received the following note from you, the jurors:  On punitive damages, can we check yes and the word zero dollars? I have met with the attorneys just now on the record and they gave me their position with respect to this question and I have this response for you. You should reread all of the jury instructions in Becker, Schmidt and Jentz regarding punitive damages. In addition, you should look at the verdict form in Becker, Jentz and Schmidt regarding punitive damages. That is my response.  (Doc. 488 at 20:20-21:4).

       The verdict form to which the jury referred in its question stated as follows: "We, the jury, award punitive damages in favor of John Jentz and against the following defendant or defendants." Underneath that statement, both defendants were listed with a "Yes___" and "No___." The instruction then told the jury, parenthetically, "If you answer 'no' as to either defendant, place a 0 on the line for that defendant on the appropriate line below."  The form then has two sentences, one for each Defendant, that states "We award punitive damages in favor of John Jentz and against Defendant … in the amount of _____."

       The instruction, which had been read to the jury and provided in written form, makes it absolutely clear that the jury may answer "yes" or "no" and if the answer is "no," the award is zero.  If the answer is "yes," the jury then decides on the amount.  It would be inconsistent, as well as defying common sense, for the jury

to decide to "award punitive damages" per the first sentence of the instruction, but put zero for the amount awarded.  Nonetheless, the answer given by the Court was neutral and did not attempt to direct the jury to any verdict.  West Side's contention that the answer "yes" would have "certainly" resulted in no punitive damages being awarded against it is speculative.

Since the original instruction clearly and correctly stated the manner in which the jury was to arrive at its decision, it was proper for the Court to answer the question by telling them to reread the instruction.  ***Sowewimo v. Hennrich*, 81 Fed.Appx. 893, 896 (7th Cir. 2003) (citation omitted)**.  The Court did not err in refusing to answer "yes" but instead referring the jury to the instructions and verdict form.

IV.   Conclusion

For the foregoing reasons, the Court **DENIES** West Side's renewed motion for judgment as a matter of law on Count III (Negligence) and Count IV (Willful and Wanton) of Jentz's Fifth Amended Complaint or, in the alternative, for a new trial (Doc. 516) and **DENIES** West Side's motion for judgment as a matter of law on Count III (Negligence) of Schmidt's Second Amended Complaint or, in the alternative for a new trial (Doc. 517).

IT IS SO ORDERED.

DATED this 8th day of February, 2013

s/Michael J. Reagan
MICHAEL J. REAGAN
United States District Judge
37