IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN W. JENTZ, JUSTIN BECKER, AMBER BECKER and ROBERT SCHMIDT, | ) ) ) |
| Plaintiffs, | ) ) ) Case No. 10-cv-0474-MJR-PMF |
| v. | ) ) |
| CONAGRA FOODS, INC., et al., | ) ) |
| Defendants. | ) ) |

MEMORANDUM AND ORDER
DENYING WEST SIDE'S POST-TRIAL MOTION (Doc. 518)

REAGAN, District Judge:

I.  Introduction

On June 1, 2012, the jury entered its verdict in favor of ConAgra Foods, Inc., and against West Side Salvage, Inc., on ConAgra's breach of contract claim (Doc. 478). The jury found that the April 19, 2010, Work Order Contract signed by West Side's Director of Salvage Operations, Ken R. Lanham, was in effect on April 27, 2010, the date of the grain bin explosion that resulted in damage to ConAgra's Elevator C. The jury awarded ConAgra $3,000,000.00 for the value of the cost of repairs proved by ConAgra as reasonably necessary to repair the Elevator.

West Side renews its motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) on Count IV (Breach of Contract) in *Jentz*, Third-Party Complaint in *Becker* and Cross Claim in *Schmidt* (Doc. 518). In the alternative, West Side moves for a new trial pursuant to Fed. R. Civ. P. 50(a)(1)(A) (Doc. 518).

II.  Judgment as a matter of law

1

Rule 50 of the Federal Rules of Civil Procedure allows a district court to enter judgment against a party that has been fully heard on an issue during a jury trial if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." **Fed.R.Civ.P. 50(a) (motion for judgment as a matter of law), (b) (renewed motion for judgment as a matter of law)**. Under Rule 50(b) a court may "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law."

In deciding a Rule 50 motion, the Court "construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence." *Passananti v. Cook County*, 689 F.3d 655, 659 (7th Cir. 2012) (citing *Tart v. Illinois Power Co.*, 366 F.3d 461, 464 (7th Cir. 2004) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000)). "The court does not make credibility determinations or weigh the evidence." *Id.* **(citing *Waite v. Bd. of Trs. of Illinois Cmty. Coll. Dist. No. 508*, 408 F.3d 339, 343 (7th Cir. 2005) (citing *Reeves*, 530 U.S. at 150)**. The court reviews the entire record but "'must disregard all evidence favorable to the moving party that the jury [was] not required to believe.'" *Id.* **(quoting *Reeves*, 530 U.S. at 151)**.

Rule 50(a)(2) provides that a motion for judgment as a matter of law "must specify the judgment sought and the law and facts that entitle the movant to the judgment." ConAgra submits that West Side does not cite to the trial record or the law of the case to support any of its arguments. The Court notes that only two of

West Side's 10 grounds for judgment as a matter of law are developed beyond a single sentence – which falls far short of Rule 50's requirements.

"Failure to state the grounds or the motion with specificity may provide grounds for denying the motion."  *Nobelpharma Ab v. Implant Innovations, Inc.*, **930 F.Supp. 1241, 1249 (N.D.Ill. 1996)**.  This requirement serves the dual purposes of assuring that the trial court has an adequate basis for its decision and affording the adverse party the opportunity to correct any possible infirmities in the proof presented.  *Id*. **(quoting** *Moore's Federal Practice* **¶ 50.04 (additional citation omitted))**.

Clearly, providing no more than a single sentence as grounds for relief apprises neither the Court nor opposing counsel of the reasons that West Side believes judgment as a matter of law is appropriate.  However, a failure to expressly state a sufficient argument in a Rule 50(b) motion does not result in waiver if previously presented arguments have made the movant's position clear for the Court and opposing counsel.  *Laborers' Pension Fund v. A & C Environmental, Inc.*, **301 F.3d 768, 777-78 (7th Cir. 2002) (additional citations omitted))**.  West Side's motion does not explain where and how it has previously argued these issues in greater depth, nor did West Side file a reply, which could have been allowable under Local Rules, since this would arguably constitute an exceptional circumstance.[1]

Consistent with these principles, the Court reviewed West Side's Rule 50(a) motion and finds that it, too, suffers from the same lack of specificity – only 5 of 15 arguments are developed beyond a single sentence and some of the grounds

---

[1] "Reply briefs are not favored and should be filed only in exceptional circumstances. The party filing the reply brief shall state the exceptional circumstances."  **SDIL-LR 7.1(c)(2).**

3

advanced relate not to breach of contract but to common law indemnity, negligence and contribution, which are not challenged in the Rule 50(b) motion (Doc. 397).  West Side has, however, strenuously argued previously that no contract was formed on April 19, 2010, in both a motion for summary judgment (Doc. 195) and a motion in limine (Doc. 282).  Consequently, to the extent that West Side's previously presented arguments have made its position clear, there is no waiver.

West Side's arguments may be divided, generally, into two categories: (1) evidence presented at trial failed to establish that a valid contract existed between ConAgra and West Side (grounds 5, 6, 8 and 9); and (2) evidence presented at trial failed to establish that ConAgra was damaged, proximately or otherwise, by West Side's breach of contract (grounds 1, 2, 3, 4 and 10).  Ground seven (that no evidence was offered or received which raised a jury issue on allegations in ConAgra's Second Amended Cross-Claim in *Jentz*, Third-Party Complaint in *Becker* and Cross-Claim in *Schmidt*) is too broad and vague to categorize – or to reasonably and adequately state a ground that the Court can address.

A. <u>Whether sufficient evidence was presented at trial to establish that a valid contract existed between ConAgra and West Side (grounds 5, 6, 8 and 9)</u>

"[T]o have a valid contract, 'an agreement between competent parties, upon a consideration sufficient in law, to do or not to do a particular thing,' in Illinois, the only things necessary are an offer, an acceptance, and consideration." *Clarendon Nat'l Ins. Co. v. Medina,* 645 F.3d 928, 936 (7th Cir. 2011) (quoting *Steinberg v. Chi. Med. Sch.*, 371 N.E.2d 634, 639 (Ill. 1977) (quoting *People v. Dummer*, 113 N.E. 934, 935 (Ill. 1916)).  "In the absence of fraud, mistake,

4

unconscionability, or like defenses, a person is bound by all provisions in a contract, including standard provisions colloquially described as boilerplate." *Dugan v. R.J. Corman R.R. Co.*, 344 F.3d 662, 667 (7th Cir. 2003).

"Generally, one of the acts forming the execution of a written contract is its signing." *Carlton at the Lake, Inc. v. Barber,* 928 N.E.2d 1266, 1270 (Ill.App.Ct. 2010) (citing *Hedlund & Hanley, LLC v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 876 N.E.2d 1 (Ill. 2007)). "Nevertheless, 'a party named in a contract may, by his acts and conduct, indicate his assent to its terms and become bound by its provisions even though he has not signed it.'" *Id.* (quoting *Landmark Properties, Inc. v. Architects International–Chicago*, 526 N.E.2d 603 (1988)).

The jury heard extensive testimony on offer, acceptance, consideration and performance. Ronald Sumner, West Side's Vice-President, testified that he negotiated with ConAgra's Godfrey Friedt the date on which West Side could begin the job, how many people he would send and what the costs would be, "getting him a new quote." Doc. 332, Sumner Trans. 207:22-208:9. Ken Lanham, West Side's Director of Salvage Operations, who signed the April 19, 2010, Work Order Contract, agreed that part of his job responsibilities for West Side during the relevant period included administering contracts. Doc. 410, Lanham Trans., 29:12-15. Lanham denied, however, having any role in contract negotiations with ConAgra for work at the Chester facility. *Id.* at 29:16-19. He testified that he did "a standard quote," which included "the time and materials quote offer," and sent it to ConAgra. *Id.* at 29:23-30:5. Lanham testified that the quote involved rate sheets describing the number of men and the equipment that would be needed. *Id.*

5

Lanham also testified that ConAgra accepted the offer when it sent the Work Order Contract back to him, setting forth the terms of the agreement and specifying, *inter alia,* the terms of payment, commencement and completion date, contractor work rules and responsibilities, and the scope of the work. *Id*. at 33:9-44:18. The jury also heard testimony from West Side's President, Gene Schwers, that West Side was paid for its work at ConAgra's facility. Doc. 493, Schwers Trans., 67:10-12.

In summary, legally sufficient evidence of offer, acceptance and consideration supports the jury's verdict that a contract was formed on April 19, 2010.

Nonetheless, West Side contends that no contract was formed because the document was signed only by Lanham and not by all parties, as required by Illinois law. The cases cited by West Side are, however, either distinguishable or do not stand for the proposition for which they are cited. In **Crum v. Krol, 425 N.E.2d 1081 (Ill.App.Ct. 1981),** the court determined that a valid contract for the sale of realty had been formed between the plaintiff and the defendant even though the documents were not signed by all of the titleholders. **425 N.E.2d at 1084**. The court noted that if the agreement had been subject to final approval by a third party and was otherwise contingent upon the execution of a formal contract, the writing might be deemed insufficient or incomplete as a final contract. *Id*. Similarly, in **Bloomington Partners, LLC v. City of Bloomington, 2006 WL 2578916 (C.D.Ill. 2006)**, the court stated, "Under Illinois law, if 'the parties intended the execution of a formal agreement as a condition precedent, then 'no formal contract arises until the formal

agreement is, in fact, executed.'" **2006 WL 2578916, at * 11 (quoting *IK Corp. v. One Fin. Place P'ship*, 558 N.E.2d 161, 166 (Ill.App.Ct.1990),** *overruled on other grounds* **by *Royal Imperial Group, Inc. v. Joseph Blumberg & Assocs., Inc.*, 608 N.E.2d 178 (Ill.App.Ct. 1992) (quoting *Interway, Inc. v. Alagna*, 407 N.E.2d 615, 619 (Ill.App.Ct. 1980) (additional citation omitted)).**

In the matter *sub judice*, West Side points to no contingency or condition precedent that would make the contract unenforceable, nor does the Court find in the contract itself or elsewhere in the record any words expressing contingency or dependence on a subsequent event without which no contract would be formed.

Even if Lanham's signature alone were insufficient to form a valid contract, West Side conducted itself as if the contract were enforceable.  ***See Carlton at the Lake*, 928 N.E.2d at 1270 (quoting *Landmark Properties, Inc.*, 526 N.E.2d 603).**  West Side sent its employees to the site, performed the work according to the terms of the contract and accepted payment therefor.  In so doing, West Side conducted itself as if the contract were enforceable, indicating its assent to the contract's terms and becoming bound by its provisions.

Ample evidence supports the jury's conclusion that a contract was formed on April 19, 2010, and that West Side intended its execution as shown by Lanham's signing the contract and by West Side's conduct in performing according to the contract's terms.

  B. <u>Whether sufficient evidence was presented at trial to establish that ConAgra was proximately damaged by West Side's breach of contract (grounds 1, 2, 3, 4 and 10)</u>

For its first, second, third, fourth and tenth grounds, West Side asserts that (1) the evidence adduced at trial failed to establish that ConAgra suffered any damages; (2) the evidence adduced at trial failed to establish that ConAgra suffered any damages as the direct and proximate result of any act or omission by West Side; (3) any claim by ConAgra against West Side is based upon speculation, conjecture and surmise; (4) the evidence failed to establish that ConAgra's claimed damages were the result of any claimed act or omission of West Side; and (10) the evidence failed to establish a submissible case against West Side.

The jury found that ConAgra proved that West Side had breached the contract by failing to:

> employ on the work only workers skilled in the task assigned to him;
>
> be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the work, comply with all applicable laws, ordinances, rules, regulations and orders of any public authority having jurisdiction for the safety of persons or properly or to protect them from damage, injury or loss; and
>
> remedy without cost, charge or expense to ConAgra all damage or loss to any property caused in whole or in part by the West Side Salvage, any subcontractor or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable. Doc. 478, p.2.

West Side offers no evidence that disputes the jury's findings. It merely recites the negative – that the evidence failed to establish these things. Although the Court recognizes that it is difficult to prove a negative proposition, West Side could have at least offered some reason why the jury's findings were unreasonable.

The Court, through its review of the record, finds ample evidence supporting the jury's verdict. For example, Dr. Robert Schroeder, ConAgra's expert, opined that a West Side employee's use of an air lance at the bottom of Manhole 15

"certainly did impact the development, growth, and rapid rise of this glowing nest to create conditions that lead to the explosion."  Doc. 368, Schroeder Trans., 113:25-114:13.  Dr. Schroeder testified that rather than "buttoning up" the bin and waiting for things to die down, West Side had the bottom, top and side hatches open, which provided more air and caused the fire to start "burning more rapidly than it had ever burned before."  *Id*. at 115:8-21.  Dr. Schroeder further testified, damningly, "It was West Side Salvage's actions and inactions on the afternoon of the 27th that led to the explosion and injury of the workers."  *Id*. at 120:20-22.  Dr. Schroeder also described how the explosion initiated in Bin C-15 migrated to other parts of the Annex C facility, traveling "down legs, blowing out the base of the leg."  *Id*. at 122:20-25.

Based on evidence offered at trial, the jury had a legally sufficient evidentiary basis to determine that ConAgra was damaged by West Side's breach of the contract and that these damages were the direct and proximate result of acts or omissions by West Side.

    C.    <u>Whether sufficient evidence was offered or received which raised a jury issue in ConAgra's Second Amended Cross-Claim in *Jentz*, Third-Party Complaint in *Becker* and Cross-Claim in *Schmidt* (ground 7)</u>

For ground seven, West Side asserts, again in a single sentence, that no evidence was offered or received which raised a jury issue on the allegations in ConAgra's Second Amended Cross-Claim in *Jentz*, Third-Party Complaint in *Becker* and Cross-Claim in *Schmidt*.

As stated above, Rule 50(a)(2) provides that a motion for judgment as a matter of law "must specify the judgment sought and the law and facts that entitle the movant to the judgment."  Bare-bones suggestions and skeletal arguments do not

preserve claims. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 551 (7th Cir. 2004) (citing *DDI Seamless Cylinder Int'l, Inc. v. Gen. Fire Extinguisher Corp.*, 14 F.3d 1163, 1168 (7th Cir. 1994) ("An issue must be pressed, must be argued and supported; a bare conclusion is not enough."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.... Judges are not like pigs, hunting for truffles buried in briefs.")).

West Side's assertion is so bare-bones that the Court cannot divine what, to put it colloquially, West Side is driving at. And, as shown above, ample evidence supports the jury's findings that a contract was formed and that West Side breached that contract. Ground seven fails for lack of specificity pursuant to Rule 50(a)(2).

III.   Motion for a new trial

FEDERAL RULE OF CIVIL PROCEDURE 59(a) provides that in any action where there has been a jury trial, a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court...." That language has been interpreted to mean that a district court may grant a new trial only if the jury's verdict is against the clear weight of the evidence or the trial was unfair to the moving party. *Whitehead v. Bond*, 680 F.3d 919, 927-28 (7th Cir. 2012) (citing *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011)). "A new trial should be granted ... 'only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience.'" *Id.* at 928 (quoting *Clarett*, 657 F.3d at 674). Stated another way, "a court will set aside a verdict as contrary to the manifest weight of

the evidence only if no rational jury could have rendered the verdict." *Id*. **(quoting** ***Marcus & Millichap Inv. Servs. of Chi., Inc. v. Sekulovski*, 639 F.3d 301, 313-14 (7th Cir. 2011) (quotations omitted);** *see also* ***Galvan v. Norberg*, 678 F.3d 581, 589 (7th Cir. 2012))**.

For its first ground, West Side asserts that the Court erred in adopting as the measure of ConAgra's property damage claim the cost to repair the elevator where the proper measure was its diminution in value.  West Side contends that a new trial is necessary in order to prevent a miscarriage of justice because the Court allowed ConAgra to present evidence of the cost to repair its facility rather than evidence of the facility's diminution in value.  West Side objected to Dean Hoerning's testimony on this issue in its entirety.  West Side made an offer of proof with Exhibit 11, a report prepared by its expert appraiser based on diminution-in-value. In short, West Side contends that the Court's decision to permit Hoerning to testify regarding the money that ConAgra spent to repair and replace the damaged portions of its facility was in error, as the proper measure of ConAgra's property damage claims was the diminution in the value of the property, not the cost to repair it.

When this issue arose during trial, the Court thoroughly and carefully reviewed case law and considered the parties' arguments before making its decision – a decision which the Court stands by.  Nothing in West Side's motion for a new trial alters the Court's determination.

The Court's analysis was guided by the Illinois case law on damages to real property exhaustively set forth in ***Williams-Bowman Rubber Co. v. Industrial Maintenance, Welding and Machining Co.*, 677 F.Supp. 539 (N.D. Ill. 1987)**

**(collecting cases).** Illinois appellate courts apply the cost-of-repair or the diminution-in-value measure of damages depending upon whether the property is partially damaged and may be repaired in a practicable manner, or whether it is totally destroyed or damaged in a manner which renders repair impracticable. *Williams-Bowman,* **677 F.Supp. at 545.** If the former applies, then the proper measure of damages is the cost of restoring the property to its condition prior to the injury; if the latter, then the diminution-in-value rule applies. *Id.*; *see also Beasley v. Pelmore,* **631 N.E.2d 749, 756 (Ill.App.Ct. 1994) (cost of repair was appropriate measure of damages where neighboring owner caused collapse of the back portion of plaintiff's building);** *Frisch Contracting Service Corp. v. N. Ill. Gas Co.,* **417 N.E.2d 1070, 1075 (Ill.App.Ct. 1981) (cost of repair was proper measure of damages even when entire sewer system must be dug up and replaced).**

It is impracticable to repair real property if doing so "would put the defendant to disproportionate expenses or effort to restore it to its condition prior to the injury." *Id.* **(citing Restatement (Second) of Contracts sec. 261 comment d (1981);** *Johnson v. Pagel Clikeman,* **99 N.E.2d 148 (Ill.App.Ct. 1951)).** In other words, if the property is damaged in a way that renders repair impracticable, the injury is permanent, and the diminution in market value is the appropriate measure of damages. *Id.* However, if repair is practicable, the injury is temporary, and the appropriate measure of damages is the cost of repair. *Id.* Distinguishing between temporary and permanent injury serves the compensatory purpose of making an injured party whole without penalizing the party causing injury. *Id.*

Hoerning testified that the damage to Elevator C was partial and practicable to repair, that the grain bin and elevator were not destroyed and did not suffer permanent injury, and that ConAgra had restored the facility by the time trial commenced. He testified that he had overseen the following repairs: a new roof on the structure, new legs and new equipment to distribute the product and to get the grain out of the bottom of the elevator or back into the facility. Doc. 493, Hoerning Trans., 8:20-25. Invoices were admitted into evidence showing that the cost for demolishing and rebuilding the damaged portion of the facility was $3,805,740.51. *Id*. at 19:2-20:5. West Side, in cross-examining Hoerning, elicited testimony that the facility had a new, more modern roof and the following new equipment: conveying equipment with a higher capability and improved flow, dust control, duct work and two legs. *Id.*, at pp. 22, *et seq.*

As previously held by the Court, the proper measure of damages to Elevator C is the cost of repair. This is not a matter of compelling a defendant to rebuild a barn with a market value of $50 at a replacement cost of $500. **See Williams-Bowman, 677 F.Supp. at 545.** The cost of repair, while steep, did not render repair impracticable. Remedial measures, such as replacing the roof, served to repair the structure as a whole. The elevator clearly was not *permanently* damaged since repairs were made, and the elevator was placed back into operation. West Side has not demonstrated that the cost of repair in this case was so great as to constitute a "disproportionate expense."

Nor has West Side offered contrary evidence that repairs were upgrades or improvements that were unwarranted, excessive or avoidable by selecting other

types of equipment. To the contrary, Hoerning testified that some upgrades were required by new regulations or by the unavailability of parts to repair the damaged equipment or structure. Furthermore, the jury may have factored in the upgrade and declined to award a windfall to ConAgra by awarding $805,740.51 less than the cost of repair ConAgra sought.

In summary, although portions of ConAgra's grain elevator had to be replaced, those replacements served to repair the structure as a whole, and the cost was not so great as to constitute a disproportionate expense. The Court did not err in adopting as the measure of ConAgra's property damage claim the cost-to-repair because the diminution-in-value measure was not supported by the facts of this case and the law that governs it.

For its second and third grounds, West Side asserts that the Court erred in admitting ConAgra's Exhibits 63, 64, 65, 66, 108 and 128 over West Side's objection, because the exhibits were inadmissible as hearsay. West Side contends that admitting these documents was prejudicial because ConAgra was able to use these out-of-court statements as evidence of the amount of its property damage, resulting in a jury award of $3,000,000.00. West Side argues that Exhibit 128, a spreadsheet purporting to summarize the invoice totals from Exhibits 63, 64, 65 and 66, was inadmissible because the invoices upon which the spreadsheet was based were inadmissible hearsay and did not constitute records of regularly conducted business activity.

When the Exhibits were offered into evidence, West Side objected that ConAgra had failed to lay a proper foundation and that the documents were hearsay

to the extent that the witness (Hoerning) was reading them. *Id*. at 10:15-17. The Court required ConAgra's counsel to lay more foundation. *Id*. at 10:18. ConAgra attempted to comply, but West Side continued to dispute the admissibility of the documents. The Court then ordered a voir dire examination of the witness. *Id*. at pp. 10, *et seq*. The Court observed that the documents constituted hearsay evidence and that if ConAgra wanted the documents admitted, Rule 803's prongs must be met.[2] *Id*. at 14:6-11. In addition, the Court indicated that no testimony had been offered that the damage was related to the explosion at issue. *Id*. Until the six prongs – and the last concerns of the Court - were met the documents were not admissible. *Id*.

Upon resuming direct examination of Hoerning, ConAgra elicited testimony showing that (1) but for the explosion occurring, the repairs to the elevator would have been unnecessary; (2) the invoices were prepared at or near the time of the work that was being done to repair the facility; (3) it was ConAgra's regular practice, as part of its business activity, to keep records such as the purchase orders, contracts and check payments at issue; (4) the documents reflected the acts that were performed by the contractors to repair the facility; and (5) the documents were

---

[2] **Rule 803 (6)** of the **Federal Rules of Evidence** provides –

**Records of a Regularly Conducted Activity.**  A record of an act, event, condition, opinion, or diagnosis if:
**(A)** the record was made at or near the time by - or from information transmitted by - someone with knowledge;
**(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
**(C)** making the record was a regular practice of that activity;
**(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
**(E)** neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

collected and provided to Hoerning in his capacity as ConAgra's corporate representative for a deposition he gave in connection with this case. *Id.* at pp. 14, *et seq.*

It is patently clear that the Court required ConAgra to lay an extensive foundation for the admission of the exhibits in keeping with Rule 803 and that, ultimately, ConAgra was able to lay that foundation. Moreover, West Side did not challenge the trustworthiness of the documents, or present any evidence that Hoerning's testimony was untruthful or inaccurate. All of the elements of Rule 803(6) were met, and the exhibits were properly admitted over West Side's hearsay objection. Because the invoices themselves were found to be admissible, West Side's objection to Exhibit 128 also fails.

For its fourth ground, West Side asserts that the Court erred in submitting ConAgra's breach of contract claims to the jury where the evidence at trial failed to establish a submissible case for breach of contract against West Side. West Side contends that no evidence was offered at trial that raised a jury issue as to the existence of a contract between ConAgra and West Side or West Side's breach of the purported contract. West Side maintains that it was prejudiced because submitting this case to the jury allowed the jury to render a verdict in favor of ConAgra where there was no factual basis for it.

West Side's fourth ground for a new trial reiterates its argument for judgment as a matter of law that there was insufficient evidence to submit the contract claim to the jury. As set forth above, extensive evidence supported the

jury's finding that a contract was formed between ConAgra and West Side, and that West Side breached that contract.  See § § A, B, pp. 4-9, *supra*.

IV.     Conclusion

For all the foregoing reasons, the Court **DENIES** West Side's renewed motion for judgment as a matter of law or, in the alternative, for a new trial (Doc. 518).

IT IS SO ORDERED.

DATED this 8th day of February, 2013


                                              s/Michael J. Reagan
                                              MICHAEL J. REAGAN
                                              United States District Judge