In the

# United States Court of Appeals
## For the Seventh Circuit



CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

Nos. 13-1505, 13-1542, 13-1543 & 13-1544

JOHN W. JENTZ, *et al.*,

        *Plaintiffs-Appellees*,

*v.*

CONAGRA FOODS, INC., and WEST SIDE SALVAGE, INC.,

        *Defendants-Appellants*.

---

Appeals from the United States District Court
for the Southern District of Illinois.
Nos. 10-cv-0474-MJR-PMF *et al*. — **Michael J. Reagan**, *Judge*.

---

ARGUED OCTOBER 2, 2013 — DECIDED SEPTEMBER 9, 2014

---

    Before EASTERBROOK, MANION, and ROVNER, *Circuit Judges*.

    EASTERBROOK, *Circuit Judge*. A grain bin in Chester, Illinois, exploded on April 27, 2010, injuring three workers. After a 17-day trial, a jury awarded almost $180 million in compensatory and punitive damages against ConAgra Foods and West Side Salvage. ConAgra, which owned the facility, part of a flour mill, contends that liability rests on

Case 3:10-cv-00474-MJR-PMF   Document 587-1   Filed 10/30/14   Page 2 of 10   Page ID #18794
Case: 13-1505   Document: 00712408787   Filed: 10/30/2014   Pages: 10

2                                                           Nos. 13-1505 *et al*.

West Side, which it had hired to address problems in bin C15. For its part, West Side does not contest liability to the workers but contends that it does not have to reimburse ConAgra for the cost of repairing the facility. Both ConAgra and West Side maintain that the damages are excessive. The injured workers contend that both ConAgra and West Side must pay the full verdict.

Seventeen days of trial mean that the record is hefty, but a recap is enough to set up the parties' contentions. Explosions are a constant risk in grain storage, which produces not only a lot of combustible dust and carbon monoxide (which can oxidize explosively to carbon dioxide) but also, through the decay of a bin's contents, heat that can set off a blast. In March 2010 ConAgra discovered a burning smell in bin C15, containing wheat pellets. ConAgra got in touch with West Side, which touts expertise in handling "hot bins." ConAgra's negotiations with West Side and its competitors (ConAgra wanted a lower price) delayed the start of work; West Side's own busy schedule added to the delay. Work finally began on April 20, 2010, and West Side hired A&J Bin Cleaning to do some of the tasks. Two of the injured workers, John Jentz and Robert Schmidt, were employees of A&J; the third, Justin Becker, was employed by West Side itself.

ConAgra wanted to salvage as much of the grain as possible, but as pellets were removed from the top more oxygen reached wheat composting at the bin's bottom. West Side decided to remove some grain via side tunnels. On April 27 West Side detected smoke coming from the bin. Its crew sprayed water on the pellets and used an air lance to try to discover the smoke's source; the effort failed. Mel Flitsch, West Side's foreman, told ConAgra to call the fire depart-

Nos. 13-1505 *et al*.                                                                 3

ment. Waiting for firefighters to arrive, Flitsch sent Jentz and Becker into a tunnel, instructing them to remove tools that might impair firefighters' access. While they were there, the explosion occurred. They were severely injured but survived. Schmidt, who was in an elevator nearby, also was injured, but less seriously. In a series of opinions, the district judge rejected all proposals for judgment as a matter of law or a new trial. See 2013 U.S. Dist. LEXIS 17231 (S.D. Ill. Feb. 8, 2013) (addressing West Side's motions related to tort liability); 2013 U.S. Dist. LEXIS 17232 (S.D. Ill. Feb. 8, 2013) (addressing ConAgra's motions related to tort liability); 2013 U.S. Dist. LEXIS 17237 (S.D. Ill. Feb. 8, 2013) (addressing West Side's motions related to contract liability); 2012 U.S. Dist. LEXIS 109344 (S.D. Ill. Aug. 6, 2012) (addressing ConAgra's motion related to contribution); 2012 U.S. Dist. LEXIS 93137 (S.D. Ill. July 6, 2012) (resolving a dispute about the measure of damages for breach of contract).

Normally employees of an independent contractor (which describes all of the plaintiffs except Amber Becker, whose claim depends on her role as Justin Becker's spouse) cannot obtain damages from the owner of the premises at which the contractor was working. See *Restatement (Third) of Torts* §§ 55–57. Plaintiffs contend that ConAgra nevertheless is liable for failing to provide West Side with a safe place to work. ConAgra responds that *of course* bin C15 was unsafe— that's why West Side had been hired! ConAgra relies on the principle that someone who engages an independent contractor to redress an unsafe condition is not liable when the feared event occurs. Illinois (whose law governs in this suit under the diversity jurisdiction) has adopted this principle, observing in *Community College District 508 v. Coopers & Lybrand*, 208 Ill. 2d 259, 271 (2003), that "in a case involving

Case 3:10-cv-00474-MJR-PMF Document 587-1 Filed 10/30/14 Page 4 of 10 Page ID #18796
Case: 13-1505 Document: 00712408787 Filed: 10/30/2014 Pages: 10

4                                         Nos. 13-1505 *et al*.

negligent rendition of a service [by an independent contractor], … a factfinder does not consider any plaintiff's conduct that created the condition the service was employed to remedy." (Quotation from *Restatement (Third) of Torts: Apportionment of Liability* §7 comment m.) And that, ConAgra contends, is that: It hired West Side to deal with a hot bin, and all liability therefore is on its account. West Side could have negotiated for an indemnity or insurance for its benefit (and that of its workers and subcontractors) but did not do so; West Side and plaintiffs rely only on the law of torts.

Although plaintiffs and West Side weakly contend that it did not know that C15 was a hot bin, the evidence overwhelmingly establishes that it did—indeed, it knew that this is why it had been hired—and no reasonable jury could have concluded otherwise. (The jury was not asked to return a special verdict on that question, which it did not need to resolve under the instructions it received.) West Side may have failed to alert A&J adequately, but that's not a reason to impose liability on ConAgra. Plaintiffs say that ConAgra should have hired West Side sooner (without shopping for lower bids) and that this might have reduced the risk; they also observe that ConAgra did not volunteer all temperature readings it had taken in bin C15 before the mid-April engagement. But no one contends that ConAgra failed to answer accurately all questions West Side posed. Having hired a self-proclaimed expert in hot bins, ConAgra was entitled to assume that West Side would ask for whatever information it needed. (Flitsch had dealt with more than 50 hot bins during his career at West Side; he knew the territory.) People who hire lawyers rely on them to ask for information material to the situation, and no court would hold a client liable to his lawyer for failing to reveal spontaneously something

Nos. 13-1505 *et al*.                                                          5

that the lawyer never asked about; similarly people who hire specialists in controlling the risks of grain storage are entitled to rely on them to know what matters and ask for the material information.

Plaintiffs and West Side equate the doctrine adopted in *Coopers & Lybrand* to the "firefighters' rule" and contend that it must be limited to firefighters. That's wrong for two reasons. First, the firefighters' rule is a distinct doctrine dealing with services not charged for. Under it firefighters cannot recover from homeowners for creating the conditions that led to the fire (which may claim firefighters' lives); conversely, homeowners cannot recover from firefighters who fail to bring the blaze under control quickly or without damaging the home. West Side was not a volunteer, nor were its services paid for by taxpayers; it was a standard independent contractor in a commercial relation with ConAgra, and normal rules of contract and tort law apply.

Second, *Coopers & Lybrand* itself shows that its rule is not limited to firefighters; the Supreme Court of Illinois dealt in that suit with a client's malpractice claim against its accountants. The accountants argued that the client was comparatively negligent because it created (financial) conditions that made it easier for accountants to err. The conclusion that an accountant's malpractice is not mitigated by the fact that the client created risky financial or bookkeeping conditions applies equally to a claim by a grain-removal specialist (and its employees) against the owner of the grain-storage facility. *Coopers & Lybrand* is far from the only Illinois case on point. For example, *Keating v. 68th & Paxton L.L.C.*, 401 Ill. App. 3d 456, 470–72 (2010), holds that a property owner could not be liable to a contractor for injuries the contractor and its em-

6            Nos. 13-1505 *et al*.

ployees suffered while working on a dangerous porch that the contractor had been hired to repair. Other states follow the same approach.

The district court should have granted ConAgra's motion under Fed. R. Civ. P. 50 for judgment as a matter of law. Plaintiffs observe that ConAgra did not "feature" this defense at trial, but that is not dispositive. It is enough to present a defense; harping on it is not required. The district court thought that it had been preserved and addressed it on the merits. 2013 U.S. Dist. LEXIS 17232 at *9–10, *21–25. It was right to do so, though it reached the wrong resolution, which we now reverse. (The district judge may have confused the contractors' rule with the open-and-obvious-hazard doctrine, denying ConAgra's motion in substantial part because of exceptions to that doctrine. They are different, however, and we do not discuss that doctrine or its exceptions.)

West Side, by contrast, is liable for the errors of its supervisor Flitsch, and it does not ask us to set aside the jury's verdict in the employees' favor.

Our conclusion that ConAgra is not liable makes it unnecessary to address disputes about its relative share of liability compared with West Side. But there remains a contract claim between the parties. ConAgra signed and tendered to West Side a contract containing a promise by West Side to indemnify ConAgra for any damage caused by West Side's negligence. The jury concluded that West Side is liable under this promise; the judge agreed; but West Side argues otherwise, observing that it did not return a signed copy of the contract to ConAgra. It agreed to undertake the job, and set to work, but did not sign on the dotted line. The district judge thought this irrelevant, because performance usually

is as good as a signature as a way to accept a proposed written contract. We agree with that conclusion as well as the district judge's resolution of all disputes about the amount of damages the jury awarded on this subject. The district judge covered these issues ably; more words are unnecessary.

We turn to damages in tort. The jury awarded Jentz $41,585,000 in compensatory damages plus $34,333,333.33 in punitive damages. It allocated all but $1 million of the punitive damages to ConAgra; it allocated 54% of the compensatory damages to ConAgra, 45% to West Side, and 1% to Jentz himself. The jury awarded Justin Becker $35,390,000 in compensatory damages (allocated 5% to Becker, 51% to ConAgra, and 44% to West Side) and his wife Amber Becker $250,000 in compensatory damages in her own right (all allocated to ConAgra). The award against West Side appears to be incompatible with the workers' compensation statute, since West Side was Becker's employer, but the district court did not order West Side to pay Becker; instead it used the allocation to determine indemnification under the contract between ConAgra and West Side. 2012 U.S. Dist. LEXIS 109344 at *15–22. The jury added $33,333,333.33 in punitive damages, all against ConAgra. The jury awarded Schmidt $2,915,000 in compensatory damages (65% to ConAgra and the rest to West Side) and $33,333,333.34 in punitive damages, all against ConAgra.

Given our holding that ConAgra is not liable, the only punitive award that requires consideration is the $1 million that the jury ordered West Side to pay Jentz. Illinois does not authorize punitive damages for ordinary negligence; they depend on willful and wanton conduct, see *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186 (1978), which if not inten-

8                                                                               Nos. 13-1505 *et al.*

tional wrongdoing entails at least a "gross deviation from the standard of care". *Shirk v. Kelsey*, 246 Ill. App. 3d 1054, 1065 (1993). No one contends that Flitsch sent the workers into the tunnel *wanting* harm to come their way; they were his co-workers if not his friends. And it is also hard to see a "gross deviation" from the standard of care. If the tools were in the way, someone had to move them; why should that task (and the associated risk) be assigned to the firefighters rather than to the people who knew the tools best and could reach them sooner?

Of course, if an explosion was likely to precede the arrival of the firefighters, or if the firefighters on arrival would have concluded that no one should enter the tunnel, allowing the fire or explosion to happen unimpeded, then sending the workers to remove the tools posed a needless risk. This must have been what the jury concluded. That makes it important to know *how likely* and *how imminent* an explosion was, under the conditions Flitsch knew about.

We looked through the briefs for clues but found none. At oral argument we asked counsel what the record showed (perhaps through expert testimony) about the probability that a smoking bin will explode, or break into open fire, within any given time. We also received post-argument supplementary filings on this topic. The answer turns out to be: Nothing. Without data, or at least a qualitative risk estimate (and the record contains neither), the jury lacked support for a conclusion that Flitsch's conduct exposed the workers to a risk so great that his order marked a "gross deviation" from the standard of care.

True, Flitsch asked ConAgra to call the fire department, which evinced consciousness of risk, but his order to retrieve

Case 3:10-cv-00474-MJR-PMF   Document 587-1   Filed 10/30/14   Page 9 of 10   Page ID #18801
Case: 13-1505     Document: 00712408787     Filed: 10/30/2014     Pages: 10

Nos. 13-1505 *et al*.                                                9

the tools evinced a belief that the short-run risk was small (and Flitsch so testified). For all this record shows, Flitsch may have been right. The probability of an explosion before the workers could reach safety may have been only 1 in 10,000. It could have been more, or it could have been less. We just don't know.

Even a small risk will come to pass if events are repeated often enough, but Illinois has not announced a rule under which punitive damages are proper whenever small or remote risks occur and cause injury. The verdict appears to be a consequence of hindsight bias—the human tendency to believe that whatever happened was bound to happen, and that everyone must have known it. If Flitsch believed that an explosion was imminent, then he is a monster; but of that there is no evidence. Hindsight bias is not enough to support a verdict. The award of punitive damages against West Side must be set aside.

West Side does not contest the amounts of compensatory damages. (It made such an argument in the district court but has not repeated it on appeal.) Instead it contends that it is entitled to a new trial on damages because the district court permitted the jury to infer that it carried liability insurance, which it says violated Fed. R. Evid. 411.

Plaintiffs argued, among other things, that ConAgra is liable for its delay in hiring West Side. Part of the trial was devoted to ConAgra's negotiations and internal deliberations before West Side's engagement. The district court admitted in evidence an email from one ConAgra executive to another stating that a particular bidder could not be used because it did not carry at least $3 million in liability insurance. West Side says that this email allowed the jury to infer

that it *did* have that much insurance—though the record does not contain direct evidence, one way or the other, about whether West Side was insured and, if so, for how much. West Side maintains that any possibility of an inference about insurance is enough to violate Rule 411.

That is not what the rule says. It provides: "Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." The email was not introduced to prove that West Side acted negligently. It was introduced as part of an effort (unsuccessful, we have held) to prove that ConAgra is liable. The jury's ability to infer that West Side carried insurance—something that plaintiffs' counsel never argued—should have been addressed, if at all, under Rule 403 rather than Rule 411. Yet West Side does not argue that the district judge abused his discretion in not excluding or redacting the email under Rule 403 to eliminate a risk of unjustified prejudice; indeed, West Side does not mention Rule 403 in this court. What's more, any error on the district court's part was harmless. The verdicts so far exceed $3 million that the jury's belief that West Side carried that much insurance cannot have played a material role.

   The judgment against ConAgra is reversed. The contract judgment in favor of ConAgra and against West Side is affirmed. The award of punitive damages against West Side is reversed, and the awards of compensatory damages against West Side are affirmed. We remand to the district court for the limited purpose of determining how these decisions affect indemnification or contribution. ConAgra recovers its costs; plaintiffs and West Side bear their own costs.