IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN W. JENTZ, *et al.*,                    )
                                            )
                    Plaintiffs,             )
                                            )   No. 10–cv–0474–MJR–PMF
vs.                                         )   No. 10–cv–0952–MJR–PMF
                                            )   No. 11–cv–0391–MJR–PMF
CONAGRA FOODS, INC., *et al.*,              )
                                            )
                    Defendants.             )

## ORDER RE: CONAGRA'S BILL OF COSTS

REAGAN, Chief Judge:

After a 17-day trial, a jury awarded almost $180 million in compensatory and punitive damages to three workers (Plaintiffs Jentz, Schmidt, and Becker) grievously injured in a 2010 grain bin explosion ConAgra's facility in Chester, Illinois. Discounting a single loss of consortium claim, the compensatory damages alone totaled over $75 million.

The losing parties appealed, and the Seventh Circuit relieved ConAgra of any liability. Defendant West Side, the contractor hired to salvage the contents of the "hot" grain bin, was not similarly relieved. A Second Amended Judgment was entered on March 19, 2015, reflecting both ConAgra's victory and Plaintiffs' post-appeal release of the claims against West Side.[1] Now before the Court is ConAgra's Bill of Costs and Plaintiffs' objections thereto. ConAgra's costs comprise

---

[1] Only Plaintiffs Jentz and Schmidt released claims against West Side, since the Beckers' claims exclusively targeted ConAgra. In other words, the Beckers' verdict was completely wiped out by the Court of Appeals. (*See* Doc. 539, 3).

$987,062.00 relating to the supersedeas bonds it posted for the appeal, plus $83,372.98[2] for other costs relating to trial.

Plaintiffs level three arguments against ConAgra's asserted costs: (1) that ConAgra's Bill of Costs lacks the requisite specificity for an award; (2) the premiums paid on ConAgra's supersedeas bond are implicitly excluded by the Court of Appeals' mandate; and (3) this court should exercise its discretion and deny costs due to Plaintiffs' indigency. ConAgra responds that the undersigned lacks the discretion to reduce the Bill of Costs due to Plaintiffs' indigency, and that the voluminous documentation supporting its trial costs does support a cost award.

For the reasons below, the Court concludes that it does have discretion to reduce the cost award due to Plaintiffs' indigency, and **RESERVES RULING** on Plaintiffs' objections, pending further submissions.

## Legal Standards

Two authorities control the adjudication of post-appeal costs. Federal Rule of Civil Procedure 54 broadly provides that "costs—other than attorney's fees—should be allowed to the prevailing party." **Fed. R. Civ. P. 54(d).** The presumption that costs will be awarded to the prevailing party is a strong one. *U.S. Neurosurgical, Inc. v. City of Chi.*, 572 F.3d 325, 333 (7th Cir. 2009) (citing *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997)). But Rule 54(d) costs may not be taxed unless they fall into one of the categories of costs "statutorily authorized

---

[2] Though ConAgra originally claimed $88,164.32 for costs other than the supersedeas bonds premiums, it withdrew $4,791.34 from that subtotal in its response brief.

for reimbursement" in 28 U.S.C. § 1920. *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000).

Rule 39 of the Federal Rules of Appellate Procedure, on the other hand, specifically allows for (as pertinent here) taxing costs of "premiums paid for a supersedeas bond or other bond to preserve rights pending appeal." **Fed. R. App. P. 39(e)(3).** Rule 39(e) was approved by Congress after § 1920, and its express authorization of supersedeas bond cost recovery makes it cumulative (rather than contradictory) to § 1920's otherwise limiting provisions. *Republic Tobacco Co. v. North Atlantic Trading Co.*, 481 F.3d 442, 448 (7th Cir. 2007). In contrast to other subsections of Appellate Rule 39, the costs in subsection (e) "are taxable *in the district court* for the benefit of the party entitled to costs under this rule." **Fed. R. App. P. 39(e) (emphasis here).** *See also* PRACTITIONER'S HANDBOOK FOR APPEALS TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT, *https://www.ca7.uscourts.gov/Rules/handbook.pdf*, at 162 ("Various costs [including bond premiums] ... must be settled at the district court level.").

ConAgra hides behind the appellate courts' cursory language—"ConAgra recovers its costs"—to support the notion that the undersigned has been stripped of any discretion regarding the instant Bill of Costs. That position is untenable under Seventh Circuit precedent.

In *Guse v. J.C. Penney*, a district court was held to have discretion "not to award a party costs under" Rule 39(e), despite the appellate court's similarly curt directive that "costs on appeal" were awarded to a prevailing appellant. *Guse v.*

*J.C. Penney Co.*, 570 F.2d 679, 681 (7th Cir. 1978). "The [Seventh Circuit] said that when it awarded costs, its ruling *only* referred to those costs taxable in the appellate court … and did not preclude the district court from awarding (or declining to award), in its discretion, costs taxable under *Rule 39(e)*." **Republic Tobacco**, 481 F.3d at 448 (explaining *Guse* and confirming its continued relevance). "The district court," reasoned the *Guse* panel, "is in a better position than are we to make this determination with regard to the costs to be taxed against the losing party in that court." **Guse**, 570 F.2d at 681.

*Guse*'s result depended in part on the Seventh Circuit's reading of *Berner*, a 1966 Second Circuit decision. **Id.** (explaining **Berner v. British Commonwealth Pac. Airlines, Ltd.**, 362 F.2d 799 (2d Cir. 1966)). The Second Circuit had reversed a judgment for the plaintiff below, but (regarding potentially onerous bond premiums) left the contention that "heavy charges should not be imposed upon the widow and children for whom this action was brought in good faith" to the "sound discretion of the trial court." **Guse**, 570 F.2d at 681 (applying *Berner*, 362 F.2d at 801).

The analogous contention at issue here—that Plaintiffs here cannot afford to remunerate ConAgra for over a million dollars in costs—is similarly within the discretion of this court. Approaching the instant controversy otherwise would effectively mean a throwaway line of dicta overturns *Guse* and *Republic Tobacco*, a path the undersigned is unwilling to tread. **See U.S. v. Crawley**, 837 F.2d 291, 292 (7th Cir. 1988) (appropriate to treat a passage as dictum rather than holding where "the passage was not an integral part of the earlier opinion—it can be sloughed off

4

without damaging the analytical structure of the opinion"); *Grayson v. Schuler*, 666 F.3d 450, 453 (7th Cir. 2012) ("[W]e're not to supposed to declare a decision … overruled unless the [higher] Court itself makes clear that the case *has* been overruled").

The Court, in short, has the discretion "to consider a plaintiff's indigency in denying costs." *Rivera v. City of Chi.*, 469 F.3d 631, 634 (7th Cir. 2006) (Rule 54 costs); *Guse*, 570 F.2d at 681 (Rule 39(e) costs). Unsuccessful indigent litigants are not "automatically shielded" from costs. *McGill v. Faulkner*, 18 F.3d 456, 458 (7th Cir. 1994). Only if the losing party is incapable of paying costs presently "or in the future" is the indigency exception available. *Rivera*, 469 F.3d at 535. The losing party bears the burden of providing the court with "sufficient documentation to support such a finding." *Id.* (quoting *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999)). The losing party's income and assets should be considered, along with a schedule of expenses. *Id.* Even small cost awards, like the $2,400 bill in *Cross*, can be denied where it is clear payment would "hasten the time that [a plaintiff] would be rendered entirely destitute." *Cross*, 1994 WL 592168, at *1. A court must then consider other factors: the amount of costs, the loser's good faith, and the closeness / difficulty of the issues raised by the case. *Rivera*, 469 F.3d at 535.

## ANALYSIS

ConAgra offers no counter to Plaintiffs' assertion that the case was brought in good faith and involved close, difficult questions. So the instant controversy

hinges on whether Plaintiffs have adduced enough evidence to establish an inability to pay costs either now, or in the future.

In *Rivera*, the Court of Appeals juxtaposed two district court cases in examining the evidentiary standard required for a showing of indigency. An unemployed plaintiff who supported two children and a grandchild nonetheless "had been employed in the past and had indicated a desire to continue to work," leading the district court to award costs against her. *Id.* (explaining *Denson v. Northeast Ill. Reg'l Commuter R.R. Corp.*, No. 00 C 2984, 2003 WL 21506946, *2 (N.D. Ill. June 27, 2003)). On the other hand, an unemployed single parent "who suffered from severe mental health problems" such that it was impossible to pursue his former occupation had proven an inability to pay costs in the future. *Rivera*, 469 F.3d at 636 (explaining *Cross v. Roadway Express*, No. 93 C 2584, 1994 WL 592168, *1 (N.D. Ill. Oct. 26, 1994)).

The *Rivera* plaintiff herself—a single mother of four—had no assets to speak of, but earned $1,800 per month (plus food stamps), had procured a $175,000 judgment against another individual, and failed to adduce evidence regarding her monthly expenses. *Id.* at 636–37. Especially in light of the lack of information regarding Rivera's expenses, the Court of Appeals held that the district court had abused its discretion by not providing a basis for a finding she would "be incapable of paying … costs at some point in the future." *Id.* at 637.

Here, the matter of Plaintiffs' indigency comes to the forefront with a vastly different procedural history than in *Rivera* (where plaintiff lost on summary

judgment), *Denson* (a discrimination case where no finder of fact addressed future lost wages), and *Cross* (plaintiff lost on summary judgment).  By contrast, a jury here heard extensive evidence of Plaintiffs' physical and financial hardships. Though the verdict was overturned on legal grounds, the jury's $77,942,150 compensatory award reflected its findings of both non-economic and—as pertinent here—economic harm.  The massive evidentiary record provides the undersigned with *some* "basis for finding that [Plaintiffs] will be incapable of paying the [Defendant's] costs at some point in the future."  ***Rivera*, 469 F.3d at 637.**  Plaintiff Jentz, for example, suffered extensive burns over 70% of his skin's surface area. (Doc. 340, 30).  Becker was told he would never work again.  (Doc. 345, 67, 69). Schmidt (whose compensatory award amounted to a mere 3.74% of the pre-appeal compensatory damages) only made $17 per hour before the explosion—not the kind of earning power that would allow for easy payment of a million dollar bill of costs. (Doc. 350, 39).

But more information is needed.  Precedent requires the undersigned to examine sound evidence of Plaintiffs' current and future financial situations.  At different points in the litigation, Plaintiffs entered into settlement agreements with various Defendants (*e.g.*, A&J Bin Cleaning pre-verdict, and West Side post-appeal).  All assets stemming from those settlements (or otherwise), plus any income Plaintiffs are earning (or will earn), must be weighed against Plaintiffs' respective schedules of expenses and other liabilities.  ***Rivera*, 469 F.3d at 535.**

CONCLUSION

The Court accordingly solicits more evidence of Plaintiffs' finances. Plaintiffs are **DIRECTED** to **FILE, ON OR BEFORE July 3, 2015**, sworn affidavits (and any financial statements / other evidence of assets, income, and expenses they choose) in support of their claims of indigency. They may supplement that evidence with no more than four pages of legal argument. ConAgra may file a brief in opposition (similarly, not to exceed four pages) on or before **July 17, 2015**. If necessary, the Court will set an evidentiary hearing on the matter. Plaintiffs other arguments against a cost award will be left until their ability to pay is determined.

Counsel are **DIRECTED** to meet and confer (telephonically will suffice) by the close of business next Friday, May 22, 2015, so as to make a good faith attempt to settle the remaining dispute. The Court **RESERVES RULING** on Plaintiffs' objections to ConAgra's Bill of Costs.

**IT IS SO ORDERED.**
**DATE:** May 14, 2015

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
Chief Judge
UNITED STATES DISTRICT COURT